UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Sandra Burton**<br>147 Richards Ferry Rd.<br>Fredericksburg, VA 22406<br><br>              **Plaintiff,**<br>     v.<br><br>**Secretary Shaun Donovan in**<br>**his official capacity**<br>**U.S. Department of Housing and**<br>**Urban Development,**<br>451 7th Street S.W.<br>Washington, D.C. 20410<br><br>**Serve:**<br>**Attorney General**<br>**United States of America**<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530,<br><br>**United States Attorney**<br>501 Third Street, N.W.<br>Fourth Floor<br>Washington, D.C. 20530<br><br>**Defendant.** | Civil Action No. _____ |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Sandra Burton ("Burton"), by and through undersigned counsel, brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000(e) et seq., the Notification of Federal Employees Anti-discrimination and Retaliation Act of 2002 ("No FEAR Act"), 29 C.F.R. 1614, and as each Act has been further amended by Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981(a), to remedy acts of unlawful employment discrimination based on retaliation and hostile work environment perpetrated against her by her employer, the U.S. Department of Housing and Urban Development ("HUD")

through its employees and agents. Plaintiff seeks injunctive relief, compensatory and punitive damages, attorney's fees and other costs of the action. Plaintiff also requests a trial by jury. Plaintiff alleges as follows against Defendant, the U.S. Department of Housing and Urban Development and as a result of the actions of its employees and agents, including but not limited to Jemine Bryon, Keith Surber, Priscilla Lewis, Elie Stowe and David Blocker.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(4) (jurisdiction over suits involving congressional acts protecting civil rights), 42 U.S.C. §§ 2000e (16)(c), (jurisdiction over suits involving non-discrimination in federal government employment), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e (5)(f)(3).

2. On October 6, 2008 Plaintiff filed an initial informal claim with the Office of Equal Employment Opportunity, ("EEO") against the U.S. Department of Housing and Urban Development, HUD case no. HUD00001-2009. On March 10, 2011, Plaintiff filed a subsequent EEO complaint, HUD Case No. HUD00024-2011.

3. This Court has jurisdiction because 180 days have passed since the initial and subsequent complaints were filed. A right to sue letter was issued on or about June 18, 2012. *See* 42 U.S.C. §§ 2000e (16)(c).

4. Venue lies in this court pursuant to 28 U.S.C. § 1391(e) because the events giving rise to Plaintiff's claims occurred in the District of Columbia and Plaintiff is employed by HUD, a federal agency within the District of Columbia. The records pertaining to Plaintiff's employment are maintained by HUD and the actions adverse to Plaintiff's employment that are the subject of this civil action have taken place in this judicial district.

## PARTIES

5.      Plaintiff, Sandra Burton, is a Caucasian female citizen of the United States and resident of the state of Virginia.  She was employed by the United States (U.S.) Department of Housing and Urban Development ("HUD") in the District of Columbia at a grade GS-13 level.  Plaintiff asserts *respondeat superior* where appropriate.

6.      Defendant, Shaun Donovan, is currently Secretary of HUD and its highest executive officer.  HUD is an agency within the Executive Branch of the U.S. government employs and has employed more than 500 persons in each of the last twenty (20) weeks.  Secretary Donovan is being sued here in his official capacity.

## FACTS

7.      On or about 2006, Sandra Burton was initially employed as a Contract Specialist for the Office of the Chief Procurement Officer in the Policy, ("OCPO") Oversight and Systems Division of HUD. Burton was later transferred to a position as a Procurement Analyst of OCPO which was her final position with HUD before being forced to retire.  Burton's primary job duties and responsibilities as a Program Analyst included a role as an Advisor and Specialist with expertise in the area of contracts, grants and cooperative agreement of procurement practices, policies and procedures throughout the office.  She is also a member of  the American Federation of Government Employees Union ("AFGE").

8.      In 2008, Burton became the target of unfounded threats and discipline from former supervisor, Dana Long.  Sandra Burton endured race based discrimination and disparity in treatment as compared to other HUD employees.  As a result of the continued harassment and distinct differences in the way supervisors treated her as compared to her colleagues, on or about October 6, 2008, Burton filed an informal complaint with Equal Employment Opportunity, HUD

3

case no. HUD00001-2009. In order to resolve the troubling issues mediation was advised. On or about January 2009, upon conclusion of mediation all parties agreed to settle the matter.

    9.    On or about February 12, 2009, the parties executed a Mediation Settlement Agreement ("Agreement"). Among the terms of the Mediation Settlement Agreement, the parties agreed that all negative employment actions or documentation that occurred between March 1, 2008 and December 19, 2009 would be rescinded and expunged from all agency files including a Letter of Proposed Removal. The Agreement also ordered that Burton would be re-assigned from the Office of Assistant Chief Procurement Office, Operations Management as a Contract Specialist to a position as a Program Analyst in the Office of the Assistant Chief Procurement Office, Policy and System under a new supervisor.

    10.    The Agreement also ordered that Burton's career promotion to GS-13 would be made retroactive to April 29, 2008 and she would receive all pay and benefits back to the day of promotion. Additionally, the Agreement mandated that Sandra Burton would be approved for telework on Tuesdays and Thursdays during the first week of each period and alternate with telework on Tuesdays and a Compressed Work Schedule (CWS) on Fridays of the second week of each pay period. The Agreement also stated its terms and all pertinent documentation were to be kept confidential and all negative references were to be removed from Burton's personnel file.

    11.    Since February 2009, Burton has participated in Telework, a program that permits employees to work remotely while continuing to carry out job duties and responsibilities. The Telework program is widely used in federal agencies and enhances work-life balance by allowing employees to better manage their work and family obligations.

    12.    From November 2009 to June 2010, Jemine Bryon ("Bryon"), Chief Procurement Officer of the Office of the Chief Procurement Officer, was Burton's immediate supervisor.

13. Burton joined HUD with more than thirty (30) years of government employment experience. During the course of Burton's government career, she consistently received outstanding job performance evaluations and received multiple awards. Under Bryon's supervision, Burton was never counseled by Bryon about work performance issues, nor had Bryon provided to her any indication of performance concerns.

14. On or about June 8, 2010, Elie Stowe ("Stowe") assumed the role of Assistant Chief Procurement Officer in the Policy, ("ACPO"), Oversight and Systems Division and served as Burton's immediate supervisor.

15. From the outset of Stowe's tenure as ACPO, Stowe engaged in a pattern of hostility and intimidation directed at Burton. In early August, 2010, little more than two (2) months after assuming the role of ACPO, Stowe approached Burton and informed her that she was aware of Burton's previous EEO complaint and confidential settlement agreement. Stowe did not disclose how she was able to gain access to Burton's confidential personnel information or how she learned of the EEO complaint filed more than a year earlier. Yet in August 2010, it was evident that Stowe had full knowledge of Burton's previous EEO complaint and its contents – in direct contradiction to the terms of the Mediation Settlement Agreement. Stowe also requested to view the mediation settlement agreement.

16. At a later date, David Williamson ("Williamson"), former Acting Chief Procurement Officer of the OCPO, disclosed to Sandra Burton that he possessed email documentation which evidenced that Priscilla Lewis ("Lewis"), Assistant Chief Procurement Officer of the OCPO, also possessed information about the confidential Agreement and relayed information therein to other employees in the department. Although new, based upon knowledge obtained about Burton's complaint and the Agreement, Stowe treated Burton in an increasingly

adverse and hostile manner. Stowe's language and actions were combative and threatening and were later followed by harsh actions.

17. Following Stowe's admission that she had knowledge of the previous EEO complaint filed by Burton, Stowe began to regularly state to Burton that Jemine Bryon hated her. When asked by Byron what she meant, Stowe simply stated that Bryon hated Burton. The hostile environment in the office intensified. Stowe routinely made public and open threats in the office to write Burton up for various alleged offenses. She also repeatedly threatened to revoke Burton's telework provisions, in violation of the confidential mediation Agreement previously reached with HUD. It became apparent that the actions were retaliative and directly connected to Burton's earlier EEO complaint.

18. Oftentimes Burton was forced to copy HUD administrators on communications with Stowe in order to document the ongoing inconsistencies and misinformation initiated by Stowe. On or about the morning of November 17, 2010, Stowe ordered Burton to her office and berated her for copying department supervisors, Bryon and Keith Surber ("Surber") on email communications earlier that week. She ordered Burton to shut her office door and began a profanity-laced tirade and threatened a negative write-up. Burton documented Stowe's aggressive behavior towards her. Burton explained to Stowe that Stowe was out of the office during a deadline for one assignment and Bryon and Surber were her only points of contact.

19. On or about November 17, 2010, after enduring verbal abuse from Stowe, Burton met with Surber, Deputy Chief Procurement Officer, OCPO, for over an hour. She then requested assistance in resolving the repeated conflicts instigated by Stowe. She also explained that Stowe engaged in a pattern of last minute changes to the terms of an assignment and withholding necessary information to complete assigned work. Surber acknowledged that there

were issues concerning Stowe's conduct, but did nothing to correct the problem. On numerous documented occasions, Burton sought assistance from HUD administration to an end Stowe's retaliation. HUD was thus placed on notice of Stowe's inappropriate actions. However, Burton's requests for help fell on deaf ears and Stowe's retaliatory behavior continued.

20. On or about November 18, 2010, after Burton raised concerns to Surber about Stowe's interference with her assigned tasks, Burton was issued a Notification of Administrative Leave and Enforced Leave from Stowe for alleged unprofessional behavior. Invariably, Surber had communicated with Stowe. In the notification, Stowe falsely alleged that Burton had engaged in a physical altercation and verbal attacks against her and informed Burton that she would be subjected to further discipline. Burton again sought help from Surber. However, Surber stated that as he was not her direct supervisor there was nothing he could do. Burton then sought the assistance of union representative, Sandy Krems. However, a security guard ultimately escorted Burton out of the building as a result.

21. On or about December 1, 2010, after being placed on administrative leave, Bryon issued a Return to Duty Memorandum which ordered Burton to return to work on December 1, 2010. On or about December 16, 2010, Burton was notified of a proposed 5-day suspension.

22. On or about January 2011, on two (2) separate occasions, Stowe ordered Burton to provide a temporary contractor with confidential access codes in order to complete a task. However, per department regulation, temporary employees are not permitted access to security codes and secured files. When Burton informed Stowe that she would not break regulation to carry out Stowe's directions, Stowe became irate.

23. The pattern of hostility and intimidation directed at Burton continued. On or about January 31, 2011, Burton received a Memorandum of Counseling from Stowe which

7

alleged that Burton had engaged in unprofessional and insubordinate behavior. Stowe also alleged that Burton had personal problems that were affecting her professionalism and suggested she seek counseling.

24. On or about May 5, 2011, Burton received a bad rating for the earlier June 2010 period, nearly a year later. During the June 2010 period, Bryon served as Burton's supervisor but never counseled Burton about work performance issues nor provided any indication of performance concerns with Burton. Stowe had resorted to backdating and altering dates for her ratings. The unfounded disciplinary actions directed at Burton further intensified an already hostile and volatile workplace environment. Stowe's conduct prompted an investigation by the National Union and a subsequent grievance was filed on or about June 15, 2011.

25. In late May 2011, as a result of Stowe's continued harassment, Burton began to suffer symptoms of anxiety. Upon entering her worksite, Burton began experiencing anxiety and rapid heartbeats which required her to seek medical attention to address her rapidly deteriorating health. On or about May 26, 2011, Burton's physician ordered that she take four (4) weeks off work.

26. However, Burton had not accrued adequate sick leave to compensate for the duration of the four (4) week period. Unable to afford the financial hardship of a four (4) week absence without pay and out of fear of further reprisal, Burton returned to work against doctors' orders.

27. During that time, she continued to experience work-related anxiety and distress. The threats of job termination and loss of her livelihood intensified Burton's symptoms.

28. Stowe also unjustly charged Burton as Absent Without Leave ("AWOL") on multiple occasions. Stowe has repeatedly made public and malicious comments about Burton,

including repeated statements that Bryon hated Burton. When Burton asked Stowe about the source of Bryon's disdain, Stowe offered no legitimate explanation. Stowe's unwarranted behavior persisted despite Burton's repeated pleas for an end to the hostile retaliative environment.

29. Despite Burton's pleas and requests for help in resolving Stowe's evident hostility, no one did anything and Stowe continued her apparent retaliation against Burton. On or about March 9, 2011, Burton was issued a proposed 30-day suspension for an alleged failure to carry out instructions in a reasonable time. As had become custom, Stowe purposely withheld information required by Burton to complete an assigned task. When the task could not be completed under the conditions imposed by Stowe, Stowe charged Burton with insubordination.

30. The work environment became increasingly hostile and Burton continued to document Stowe's unwarranted harassment. Burton filed another EEO Complaint in 2011 based on Stowe's continued retaliatory actions.

31. On or about September 22, 2011, Burton was again escorted out of the building and received a Notification of Proposal to Remove which stated that Burton would be terminated from her employment in thirty (30) days. However, Burton received conflicting orders and was told that she was to telework from home during the period of September 22, 2011 through October 30, 2011. When Burton attempted to continue her tasks through the telework system, she was not permitted access to the telework system. Burton then informed her new supervisor, David Blocker ("Blocker"), but received no further communication about completing her tasks. Mr. Blocker picked up where Elie Stowe left off, likely in collaboration with Stowe and Bryon and began to harass Burton. Plaintiff's assignments were changed. Various programs that she

originally oversaw had now been removed from her responsibilities. These changes constituted a substantial change in her terms and duties.

32. On December 2011, with the threat of the loss of retirement earnings from nearly 35 years of government service, and Stowe's ongoing retaliation, Burton ascertained that the working conditions were no longer tolerable. Accordingly, she tendered her resignation as Program Analyst of the OCPO, which effectively constituted a construction termination.

## COUNT I

### RETALIATION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 .S.C. §§ 2000(e) et seq.)

33. Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 32 above.

34. Burton has been repeatedly subjected to unwarranted harassment by her managers and supervisors. The harassment intensified after she filed an EEO complaint in October 2008 on the basis of race discrimination in violation of Title VII. According to 42 U.S.C. § 2000(e) et seq., "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees,[. . .] because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title."

35. Retaliation against Burton includes disparity in treatment as compared to colleagues within the same department, unjustly imposing disciplinary measures against her including unfounded memorandums of counseling, enforced leave, repeated suspensions and an attempted removal.

36. Further evidence of this retaliation is demonstrated by the repeated falsification and backdating of certain official government documents and possible expilation of other documents pertinent to Plaintiff's claims.

37. As a direct and proximate cause of the continuous retaliation carried out by the employees and agents of HUD, Burton suffered and continues to suffer severe emotional distress, mental anguish and economic harm.

38. Wherefore, Plaintiff prays for the following relief as a result of Defendant's malicious retaliation: compensatory damages in an amount equal to or in excess of $300,000, economic damages, medical expenses, plus interest, appropriate injunctive and declaratory relief including, but not limited to front pay, attorney's fees and costs, and such other relief as this court deems necessary and appropriate.

## COUNT II

### RETALIATION
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (43 .S.C. §§ 2000(e) et seq.)

39. Plaintiff incorporates by reference each and every allegation in paragraphs 1 through 32 above.

40. Burton has been repeatedly subjected to unwarranted harassment by her managers and supervisors. The harassment intensified after she filed an EEO complaint in October 2008 on the basis of race discrimination in violation of Title VII. According to 42 U.S.C. § 2000(e) et seq., "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees,[. . .] because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title."

41. Retaliation against Burton includes disparity in treatment as compared to colleagues within the same department, unjustly imposing disciplinary measures against her including unfounded memorandums of counseling, enforced leave, repeated suspensions and an attempted removal.

42. Further evidence of this retaliation is demonstrated by the repeated falsification and backdating of certain official government documents and possible expilation of other documents pertinent to Plaintiff's claims.

43. As a direct and proximate cause of the continuous retaliation carried out by the employees and agents of HUD, Burton suffered and continues to suffer severe emotional distress, mental anguish and economic harm.

44. Wherefore, Plaintiff prays for the following relief as a result of Defendant's malicious retaliation:  compensatory damages in an amount equal to or in excess of $300,000, economic damages, medical expenses, plus interest, appropriate injunctive and declaratory relief including, but not limited to front pay, attorney's fees and costs, and such other relief as this court deems necessary and appropriate.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 17, 2012

>Respectfully submitted,
>
>By: *Donald M. Temple*
>     Donald M. Temple    #408749
>     1229 15th Street, NW
>     Washington, DC 20005
>     PH: 202.628.1101
>     dtemplelaw@gmail.com
>     *Attorney for Plaintiff*

By: *Theresa A. Owusu*
    Theresa A. Owusu   #974435
1425 K Street, NW, Suite 350
Washington, DC 20005
PH: 202.587.5680
towusu@dgolawgroup.com
*Attorney for Plaintiff*