```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2

 3   SANDRA BURTON,                :
                                   :
 4            Plaintiff,           :    CA 1:12-cv-01537-CRC
                                   :
 5       vs.                       :    Washington, D.C.
                                   :    Monday, July 10, 2017
 6   SHAUN DONOVAN,                :    1:35 p.m.
                                   :
 7            Defendant.           :
     ---------------------------x
 8

 9

10            TRANSCRIPT OF JURY TRIAL - AFTERNOON SESSION
             BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                     UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:         DONALD M. TEMPLE, Esq.
                                Donald M. Temple, P.C.
14                              1310 L Street NW, Suite 750
                                Washington, DC 20005
15
                                THERESA OWUSU, Esq.
16                              The DGO Law Group, PLLC
                                1775 I Street, NW, Suite 1150
17                              Washington, DC  20006

18   For the Defendant:        DAMON WILLIAM TAAFFE, Esq.
                                BRIAN J. FIELD, Esq.
19                              U.S. Attorney's Office for D.C.
                                555 Fourth Street, NW
20                              Washington, DC  20530

21   Court Reporter:           CRYSTAL M. PILGRIM, RPR, FCRR
                                United States District Court
22                              District of Columbia
                                333 Constitution Avenue, NW
23                              Room 4700-F
                                Washington, DC  20001
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

TABLE OF CONTENTS

                              DIRECT   CROSS   REDIRECT   RECROSS

On behalf of the Plaintiff

    Keith Surber

      By Mr. Temple          124

      By Mr. Field                    200

E-X-H-I-B-I-T-S

                                        Marked    Received

On behalf of the Plaintiff

Exhibit No. 1                                     194

Exhibit No. 80                                   170

```
1                    P-R-O-C-E-E-D-I-N-G-S

2            THE DEPUTY CLERK:  Your Honor, we're back on the

3   record for civil case 12-1537, Sandra Burton versus Shaun

4   Donovan.

5            MR. TEMPLE:  Good afternoon, Your Honor.

6            THE COURT:  Good afternoon.

7            MR. TEMPLE:  Your Honor, for the record --

8            THE COURT:  Hold on one second.

9            (Pause.)

10           THE COURT:  Is Mr. Surber ready?

11           MR. TEMPLE:  Yes, sir.

12           THE COURT:  Would the government like to be heard on

13  the Temple letter?

14           MR. TAAFFE:  Sure, Your Honor.

15      We're not quite sure why it's being proffered, but our

16  objections are that it's first of all, the statement of a

17  lawyer which itself is not evidence and there's no evidence

18  that letter was addressed to or found its way to any witness in

19  this case.  Aside from plaintiff herself perhaps.

20      So it's hearsay, it's not relevant and excludable on a

21  number of grounds.

22           THE COURT:  Okay, I assume it's being offered to show

23  that the plaintiff engaged in activity which would not be

24  hearsay, correct?

25           MR. TAAFFE:  It wouldn't be.  Of course  we've
```

1    stipulated to that.

2          THE COURT:  They're entitled to meet their burden

3    through the means of their choice regardless whether you

4    stipulate.

5          With respect to the statements though, I think it's

6    admissible for that purpose.

7          With respect to the statement concerning Ms. Houston, for

8    the most part they simply repeat the allegations that Judge

9    Kessler found to be relevant in the case that this Court has

10   adopted.  There are a couple of places where I think it goes

11   beyond the scope of the Court's ruling that I would ask the

12   plaintiffs to redact.

13         And Mr. Temple, if you could follow me on the document.  I

14   would ask that you redact the last half of the last sentence on

15   page 1 beginning and to repeatedly cause significant emotional

16   anguish by EEO regulations I think the facts on them is not

17   relevant to the purpose for this being offered or in the scope

18   of the Court's prior ruling.

19         I would also ask you to redact the last sentence of the

20   second paragraph of page 2 reading rather this and have at

21   least two non plaintiffs and further retaliating against

22   traumatizing both of them.  The first sentence of the final

23   paragraph line two beginning notwithstanding Ms. Burton's

24   traumatization. This practice appears to be the same with

25   regard to Ms. Houston.  That should be redacted.

1          I also would like the reference to verdict in Federal

2     Court against HUD to be redacted.

3          Apart from that I'll allow the admission of the document

4     to show that Ms. Burton complained about retaliatory, okay.

5               MR. TAAFFE:  One other minor housekeeping matter,

6     Your Honor.

7               THE COURT:  Yes.

8               MR. TAAFFE:  I thought we had joint exhibits up

9     front.  Mr. Temple tells me that he in fact reserved as to

10    Joint Exhibit 5.  I just want to be clear about that so that we

11    don't open something in front of the jury.

12              MR. TEMPLE:  Counsel is almost right.  The Court

13    might be reminded that just before you admitted the document I

14    asked that we have an opportunity to scrub them to make sure

15    that they were in order.

16         We determined that signed, dated and authenticated.  It

17    was not one of the agreements that we had. One of the documents

18    we actually agreed to and spoke about it.

19              THE COURT:  I'm sorry.  Joint 5 is an email from

20    Ms. Brown to Ms. Stowe?

21              MR. TAAFFE:  Yes.

22              MR. TEMPLE:  One second, Your Honor.

23         (Pause.)

24         Your Honor, I feel a little bit vulnerable here, it's

25    Joint 4.

1          THE COURT:  You are having trouble with numbers

2   today.

3          MR. TEMPLE:  I am.

4          MR. TAAFFE:  Your Honor, we can go over this later

5   but I just want to be clear about whether it's been admitted so

6   far or not.

7          THE COURT:  I will allow Mr. Temple to object to it

8   if he thinks that there's an objection.

9      Who wrote this document?

10          MR. TAAFFE:  Elie Stowe.

11          THE COURT:  So Ms. Stowe will be able to lay a

12   foundation for it?

13          MR. TAAFFE:  Yes.

14          THE COURT:  This will be admitted subject to

15   foundation and any cumulative issues.  When counsel says dozen

16   upon dozen of emails that starts to make me nervous.

17          MR. TAAFFE:  There's one issue that we are going to

18   run into because we can't recall witnesses.

19      For example, when Ms. Burton testifies I would like to be

20   able to cross examine her with things that she might not have

21   seen.  Because we won't be able to call witnesses at that

22   point, we'll have to lay the foundation in our case in chief.

23   I don't see a way around that, but there's an issue that will

24   arise.

25          THE COURT:  But you will make, if there's an

1  objection, you will make a proffer to lay that foundation and

2  in good faith.

3          MR. TAAFFE:  Yes, there are emails to and from.

4          THE COURT:  That's no problem.  You ready?

5          MR. TEMPLE:  Yes, sir.

6          THE COURT:  Ms. Burton, how are you?

7          THE PLAINTIFF:  Fine.  How are you, sir?

8          (Pause.)

9          (Jury present.)

10         THE COURT:  Welcome back, ladies and gentlemen, hope

11  you had a nice lunch.

12     Mr. Temple, please call your first witness.

13         MR. TEMPLE:  Good afternoon, Your Honor.  The

14  plaintiff would like to call Mr. Keith Surber, please.

15         THE COURT:  Good afternoon, sir, how are you?

16         THE WITNESS:  Just fine, sir, thank you.

17         THE COURT:  Could you remain standing and raise your

18  right hand.

19              PLAINTIFF WITNESS KEITH SURBER SWORN

20         THE COURT:  Mr. Surber, feel free to pour yourself

21  some water before we get started.

22         THE WITNESS:  I'm fine, thank you.

23         THE COURT:  Please proceed, Mr. Temple.

24                       DIRECT EXAMINATION

25  BY MR. TEMPLE:

1   Q.   Good afternoon, Mr. Surber?

2   A.   Good afternoon.

3   Q.   You recall we met on a couple of prior occasions?

4   A.   Yes.

5   Q.   Would you please state your full name for the record to

6   the jury?

7   A.   Keith Weldon Surber.

8   Q.   Mr. Surber, are you presently employed?

9   A.   Yes.

10  Q.   With whom?

11  A.   I'm with the U.S. Department of Housing and Urban

12  Development.

13  Q.   You have been with the department since about 1992; is

14  that correct?

15  A.   That's correct.

16  Q.   Where are you presently assigned at the Department of

17  Housing?

18  A.   I'm in the Office of the Chief Procurement Officer.

19  Q.   How long have you been assigned there?

20  A.   Well, I've worked in the contracting office since 1992.

21  Q.   Would you tell this jury please what the office of the

22  chief procurement office does?  I'll refer to it as OCPO; is

23  that what it's referred to?

24  A.   OCPO.

25  Q.   Please, thank you?

1  A.    So generally the OCPO is responsible for all of the

2  procurement activities conducted on behalf of the agency HUD

3  all across the United States.

4  Q.    Do I understand correctly that you were assigned to the

5  HUD headquarters in approximately October of 2009?

6  A.    That's correct.

7  Q.    That's over in Southwest 700 7th Street or so?

8  A.    Yes, sir.

9  Q.    I'd like to direct your attention to July 2010 if I may.

10 Do you recall what position you held at that particular point

11 in time?

12 A.    At that time I was deputy chief procurement officer.

13 Q.    Who was your superior, please?

14 A.    Her name was Jemine Bryon.

15 Q.    How long had Ms. Bryon been your superior?

16 A.    She was my superior when I arrived in October of 2009.

17 Q.    But not before then?

18 A.    Correct.

19 Q.    What was her position at the time?

20 A.    She was the chief procurement officer.

21 Q.    Now when you arrived at HUD did you know Jemine Lewis?

22 A.    When I came to headquarters?

23 Q.    Yes?

24 A.    Yes, she was in a position there.

25 Q.    Did she work under you?

1    A.    No.

2    Q.    Did she ever work under you?

3    A.    Yes, she has.

4    Q.    In your immediate chain of command down?

5    A.    Yes.

6    Q.    When?

7    A.    When I became the chief procurement officer.

8    Q.    When would that have been?

9    A.    I was acting for about little over two years and then

10   became permanent in -- it became permanent in 2016.

11   Q.    Until then she did not work under your supervision?

12   A.    Correct.

13   Q.    Do you know a gentleman by the name of David Williamson?

14   A.    Yes.

15   Q.    Tell the jury who he is, please?

16   A.    David Williamson, he worked in the office of the chief

17   procurement officer.  He was at some point an associate.  He

18   was considered an associate chief procurement officer.  I think

19   at one point he was an acting CPO.

20   Q.    Do you know approximately when it was that he was acting

21   CPO?

22   A.    That was before I came to headquarters, so it would have

23   been before October of 2009 for a short time.

24   Q.    You are aware that Mr. Williamson was involved in the

25   settlement negotiation and agreement for Ms. Burton in 2009?

1  A.   I'm not aware of the circumstances surrounding that of who

2  was involved in the settlement.

3  Q.   You said you're not aware of whether it was

4  Mr. Williamson?

5  A.   Right.

6  Q.   Do you know Elie Stowe?

7  A.   Yes.

8  Q.   How do you know her?

9  A.   So Ms. Stowe was hired by Jemine Bryon to become the

10  assistant chief procurement officer for the office of policy.

11  Q.   That would have been approximately June 2010?

12  A.   I don't remember the time frame.

13  Q.   Did you work with Ms. Stowe when she came to work at HUD?

14  A.   I worked with her, yes.

15  Q.   She was not in your immediate chain of command; is that

16  correct?

17  A.   Correct.

18  Q.   Now at that particular point in time directing your

19  attention to June, July, 2010 through December 2010, 2011, you

20  were considered a manager at HUD; is that correct?

21  A.   Yes.

22  Q.   As a manager you were familiar with HUD's policies and

23  procedures; is that also correct?

24  A.   Yes.

25  Q.   Would you tell the jury, please, who was the secretary of

1   HUD in July 2010, please?

2   A.   We've had several.   I can't recall which one was in charge

3   at that time, I'm sorry.

4       I take it back.   It was Shaun Donovan.

5   Q.   Do you know a woman by the name of Sandra Burton?

6   A.   Yes.

7   Q.   How do you know her?

8   A.   She was an employee in the office of policy.

9   Q.   Did Ms. Burton from time to time have communications with

10  you for any business professional reasons?

11  A.   Yes.

12  Q.   Did you know what her title and duties were in that

13  office?

14  A.   Yes, I did.

15  Q.   What was her duties on the OCPO side?

16  A.   Generally her main responsibility was to perform the

17  duties of what we referred to as the audit liaison officer, the

18  ALO.

19  Q.   And the ALO.   Explain to the jury, please, what the ALO

20  did at that time?

21  A.   So throughout periods of time we get, the Office of

22  Inspector General will perform audits of our function.   And

23  occasionally as well GAO, the government accountability office

24  will.

25      If there are findings, those findings are tracked and

1  addressed, recommendations are made and we have to track all of

2  those recommendations to ensure that final disposition of all

3  of those audit findings are performed and that's the role of

4  the ALO in our office to track all of those.

5  Q.   Will you talk to this jury and explain what you mean in

6  kind of lay person's language when you talk about the IEG and

7  tracking these findings and what it really means and the manner

8  in which Ms. Burton performed her work?

9  A.   So the Office of the Inspector General, I'm not sure what

10 more I can add.  In terms of coming up with corrective actions

11 we have to do to meet their satisfaction to improve the

12 operations of the agency and in particular within OPCO.

13     So those findings are entered into a system and at that

14 time it was called ARCATS, A-R-C-A-T-S.  And they were tracked

15 in that system.

16     So the ALO then works for OCPO in  helping us resolve,

17 providing copies of documents for example, and helping to

18 resolve the management decisions in the ARCATS system.

19 Q.   I would like to put on a microscope on that for a minute.

20 The term that you used, you said corrected action.  Would a

21 corrected action mean that in certain contract situations that

22 there was a modification of the contract?

23 A.   It could potentially, yes.  If that was the finding that

24 there was something wrong with that contract that required a

25 contract modification, then the corrective action would be to

1    perform that contract modification and then provide that as

2    evidence to the IG that we had completed the action.

3    Q.    So do I understand correctly that in a case like that,

4    Ms. Burton would then review the documents and search for the

5    proper documentation for IG to corroborate that the corrective

6    action was done, correct?

7    A.    She would work with my staff on the operation side of the

8    house to get the copy of the modification necessary in order

9    that it can be provided to the IG, yes.

10   Q.    In 2010 was there an issue of a backlog for the ALO in

11   terms of the collection of documentation for purposes of

12   corrective actions and other issues of concern to the IG?

13   A.    Yes, there was.

14   Q.    And how did you become knowledgeable about that backlog?

15   A.    So there had been a request, there was a request for a

16   number of documents to close out and a finding.  We had gone

17   out and requested the operation staff, the people that worked

18   for me to provide copies of those documents against those

19   contracts.  And those documents had not been provided timely by

20   the staff in the field and in headquarters.

21   Q.    You said was that in prior years prior to 2010?

22   A.    So the audit was about timeliness of close outs of

23   contracts.  So the contracts were aged in terms of being able

24   to have them closed out in a timely manner.

25   Q.    To the extent that there was a backlog.  I apologize, I'm

```
 1   not a tech person.  But to the extent there was a backlog, what
 2   was the backlog attributed to?
 3   A.   I'm not sure if you are referring to the backlog in the
 4   close outs or if there was a backlog in providing documents to
 5   Ms. Burton.
 6   Q.   Backlog in providing documents and to which the work
 7   Ms. Burton was performing?
 8   A.   So staff for whatever reason had not provided those
 9   documents in a timely manner so that she could close out the
10   audit findings.
11   Q.   My question really is did that predate her being assigned
12   to that particular responsibility?
13   A.   I don't know the answer to that question.
14   Q.   Are you aware as to what that backlog was for Mrs. Burton?
15   A.   So none of the documents, as I understand it none of the
16   documents had been provided which required a follow up by
17   Ms. Bryon.
18   Q.   I apologize.  When you say none of, what documents were
19   provided?  What universe are you talking about when you say
20   none of the documents?
21   A.   So the documents that need to be provided to the Office of
22   Inspector General in order to close out the audit finding,
23   those would have been for example modifications to contracts to
24   actually close those contracts out.
25   Q.   Now when Ms. Burton began working as an ALO, you were
```

```
 1   aware of her work performance and her experience at the initial

 2   stage of her taking on that responsibility 2010, July 2010 to

 3   December 2010, would that be correct?

 4   A.   I'm not sure at the time she took over the role of the

 5   ALO.  I'm not sure what that time frame was, and I was not

 6   familiar with her performance prior to that.

 7   Q.   Subsequent?

 8   A.   Yes.

 9   Q.   Subsequent to her taking over you were aware of her

10   performance?

11   A.   Yes.

12   Q.   Do you know to the extent that she was knowledgeable of

13   the work that she was performing as an ALO?

14   A.   I'm sorry, could you say the question?

15   Q.   Are you aware of the extent to which she was performing

16   her duties as an ALO?

17   A.   I did have some knowledge, yes.

18   Q.   Sorry?

19   A.   I did have some knowledge.

20   Q.   I'm speaking about her?

21   A.   Yes.

22   Q.   You did have some knowledge of her performance, is that

23   what you said?

24   A.   As in performance of the duties of the AOL?

25   Q.   Yes?
```

1   A.   Yes.

2   Q.   Would you tell the jury what your knowledge consist of,

3   please?

4   A.   So as part of the role of the ALO, they  had to interact

5   with my side of the shop, the operation side on a frequent

6   basis in order to close out the audit findings.

7       There were frequent communications via emails for example

8   where we would interact on a regular basis to close out the

9   findings.

10  Q.   Were the sensitive contract and paper issues from the

11  perspective of the Office of the Inspector General on these

12  documents that Ms. Burton was responsible for finding?

13  A.   I'm sorry, I didn't understand.

14  Q.   Were there sensitive contract papers?

15  A.   Yes.

16  Q.   And why were they sensitive, please?

17  A.   Well, much of the work that we do is sensitive.  It's

18  called procurement sensitive material.  There's frequently for

19  example information that is contractor sensitive proprietary

20  information in those documents, pricing information.  So much

21  of what we do is considered procurement sensitive both pre

22  award and post award of the contracts.

23  Q.   You mentioned your team of people.  Can you tell the jury,

24  please, the names of some of the people who worked

25  conjunctively with Mrs. Burton?

1   A.   I don't know, you mean in her office or on my side of the

2   office?

3   Q.   On your staff?

4   A.   In the operation side of the house it would be myself.  I

5   have assistant CPOs below me.  One of those would have been

6   Norma Cannon, she was in my Atlanta office.

7       I also have division directors that are below the, below

8   the ACPOs so they are in various locations, they are division

9   directors in headquarters and out in the field as well.  So

10  they would be all be potentially interacting with her in trying

11  to close these audit findings.

12  Q.   You know a woman by the name of Elie Stowe?

13  A.   Yes.

14  Q.   How do you know her?

15  A.   She was hired as the assistant chief procurement officer

16  for policy.  Both Jemine Bryon and I'd interviewed her prior to

17  the selection.  So that was the first time I had any

18  interaction with her.

19  Q.   Did you participate in the decision to hire Ms. Stowe?

20  A.   Jemine Bryon made the decision to hire her.

21  Q.   In the process of the work that your outside people did on

22  the ALO, IG work, did you have communications and dealings with

23  Ms. Stowe?

24  A.   Yes.

25  Q.   What were the nature of those dealings?

1   A.   Again, generally it would be in terms of having to resolve

2   the audit findings.   This would be trying to make sure the

3   documents are provided timely and that they were responsive in

4   a timely manner to the OIG to close out those findings.

5   Q.   To the extent there was a backlog and Ms. Burton took on

6   the ALO position, did your office make any adjustments to

7   assist her in remedying the backlog?

8   A.   So I'm not familiar with when she took over as the ALO

9   necessarily.   But in terms of trying to obtain the documents to

10  address the backlog, Ms. Bryon sent an email out to all of the

11  managers instructing them, giving them a specific deadline to

12  get all of the documents in so that we could be responsive.

13  Q.   Notwithstanding the deadline, were there instances where

14  documents were needed, they were searched for but they could

15  not be located?

16  A.   I don't recall.

17  Q.   What was your grade, please, in 2010?

18  A.   I was a senior executive.

19  Q.   As a senior executive at HUD, were you familiar with the,

20  with these policies and procedures, would that be correct?

21  A.   Yes.

22  Q.   Were you familiar with their general policies and

23  regulations as well?

24  A.   So I'm not sure specifically what you're talking about

25  because HUD has dozens of hundreds of general policies and

1  regulations.

2  Q.   Let me be a little more specific.  You were familiar with

3  HUD's anti discrimination policies and procedures; is that

4  correct?

5  A.   Yes.

6  Q.   And did you have training on what we call EEO policies and

7  procedures, sir?

8  A.   Yes.

9  Q.   And as part of those policies and procedures, would you

10  tell the jury if an employee  reported to you a set of facts

11  that you thought were potentially discriminatory for gender,

12  race, national origin, religion, sexual preference whatever,

13  would it be your obligation to report that incident to HUD's

14  EEO office?

15  A.   Every employee gets trained on the EEO processes and the

16  EEO policies and procedures are posted in the department.

17      So unfortunately, it's a frequent occurrence of employee

18  complaints to the EEO that they're being discriminated against.

19  So I do not feel it's my obligation to report that to the

20  department of EEO.  That would be the employee's

21  responsibility.

22  Q.   Let me make sure I understand you.

23      I'm specifically speaking about HUD's policies and

24  practices regarding a manager who learns of an alleged

25  discrimination act.  Whether that manager has any duty to

```
 1   report that to HUD's EEO office and your answer is no; is that

 2   correct?

 3   A.    Correct.

 4   Q.    Thank you.

 5         Now HUD does have EEO offices; is that correct?

 6   A.    Yes.

 7   Q.    And EEO means Equal Employment Opportunity?

 8   A.    Yes.

 9   Q.    And would you tell the jury, please, what that office

10   does?

11   A.    Generally they conduct training annually for all

12   employees.  It's mandatory training for all employees to be

13   trained on various aspects of EEO.

14        They also serve to investigate any complaints about EEO

15   activity that are made by employees or managers for that

16   matter.  Generally they're not usually staffed enough, so they

17   contract that out to an independent EEO investigator to conduct

18   those investigations.

19   Q.    When they contract out so that the jury is clear.  So if

20   there is a claim of discrimination they review and determine

21   whether they want to accept the claim; is that accurate?

22   A.    That's correct.

23   Q.    Subject to them conducting the discrimination claim, the

24   office conducts an investigation of the claim; is that correct?

25   A.    That's correct.
```

1   Q.   When they do that they hire somebody, they contract out,

2   people conduct an investigation and they prepare a report for

3   the agency; is that correct?

4   A.   I'm not sure who it is for or on whose behalf it is.  But

5   the statement is correct that they develop a report.

6   Q.   That report is called a report on investigation or an ROI;

7   is that correct?

8   A.   Yes.

9   Q.   And that report actually contains statements from

10  potential witnesses to the alleged discrimination; is that

11  correct?

12  A.   Yes.

13  Q.   And in this particular case you are aware that Sandy

14  Burton filed a complaint to the HUD EEO; is that correct?

15  A.   Yes.

16  Q.   And you're also aware that a report of investigation was

17  done pursuant to her complaint of discrimination; is that

18  correct?

19  A.   I'm not sure.  I don't think I've actually, I don't recall

20  actually having seen the ROI.

21        MR. TEMPLE:  May I approach to refresh, excuse me,

22  Your Honor.

23  Q    (By Mr. Temple) Would a document assist you in recalling

24  the extent to which that happened?

25  A.   It might do that, yes.

1          MR. TEMPLE:  May I?

2          THE COURT:  You may.

3   Q    (By Mr. Temple) I'm going to show you this, just look at

4   it and just look up when you're finish reading it please.

5          THE COURT:  You don't want him to read the whole

6   thing?

7          MR. TEMPLE:  No, just the beginning pages.

8          THE WITNESS:  Okay.

9   Q    (By Mr. Temple) Does that refresh your recollection, sir?

10  A.    I don't believe I've ever seen this report, that I recall.

11  Q.    But you do recall giving a sworn statement for this

12  investigation; is that correct?

13  A.    Yes, I do.

14  Q.    And you recall that that sworn statement was given by you

15  in August 2011; is that correct?

16  A.    Yes.

17  Q.    In addition to EO policies, is it accurate that HUD has a

18  policy and practice that in the process of disciplining an

19  employee, the employee has rights to know what the basis for

20  the disciplinary action is?

21  A.    Yes.

22  Q.    So if an employee does something wrong, a manager or

23  supervisor is required to document it, and to disclose it to

24  the employee to give the employee an opportunity to respond

25  before any action is taken; is that correct?

1   A.   That sounds about right.

2   Q.   And HUD also employs what's called progressive discipline;

3   is that correct?

4   A.   Yes.

5   Q.   Would you tell this jury, please, what progressive

6   discipline is?

7   A.   So progressive discipline is used in a case where an

8   employee commits an act, it's either, it can be either a

9   performance related act or a misconduct act.

10      If it's a first offense, then there's a certain level of

11  discipline that you would impose.  If there are subsequent

12  offenses, then the level of discipline may serve to be

13  expanded.

14      So for example, the first offense could be such as a letter

15  of counseling, then the second incident might be a suspension

16  and could lead all the way to removal.

17  Q.   In the HUD EEO process, there is such a device called

18  reissue; is that correct?

19  A.   Yes.

20  Q.   Are familiar with that process?

21  A.   Yes.

22  Q.   And you are also familiar with the settlement process of

23  the agency in discrimination cases; is that correct?

24  A.   In alleged discrimination cases, yes.

25  Q.   And you are aware that in such settlements HUD imposes a

```
 1   level of confidentiality around those settlements; isn't that
 2   correct?
 3   A.   I'm not sure if that's the case in every case, but in some
 4   cases I know there is, there are considered confidential
 5   settlement agreements.
 6   Q.   Did you come to learn that Ms. Sandy Burton entered into a
 7   settlement agreement pursuant to a discrimination complaint in
 8   2008.  She entered into a settlement agreement in 2009?
 9   A.   I did come to know about that, yes.
10   Q.   And did you also come to learn that that settlement
11   agreement was confidential?
12   A.   I did come to learn that, yes.
13   Q.   And did you learn as well that at some point that Sandy
14   Burton alleged that Elie Stowe approached her in 2010 shortly
15   after she arrived, Stowe, at HUD and told her that she knew
16   about her settlement agreement?
17   A.   I have become aware of that, yes.
18   Q.   Would you tell this jury you became aware of that at what
19   point?
20   A.   I don't know exactly when I became aware of that.  It was
21   well after the, obviously before the agreement had been put in
22   place.
23   Q.   Do you recall in 2010?
24   A.   I don't know the exact time frame.
25   Q.   Now how many people did you supervise in 2010, July?
```

1  A.   So I directly supervised depending on how many vacancies I

2  had, probably four to five people and there were as many as 90

3  under my responsibility.

4  Q.   You are a good supervisor to be accessible to these people

5  who were under your purview; is that accurate?

6  A.   Yes.

7  Q.   And so you had an open door policy; is that correct?

8  A.   That's correct.

9  Q.   By open door policy that meant that people like Ms. Stowe

10 and others could contact you and discuss with you concerns that

11 they had about the workplace; is that correct?

12 A.   It wasn't just about the workplace.  I had open door

13 policy that anybody could come and talk to me about any issues

14 they may have whether they're under my supervision or not.

15 Q.   And for that reason that door of yours was open to

16 Ms. Burton if she needed to speak to you; is that correct?

17 A.   Yes, it is.

18 Q.   And Ms. Burton took advantage of that policy because from

19 time to time, this is a general question, she would indeed come

20 to speak with you or write you about concerns that she had in

21 the workplace; is that correct?

22 A.   Yes.

23 Q.   And the concerns that she primarily addressed with you

24 were concerns that she had about her relationship with Elie

25 Stowe in the workplace; is that correct?

1   A.   A number of the conversations were around that

2   relationship, yes.

3   Q.   A number of the conversations, is that more than two?

4   A.   Yes.

5   Q.   Is it more than ten?

6   A.   I don't know, I don't take notes of conversations and I

7   don't count how many there are.

8   Q.   As a manager is it your practice not to take notes of

9   important conversations in your workplace?

10  A.   I would say no if it was work related.  For example,

11  people under my supervision and it was going to be something

12  that I needed to deal with at a later date.

13  Q.   Did Ms. Stowe not come to you in July, August 2010 saying

14  I'm having some problems with Elie -- excuse me -- with

15  Ms. Burton not coming to you in 2010, July, August, saying I'm

16  having some problems with Elie Stowe?

17  A.   So I would have to look at dates or documents to refresh

18  my memory on the exact date the conversation may have occurred.

19  But there were conversations where she referenced concern with

20  Ms. Stowe.

21            MR. TEMPLE:  If I may approach, Your Honor?

22            THE COURT:  You may.

23            MR. TEMPLE:  Counsel, these are joint exhibits and

24  plaintiff's exhibits.

25            THE COURT:  I'll have to ask counsel to stay at the

1  mic.

2  Q    (By Mr. Temple) May I direct your attention, please, to

3  Joint Exhibit Number 10.

4      Strike that, excuse me.

5      Would Ms. Burton CCed documents, forward documents that she

6  had sent to Ms. Stowe?

7  A.   Yes, I was CCed on a number of emails from Ms. Burton.

8  Q.   Do you know what it was?

9  A.   I don't know necessarily why she would copy me on them, if

10  she thought I was in her supervisory chain or if it's just

11  because of the open door policy that she felt that she would

12  copy me on those documents.

13  Q.   In fact, when she talked to you she told you that she was

14  concerned and she wanted you to know for the record what was

15  going on with her to protect herself from what she deemed to be

16  hostile and adverse treatment from Elie Stowe; isn't that

17  correct?

18  A.   I believe that was the intent of the emails, yes.

19  Q.   And when you learned that she was having those types of

20  problems and she was afraid of what was happening in her

21  relationship with Ms. Stowe, can you tell the jury what you

22  did?

23  A.   So there were a number of occasions.  One occasion; for

24  example, was where I reminded her that I was not in her

25  supervisory chain, that she needed to take these up through her

1   supervisory chain in order to take any action.

2       There was one additional email that I recall where I

3   forwarded to Priscilla Lewis as our admin officer for her

4   records as well.

5   Q.   Why did you forward it to Priscilla Lewis?

6   A.   Because Priscilla Lewis was our liaison with our Employee

7   Labor Relations division.

8   Q.   Did you not evaluate the content of Ms. Stowe's

9   communication to you to ascertain whether there was a

10  possibility that she was in a hostile workplace situation as

11  she was claiming to you?

12  A.   I did not.  Because as I explained, I was not in her

13  supervisory chain.  I was not in a position to address that.

14  Q.   Did I cut you off, I'm sorry?

15  A.   No.

16  Q.   And it was your view that it wasn't your responsibility to

17  report that to the EEO office; is that correct?

18  A.   That's correct.

19  Q.   When you send the documents that she sent to you to

20  Ms. Bryon, did you then communicate with Ms. Bryon to assess

21  whether or not this employee was in a hostile workplace

22  situation?

23  A.   No, I did not.

24  Q.   In fact, you didn't believe, did you, that Ms. Burton was

25  telling you the truth, isn't that correct?

1   A.    I'm sorry, I missed the first part of the question.

2   Q.    I'm sorry.  I said that you did not believe that when

3   Ms. Burton was communicating to you these concerns about Elie

4   Stowe that Ms. Burton was telling you the truth; isn't that

5   correct?

6   A.    That is correct.

7   Q.    That was your view even as of August of 2010 when you gave

8   a sworn statement to that effect to the EEO investigator that

9   you believed Stowe and you didn't believe Burton; isn't that

10  correct?

11  A.    I did not believe Burton.

12  Q.    At that time you did not supervise her; is that correct?

13  A.    That's correct.

14  Q.    And you did not investigate any of the claims, the factual

15  claims that underpinned her concerns that she was being subject

16  to a hostile workplace environment; isn't that correct?

17  A.    I don't know that they were factual claims but they were

18  claims.

19  Q.    Well, you wouldn't unless you conducted an investigation;

20  is that correct?

21  A.    Correct.

22  Q.    And you wouldn't know unless you asked EEO to conduct an

23  investigation; is that correct?

24  A.    There may be other ways to do that but that would be one

25  way to doing that.

1          MR. TEMPLE:  Your Honor, could we take a short break?

2          THE COURT:  Well, you need more than five minutes?

3          MR. TEMPLE:  That's perfectly fine.

4          THE COURT:  Take a five minutes recess.

5      Why don't you take them back.

6          THE DEPUTY CLERK:  Okay.

7          THE COURT:  Ladies and gentlemen, we're going to take

8  a quick recess.

9          (Jury excused.)

10         THE COURT:  Sir, you can just relax for five minutes.

11 Don't discuss your testimony.

12         MR. TEMPLE:  Thank you.

13         (Witness excused.)

14         (Recess at 2:15 p.m.)

15         (Proceedings resumed at 2:21 p.m.)

16         (Witness resumes the stand.)

17         (Jury present.)

18         THE COURT:  Please proceed, Mr. Temple.

19 Q    (By Mr. Temple) Are you familiar with HUD's telework

20 policy effective July through August 2010?

21 A.   Yes.

22 Q.   Would you tell the jury, please, what it consisted of?

23 A.   The telework policy for department basically is a guide

24 that is used to determine how, it's the guide that shows how to

25 process telework applications and provides information for

1   managers and what they should consider and whether or not to

2   grant a telework application or whether they deny it and for

3   example how many days an employee may telework.  It's roughly.

4   Q.   Were you familiar with HUD's performance process for

5   evaluating its employees?

6   A.   Yes.

7   Q.   That process required that HUD gave employees both, both

8   midyear and annual end of year evaluations; is that correct?

9   A.   Yes.

10  Q.   And the end of the year evaluations were required to be

11  given at the end of the fiscal year which was September 30th;

12  is that correct?

13  A.   I believe that is correct.  There was a point in time when

14  HUD was doing them on a calendar basis but I believe at that

15  time they were fiscal year.

16  Q.   Let me ask you.  In 2011 the problems that Ms. Burton had

17  communicated to you regarding Ms. Stowe continued; is that

18  correct?

19  A.   Yes.

20  Q.   In fact, you became aware that she did individually go to

21  the HUD EEO office to complain about them; is that correct?

22  A.   Yes.

23  Q.   And a formal complaint was accepted and filed by

24  Ms. Burton in March 2011; is that correct?

25  A.   I'm not sure of the date, but yes there was an EEO

1    complaint that was filed and accepted.

2    Q.    During that time Ms. Burton would communicate with

3    Ms. Stowe and others about workplace issues and simultaneously

4    communicate a record of her communications with them to you; is

5    that correct?

6    A.    There were some emails where I was copied on, yes.

7    Q.    And she did that according to her to protect herself and

8    to make a record to management at HUD; is that correct?

9    A.    I don't know that I can go to her motive behind it.

10   Q.    I'm going to share with you an email that's premarked and

11   moved into evidence already Joint Exhibit 25.

12       Look up when you're finished, please?

13              THE COURT:  Is this published?

14              THE DEPUTY CLERK:  Working on it right now.

15              (Pause.)

16              THE COURT:  Counsel, for the joint exhibits we'll go

17   ahead and publish unless I hear an objection otherwise.

18   Q    (By Mr. Temple) Do you recognize this document, sir?

19   A.    Yes, I do.

20   Q.    And it was sent to you approximately March 2nd, 2011?

21   A.    Yes.

22   Q.    And it also included two, a second e-mail at the bottom of

23   the page.  Do you see that?

24   A.    Yes.

25   Q.    And it was sent to Ms. Stowe; is that correct?

1    A.    Correct.

2    Q.    When you received, you recall receiving this document?

3    A.    Yes.

4    Q.    And when you received this document were you concerned

5    about whether Ms. Stowe was creating a hostile situation

6    workplace for Ms. Burton?

7    A.    I was not.

8    Q.    And did you investigate whether the allegations of

9    Ms. Burton were true?

10   A.    I did not.

11   Q.    And if you saw that an employee was experiencing this type

12   of rudeness and disrespect allegedly hanging up and being

13   disrespectful by a superior, why would that not be of concern

14   to you?

15   A.    First of all, I think it was an allegation and I don't

16   know the context in which the conversations occurred.  This is

17   just one end of it.  One side of it.  But there clearly had to

18   have been more to it than that.

19   Q.    To the extent that you received this, did you place this

20   into a file?

21   A.    No.

22   Q.    And do you memorialize it in any way?

23   A.    All of my emails are saved so I don't know if you refer to

24   that as memorializing but that was the extent of it.

25   Q.    You didn't ask Elie Stowe what's going on, correct?

1    A.    Correct.

2    Q.    And you didn't ask Jemine Bryon what's going on; is that

3    correct?

4    A.    To the best of my recollection I believe so.

5              THE COURT:  Ladies and gentlemen, to the extent

6    you're wondering, any exhibit that's been admitted into

7    evidence and shown to a witness will go back with you into

8    deliberations.  So you will have copies of the physical

9    documents and hopefully counsel will draw your attention during

10   their examinations to the portions of the document that they

11   find is relevant blowing it up or highlighting it, okay.

12   BY MR. TEMPLE:

13   Q.    I'd like to direct your attention to Joint Exhibit 26,

14   please.  It's an email from Ms. Burton to Ms. Bryon, you're

15   CCed, dated March 4, 2011.  Do you see it, Joint 26?

16   A.    Yes.

17   Q.    Do you want to take a look at it and just look up when

18   you're finished, please.

19         Do you recall receiving this particular email?

20   A.    Yes.

21   Q.    At the time 8:02 a.m.?

22   A.    Yes.

23   Q.    And did you read it?

24   A.    Yes.

25   Q.    Would you read please to the jury the last, the first

1  sentence of that email, please?

2  A.   It says here is a good example of her lying about things

3  and keeping things in constant disruption and chaos for me in

4  the workplace and my telework.

5  Q.   The last sentence, please, starting with the last two

6  sentences this is --

7  A.   Sentence starting with if you chose?

8  Q.   Before that, please?

9  A.   Oh, this is a very serious accusation one of many

10  obviously with ill intentions involved.

11  Q.   Continue?

12  A.   If you chose not get involved at least it will be on

13  record that I have reached out to you many, many times for

14  support.

15  Q.   You read that; is that correct?

16  A.   Yes.

17  Q.   When you read that you then ascertained that there was a

18  HUD employee that you knew who was in some form of workplace

19  distress; is that correct?

20  A.   Yes.

21  Q.   And you had prior to that received pleas from her,

22  literally pleas from her to do something about the workplace;

23  isn't that correct?

24  A.   So I'm not sure I would have to look at the various

25  documents.  For example, this one was addressed to Ms. Bryon

1  and not to me.  So again, she was just copying me on it.

2  Q.   But she --

3            THE COURT:  Mr. Temple, you're not at the mic.

4            MR. TEMPLE:  Just nervous energy, Judge, I'm sorry.

5  Q    (By Mr. Temple) Notwithstanding that you were not the

6  primary recipient of this email, you still knew because she had

7  confided in you previously of her distress; is that correct?

8  A.   She had had discussions with me about her difficulties

9  with her managers.

10 Q.   When you received this particular email, would you tell

11 this jury, please, what you did, if anything, to address this

12 situation?

13 A.   I didn't do anything with it because it was addressed to

14 her supervisor.

15 Q.   So I take if Ms. Stowe, Ms. Burton would have communicated

16 about Ms. Stowe that this was creating a emotionally draining

17 situation that she might cause some harm to herself, your

18 position would be the same or different?

19 A.   In that case it might be, it might be a different

20 situation if I had reason to believe that there was some sort

21 of a, like I said emotional condition that could cause a person

22 to do some damage.

23 Q.   At this point in March 2011 she has communicated with you

24 now for over six months, you've given a statement to the EEOC

25 in August and now you're getting a series of emails where she's

1   complaining or expressing concerns at various serious levels

2   according to her own words. Did you not think that Sandra

3   Burton was having some emotional trauma in the workplace?

4   A.   I did not.

5   Q.   When an employee based upon your experience of 22 years

6   and your EEO training begins to have workplace tensions and

7   allegedly claim, or allegedly experience sex harassment, age

8   discrimination, or religious discrimination.  Do you consider

9   as a manager the possible harm or emotional victimization that

10  the employee might feel as a result of discrimination?

11  A.   Potentially.

12  Q.   What would tip the scale for you, sir?

13  A.   So sometimes it might be my own interaction and knowledge

14  of the actions of the employee if the employee is causing the

15  activity.  If they're primarily responsible for it.

16      If the employee unfortunately as frequently happens when

17  employees are being managed for poor performance or misconduct,

18  they have a sense to retaliate against the supervisor and file

19  EEO complaints.  So there's a lot of things that can go into

20  that determination.

21      Typically we might refer an employee to the employee

22  assistance program if they're having any kinds of difficulties

23  like that.

24  Q.   Did you when you got this email, did you email to

25  Ms. Burton or send her, call her and say you might want to

1  check with the employee assistance program?

2  A.   I don't recall that I did.

3  Q.   And at that particular point in time, are you suggesting

4  to the jury that there was a workplace, performance issues that

5  you knew about that effected Ms. Burton?

6  A.   I knew that there were conduct issues that were and in

7  fact, there were various emails where I had actually tried to

8  help assist her in that area.

9  Q.   Were you privy by documentation to Ms. Burton's

10 performance during the year 2010?

11 A.   So in terms of performance as in the function of the ALO I

12 have some insight into that information, yes.

13 Q.   Is that so.

14         MR. TEMPLE:  Can I direct the Court's attention,

15 please, and counsel to Plaintiff's Exhibit 100.

16         MR. TAAFFE:  What was that number?

17         MR. TEMPLE:  100.

18 Q    (By Mr. Temple) I'd like you to look at the last page of

19 that exhibit, please.

20    Do you see that page?

21 A.   Yes.

22 Q.   Do you recognize that document?

23 A.   No.

24 Q.   Did you know that Ms. Burton had completed nearly 90

25 percent of her assignments at a 100 percent ratings according

1  to her supervisor?

2  A.   I would not be, normally be aware of that.

3  Q.   Let me direct your attention, please, to Joint Exhibit 20,

4  please.  Excuse me, 27.

5     Have you seen that document before today?

6  A.   I'm not sure if I saw it during our depositions or not.  I

7  just don't recall for sure.

8  Q.   Okay, did you see it prior to our depositions which were

9  in December 2014?

10  A.   Not that I recall.

11  Q.   Direct your attention to Joint Exhibit 28, please?  You

12  recognize this document?

13  A.   No.

14  Q.   Have you ever reviewed any documents supporting

15  Mrs. Burton that were submitted to Ms. Bryon or yourself from

16  AFGE Local 476?

17  A.   Yes.

18  Q.   Would you tell the jury what that document was?

19  A.   So the document I reviewed was the response that the, that

20  her union representative submitted in response to the proposed

21  notice of proposal to remove.

22  Q.   Just so the jury is clear, you were assigned by Jemine

23  Bryon to be the deciding official on Ms. Burton's proposed

24  termination; is that correct?

25  A.   So I was assigned to be the deciding official.  I'm not

```
1   sure if it was done, if the direction came from Jemine Bryon or

2   if it was done in consultation with the Employee and Labor

3   Relations Division.

4           MR. TEMPLE:  Indulgence, Your Honor.

5       (Pause.)

6   Q    (By Mr. Temple) In any event, you became the deciding

7   official in around September 2011; is that correct?

8   A.    That's correct.

9   Q.    Would you just tell this jury, please, what the deciding

10  official's duties are when a termination is proposed for an

11  employee?

12  A.    So the deciding official reviews all relevant

13  documentation associated with the case.  Generally that

14  includes the charges, the notice of proposal to remove from the

15  supervisor.  It would include other information that's relevant

16  to the decision.  For example, whether previous incidents have

17  occurred or in the case of performance management what, what

18  the past performance had been.

19      There were, there's a number of factors that you look at.

20  Basically 12 factors a deciding official would look at to

21  determine whether they are supportive of the charges or whether

22  what we call aggravating factors or whether they are mitigating

23  factors which would warrant a lesser penalty than removal for

24  example.

25      And it would include documentation of the previous charges
```

1   if there had been some previous discipline.  If there had been

2   any, there may be some other stuff in there that I didn't

3   mention.

4   Q.   So to be clear the deciding official collects evidence or

5   hears existing evidence?

6   A.   So generally what I did in this case was I looked at the

7   existing evidence that was provided to me.

8   Q.   Now pertinent to the existing evidence that evidence was

9   given to you by the department of human resources; is that

10  correct?

11  A.   That's correct.

12  Q.   And that evidence comprised of a file with certain

13  documents in it; is that correct?

14  A.   Yes.

15  Q.   Now would you tell the jury please what you recall those

16  documents were that were in that file?

17  A.   Well based on the ones I just mentioned it was the notice

18  of proposal to remove.  There were copies of the previous

19  decisions in that file; for example, I believe the letter of

20  reprimand was in there or the letter of counseling I don't

21  remember which one.  A previous five day suspension and a

22  deciding official's determination on a previous 30 day

23  suspension for misconduct.  There would also have been

24  information regarding her pass performance ratings.

25       I'd have to look at some in terms of remembering

1   everything that would be involved, I would have to look at some

2   documents.

3   Q.    At the time that you considered those documents in the

4   file she had not received, had she, her performance evaluation

5   for the year 2010, 2011?

6   A.    That would be correct.

7   Q.    And there was a set of principles called the Douglas

8   Factors which you were required to follow as the deciding

9   official; is that correct?

10  A.    Correct.

11  Q.    Now before I get to that though, the deciding official is

12  required to be fair; is that correct?

13  A.    Correct.

14  Q.    Impartial; is that correct?

15  A.    Correct.

16  Q.    And objective; is that correct?

17  A.    Correct.

18  Q.    So the first question I want you to tell the jury, how is

19  it that if Ms. Burton is communicating this array of complaints

20  to you before you become the deciding official and then in

21  August when she's filed a complaint and you give a statement

22  against her in addition to that you are the subject of the

23  March complaint that she filed.  How is it that you could be

24  fair, objective and impartial in considering her place?

25  A.    So there are several pieces to that.  First of all when

1    she, when I was, when I was the deciding official I was not

2    aware that I was the subject of the complaint. I had only

3    provided a witness affidavit.  I didn't find out until

4    subsequently that I was actually named in the complaint as an

5    individual who was discriminating.  That came well after the

6    decision was made.

7         In terms of being impartial an objective, that is actually

8    what my entire career has been about as a former Air Force

9    officer, but also in the contracting career field.  We

10   frequently run into disputes with contractors and there's

11   always two sides to every story.  We have to be able to

12   separate the weak from the chaff and make objective decisions

13   that are in the best interest of the government whether their

14   contractor is at fault or whether the government is at fault.

15   That's what I have to do in making those kind of decisions.  So

16   that is exactly what I have to do throughout my entire career.

17   Q.   So if she's communicated to you in her concerns and told

18   you what they were, you stated here you didn't believe her.

19   And you stated the same under oath.

20        What did you do then once you became the deciding

21   official, if anything, to explore whether she was telling you

22   the truth?

23   A.   So I reviewed all of the documents in the file as well as

24   the response that she provided through her union

25   representation.  That was her opportunity to provide whatever

1   information was necessary to help me make an informed decision

2   and an unbiased decision.

3   Q.   At that particular point in time, Mr. Surber, you also had

4   a collection of emails that she had communicated directly to

5   you; is that correct?

6   A.   There were emails in my email system.  I don't know

7   whether I'd call them a collection.

8   Q.   When you received the file from the HR office, did you

9   advise them that in addition to the documents that they

10  provided to you that they there were a series of emails that

11  she either sent to you directly or CCed you that would be

12  pertinent to the issues that you were considering in her

13  termination?

14  A.   No.

15  Q.   Let me direct your attention please to Plaintiff's Exhibit

16  33.  Excuse me, plaintiff's, Joint Exhibit 30.

17       You recognize the document?

18  A.   I'm not sure.

19  Q.   It was addressed to you on or about April 28, 2011; is

20  that correct?

21  A.   That's correct.

22  Q.   In the first sentence what does Ms. Burton say to you?

23  A.   It was addressed to a number of people and it states

24  including the secretary, it states this would seem a simple

25  explanation even acceptable, but your continued track record of

1  abuse toward several employees in this policy office needs to

2  be addressed.

3  Q.   Did you at that point ask the question what other

4  employees Ms. Burton was referring to?

5  A.   Not that I recall.  I'm not sure that I even read this

6  message at the time.  There was a point in time where I stopped

7  opening up emails from her.

8  Q.   When was that point in time?

9  A.   I don't recall the date.  It was just a point this time.

10  Q.   Why would you have stopped opening emails from Ms. Burton?

11  A.   Because as I had reminded her many times I'm not in her

12  supervisory chain and she needs to address her issues through

13  other means such as through her supervisor or her supervisor's

14  supervisor.  In this case she even addressed it to the

15  secretary of HUD.

16  Q.   Did you know that when she was talking about another

17  employee, that she also told the secretary of HUD that

18  Ms. Stowe was conducting similar behavior towards another

19  employee in that office?

20  A.   So I'm not sure about that because again as I said I don't

21  recall reading this email.  So I may not have opened it up and

22  read it.

23  Q.   You have heard the name Tonya Houston; is that correct?

24  A.   I have.

25  Q.   And you did hear that Ms. Stowe was accused of finding a

1   document, a settlement agreement pertinent to Tonya Houston's

2   prior claim of discrimination and confronted Tonya Houston with

3   the actual documentation?

4   A.   So I have become aware of that Ms. Stowe found a folder of

5   some sort.  I don't know if confronting it with her is

6   necessarily is the correct descriptive, but that she did have a

7   discussion with her about it.

8   Q.   That notion of finding the folder was not what Ms. Houston

9   claimed though; isn't that correct?

10  A.   I'm not sure.

11  Q.   And you became aware or did you not that Ms. Burton did in

12  fact contact the secretary of the Department of Housing

13  regarding the alleged retaliation that both she and Tonya

14  Houston were experiencing from Ms. Stowe?

15  A.   No, I'm not familiar with that communication.

16  Q.   And were you made aware at all of a communication from her

17  counsel and Ms. Houston's counsel to the secretary of the

18  department urging their intervention at the highest level?

19  A.   At the time I was not.  I think I had seen something

20  related to that subsequently.  I don't know if it was the

21  discovery process or where I saw it.

22  Q.   Did you during the time that you were the deciding

23  official conduct any investigation in your assessment of

24  whether she should be terminated to see whether there was in

25  fact similar related type retaliation being conducted by

```
 1  Ms. Stowe to Ms. Houston?

 2  A.   No.

 3  Q.   Was it peculiar to you -- strike that.

 4       When you were looking at whether Ms. Burton should be

 5  terminated, part of the Douglas Factors is to look at the past

 6  history of the government employee; is that correct?

 7  A.   Yes.

 8  Q.   And did you look at Ms. Burton's past history and learn

 9  that she worked for the government for 30 years before she came

10  to HUD?

11  A.   Yes.

12  Q.   And did you note that she had no performance problems

13  during that 30 year period?

14  A.   I was not aware of any information regarding anything

15  prior to the last three years.

16  Q.   Did you note that the infractions that were before you all

17  occurred subsequent, the disciplinary actions all occurred

18  subsequent to her assignment to Ms. Stowe?

19  A.   All of the actions occurred subsequent to her assignment

20  to the policy shop, yes.

21  Q.   The disciplinary actions that were before you in fact only

22  occurred after her assignment to Ms. Stowe; isn't that correct?

23  A.   I'm not sure if the last one was under Mr. Blocker or not,

24  but it would have been under the direct reporting relationship

25  of Ms. Stowe, yes.
```

1  Q.   Directing your attention to exhibit, Plaintiff's Exhibit

2  32.

3  A.   You said 32?

4  Q.   Yes, sir, Joint Exhibit 32.  This is a memo from

5  Ms. Burton from Ms. Bryon dated May 8th, 2011, is that correct?

6  A.   Correct.

7  Q.   And was this document also in the collection of documents

8  that you reviewed during the time that you reviewed the issue

9  of termination for Ms. Burton?

10  A.   Yes.

11  Q.   And directing you to page 3 of this exhibit.  There's some

12  writing there, do you see that?

13  A.   Yes.

14          MR. TEMPLE:  May I publish?

15          THE COURT:  You may.

16      Ladies and gentlemen, can you all make out these exhibits?

17          THE JURY:  Uh-hmm.

18          THE COURT:  For the most part.

19  BY MR. TEMPLE:

20  Q.   Directing your attention to page 3.  This writing can you

21  read that into the record please?

22  A.   It says employee refuses to sign as acknowledgment of

23  receipt, signed Jemine Bryon.

24  Q.   During the time that you were considering Ms. Burton's

25  termination, did you inquire about why the employee refused to

1   sign?

2   A.   No.

3   Q.   Did you have any firsthand statements from Ms. Burton

4   regarding the underlying incident that led to her suspension?

5   A.   I'd have to look at emails, I don't recall for sure, but

6   if there were there may have been some emails that could have

7   addressed them.

8   Q.   Did you have any direct evidence of Ms. Burton at any time

9   physically threatening Ms. Stowe?

10  A.   No, not that I recall.

11  Q.   Directing your attention to Joint Exhibit 33 please.  Have

12  you ever seen that document before today?

13  A.   Not that I recall.

14        MR. TEMPLE:  Indulgence, Your Honor.

15      (Pause.)

16  BY MR. TEMPLE:

17  Q.   Have you viewed any communication between Burton and the

18  union at any point before your proposed termination?

19  A.   I believe there were some emails where she copied the

20  union on some of those communications that I was also copied

21  on.

22  Q.   Did you have any concern about her copying the union?

23  A.   Yes.

24  Q.   And why would that happen, what would have been your

25  concern?

1  A.    First of all the concern, there were two concerns.  First

2  of all one, part of it was violation of her supervisors

3  instruction not to do so.  But the second one is also because

4  of sensitivity of the work that we do.  And that document

5  should not routinely be provided outside of our organization.

6  So there could be sensitive or propriety information, things

7  like that.

8  Q.    When you asked Ms. Burton to stop listing the union in

9  those confidential communications she did so didn't she?

10  A.    I did not ask her to stop doing those, that was her

11  supervisor.

12  Q.    She did so when she was asked, did she not?

13  A.    I don't recall for sure.

14  Q.    Going into August 2011, did you have any face to face

15  communications with Ms. Burton?

16  A.    Not that I recall.  If I did I would not have taken any

17  notes or anything like that.

18  Q.    Directing your attention to exhibit, Joint Exhibit 39

19  August 24th, 2011.  At that point Mr. Blocker was coming on

20  board with Ms. Stowe to manage Ms. Burton; is that correct?

21  A.    I believe he came on board as her direct supervisor in the

22  June of 2011 time frame.

23  Q.    Do you have any idea of what Ms. Burton's emotional status

24  is at that point in time?

25  A.    No.

1   Q.   Do you know if she is being given assignments?

2   A.   No.

3   Q.   Do you know if she is being properly evaluated?

4   A.   No.

5   Q.   Do you know if she's being given the proper information to

6   do her job?

7   A.   No.

8   Q.   Has anyone in your hierarchy as of August 2011, do you

9   know if the secretary has done anything to assist Ms. Burton?

10   A.   No.

11   Q.   Do know in the assistant secretary has done anything to

12   assist Ms. Burton?

13   A.   We don't have an assistant secretary.

14   Q.   Do you know if the office of the EEO has done anything to

15   assist Ms. Burton?

16   A.   No.

17   Q.   Do you know if your office, the office, the OCPO has done

18   anything to assist Ms. Burton?

19   A.   No.

20   Q.   Do you know if the deputy or any other managers of the

21   office has done anything to assist Ms. Burton?

22   A.   No.

23   Q.   And that is exactly the same as it was for Tonya Houston;

24   isn't that correct?

25   A.   I'm not familiar with all of the circumstances of Tonya

1  Houston's case.

2  Q.   I'd like to direct your attention please to Plaintiff's

3  Exhibit 80.  You recognize this document?

4  A.   Not the document itself per se, but I understand the

5  content of the document, yes.

6  Q.   Okay.  This is marked as Plaintiff Exhibit 80 and without

7  objection plaintiff would move it's admission into evidence?

8           MR. FIELD:  No objection.

9           THE COURT:  It's received.

10      (Plaintiff Exhibit No. 80 was received into evidence.)

11 BY MR. TEMPLE:

12 Q.   What do you understand this document to represent, could

13 you tell the jury please?

14 A.   So this is an in-depth discussion of what's referred to as

15 the Douglas Factors that we referred to previously.  Basically

16 twelve elements a manager is to take into consideration when

17 determining or when making, well when proposing and when making

18 final decisions on disciplinary action or action related to

19 performance as well.

20 Q.   Now the Douglas Factors are applied across the entire

21 federal government; is that correct?

22 A.   That's correct.

23 Q.   Would you read number one to this jury please?

24 A.   So number one to consider is the nature and seriousness of

25 the offense and its relation to the employee's duties, position

1   and responsibilities including whether the offense was

2   intentional or technical or inadvertent or was committed

3   maliciously or for gain or was frequently repeated.

4   Q.   Just to be clear Mr. Surber, your job as the deciding

5   official is to take that particular principle number one and

6   apply it to the situation before you; is that correct?

7   A.   Correct.

8   Q.   And in so doing you look at the information that you have;

9   is that correct?

10  A.   That is correct.

11  Q.   Now are you also able to expand upon the limited record

12  that was given to you by HR in doing so?

13  A.   I'm not sure if you're able to do that or not.

14  Q.   So to be clear if you have these Douglas Factors that you

15  have to apply and if that information wasn't in your possession

16  you could not apply those factors to Ms. Burton; is that fair

17  to say?

18  A.   I think that's a fair assessment, yes.

19  Q.   I would like to take factor number one and would you tell

20  this jury how you applied that factor to Ms. Burton when you

21  considered whether she should be terminated.

22  A.   I can't remember exactly how it added up.  I know there's

23  a -- I have a record of all I applied the Douglas Factors in

24  each and every one of them.  How I determined whether they were

25  a mitigating factor or whether they were an aggravating factor.

1   But in the long run if I recalled correctly, I determined that

2   this was an aggravating factor.

3   Q.    Let me make sure I understand what you just said, okay.

4   You're telling the jury that you have a contemporaneous record

5   whereupon you analyze factor one and apply it to this

6   particular situation; is that your testimony?

7   A.    Correct.

8   Q.    Okay, and did you keep that information in a file?

9   A.    I guess it kind of depends on what you would call a file.

10  When I had all of the documents that were provided to me, I put

11  them all in a folder so they'd all be in one place.  So when I

12  created the documentation of my Douglas Factors, I would have

13  printed that out and kept it in that folder as well.

14  Q.    Did you provide that particular analysis of your

15  application to the Douglas Factors to your lawyers, so that

16  your lawyers could give it to Ms. Burton's lawyers in this

17  case?

18  A.    I provided it to the Employee and Labor Relations

19  Division.

20  Q.    Did you provide it to the lawyers in this case?

21  A.    I'm not sure in terms of ever or at the time?

22  Q.    Ever, ever, ever, ever, ever?

23  A.    I don't recall if it was provided as part of discovery or

24  not.

25  Q.    So absent that documentation, you cannot explain then how

1   you applied the first principles of Douglas Factors to Ms.

2   Burton's proposed termination, is that your testimony?

3   A.   I would want to be specific as to exactly how I provided,

4   how I took into account each factor.  There were twelve

5   factors, there was a lot of information to address there.  So I

6   wouldn't want to guess at how I did it.

7   Q.   And the context without guessing though, were you able to

8   objectively, impartially and fairly apply factor number one to

9   Ms. Burton given what your previously expressed biases were?

10  A.   So I don't, I've never expressed any biases towards or

11  against her.  I was able to be objective and make an impartial

12  decision based on all of the information I had in front of me.

13  Q.   Can you read please to the jury number 2 of the Douglas

14  Factors.

15  A.   Number 2 is to consider the employee's job level and type

16  of employment including supervisory or fiduciary role, contacts

17  with the public and prominence of the position.

18  Q.   Before we go there, would you tell this jury something

19  please.  Would you tell this jury whether you deemed

20  Ms. Burton's behavior under the first principle to be

21  malicious?

22  A.   I don't know that I ever made a conscious determination of

23  such.

24  Q.   Did you deem it, taking from your answer, you did not make

25  that determination; is that correct?

1  A.   As is related to item number two that's correct.

2  Q.   As related to number one?

3  A.   Related to number one?  I don't know that I would make

4  that same statement.

5  Q.   You did not deem it to be intentional, did you?

6  A.   I don't know.  I would have to go back and look at the

7  documentation I prepared.

8  Q.   Where is that documentation as we speak today?

9  A.   It should be an exhibit.

10  Q.   An exhibit where?

11  A.   In one of these folders.

12  Q.   Pertinent to number 1, did you make a factual

13  determination that Ms. Burton actually, physically threatened

14  Ms. Stowe?

15  A.   I don't recall making that determination.

16  Q.   Did you make any determination that she threatened even

17  verbally Ms. Stowe?

18  A.   Not that I recall.

19  Q.   Directing your attention to number 2.  Did you make a

20  determination that you recall about whether that factor applied

21  to Ms. Burton?

22  A.   I did.

23  Q.   What determination did you make?

24  A.   I determined that because of her position as the ALO, that

25  the action that she had taken, the actions that she had taken

1  resulted in a determination, that it was an aggravating factor.

2  Q.   I'm sorry, I didn't have that word in school, aggravating.

3  Can you tell me what that word means and explain it so the jury

4  understands please?

5  A.   I think I may have explained it before.  But an

6  aggravating factor is you look at these twelve aspects of

7  different performance and conduct and things like that.  And

8  you look at them in terms of; for example, in her role was the

9  conduct that occurred so bad that it was an aggravating factor

10 warranting a severe penalty.

11      If you look at her role and; for example, if it's a lesser

12 role and it doesn't involve fiduciary responsibility or

13 interactions with the private sector, then you may consider

14 that a mitigating factor which can serve to lessen the penalty

15 that's imposed.  The other choice is also the deciding official

16 could determine that it's a neutral that it's neither

17 aggravating nor mitigating an it's just not taken into account.

18 Q.   So an aggravating factor is like a plus.  A mitigating

19 factor is like minus?

20 A.   Depends on your point of view.  From the employee I would

21 say no, it would be the opposite way.

22 Q.   I'm a little slow, I'm sorry.

23      Let me go back to that though okay because to the extent

24 that you consider it an aggravating factor, did you consider it

25 an aggravating factor pertinent to Ms. Burton's ALO duties?

1  A.   I determined that this factor number two was an

2  aggravating factor because of the relationship that she had in

3  that position.

4  Q.   What did you know, tell this jury please.  What did you

5  know at that particular point in time about what Ms. Burton was

6  doing as an ALO in the performance of her duties that made your

7  application of this factor aggravating?

8  A.   Again I could be more specific if I had the document in

9  front of me.  But generally I would say that it was because of

10  her position at the ALO that she was interacting frequently

11  with the Office of Inspector General.  As well as other people

12  throughout the department.

13  Q.   To your knowledge, sir, can you identify one personal

14  interaction that Ms. Burton had with someone in the Inspector

15  General's office that mirrored an allegation that Elie Stowe

16  was charging against her to take her job?

17  A.   I'm not --

18          MR. FIELD:  Objection, Your Honor.

19          THE COURT:  Hold on.  What's your objection?

20          MR. FIELD:  Mischaracterizes the record.  Elie Stowe

21  did not propose.

22          THE COURT:  Rephrase.

23  BY MR. TEMPLE:

24  Q.   Let me rewind then okay. David Blocker proposed to take

25  Ms. Burton's job; is that right?

1  A.   Yes.

2  Q.   And David Blocker when he proposed to take Ms. Burton's

3  job had only been working at HUD for about three or four

4  months; is that correct?

5  A.   The time frame sounds about right.

6  Q.   And David Blocker under your own policies and procedures

7  would not have been competent or qualified to evaluate

8  Ms. Burton because HUD's policies and procedures required a

9  supervisor to evaluate an employee for one year; is that

10  correct?

11         MR. FIELD:  Objection, Your Honor, foundation.

12         THE COURT:  Overruled, to the extent you know.

13         THE WITNESS:  Actually that's not correct.  To do a

14  formal performance evaluation, the supervisor must have at

15  least 90 days of supervision of an individual.

16  Q.   Is that an annual evaluation?

17  A.   Yes.

18  Q.   In this particular situation is it your testimony that

19  Mr. Blocker independent of Elie Stowe made a determination that

20  Ms. Burton should be terminated?

21  A.   I cannot make that statement.

22  Q.   Would you not have inquired given that Mr. Blocker had

23  only supervised Ms. Burton for approximately 90 days?

24  A.   No.

25  Q.   So in your view Mr. Blocker could assess Ms. Stowe's

1  performance between July 2011 and September 2011 and make a

2  decision independently that she should be terminated; is that

3  your testimony?

4  A.   So he could, but if this was not an assessment

5  performance.  This was an assessment of conduct.  And the

6  documents that I had in front me from Mr. Blocker were

7  assessments of her conduct that she had disobeyed instructions

8  and was unprofessional.

9  Q.   Was Blocker's recommendation that you based on conduct

10 which occurred under his 90-day period?

11 A.   Yes.

12 Q.   Is it your testimony that pertinent to number two which I

13 was asking you a question about a few minutes ago.  Is there

14 any similar conduct between Ms. Burton and the individual in

15 the OIG office?

16 A.   I don't recall.

17 Q.   Pertinent to Mr. Blocker, can you tell this jury please

18 what specific conduct triggered his proposal to you that Ms,

19 his proposal that Ms. Burton should be terminated?

20 A.   There were several charges.  There were two charges with

21 several multiple specifications that were identified.  I'd have

22 to look at those documents to clearly remember exactly what

23 they were.

24 Q.   In fact, those charges Mr. Surber were related directly to

25 incidents between Ms. Burton and Ms. Stowe wherein Ms. Stowe

1   said that Ms. Burton had physically threatened her, isn't that

2   correct?

3   A.   I don't recall that being in there.

4   Q.   In fact, isn't it true that Ms. Stowe having alleged that

5   Ms. Burton physically threatened her had the agency police come

6   and escort Ms. Burton out of the building?

7   A.   I don't know what led up to that, but I am aware that that

8   happened.

9   Q.   And you're aware that that didn't happen one time did it?

10  A.   I'm sorry.

11  Q.   That did not happen one time did it?

12  A.   I don't know.

13  Q.   It didn't happen two times did it?

14  A.   I don't know.

15  Q.   It happened three times by the time you were proposing her

16  termination, isn't that correct?

17  A.   I'm not aware of that.

18  Q.   Did you investigate why it is that a manager would have a

19  30 year employee in her sixties being escorted out of the

20  government building with security if there was no physical

21  altercation?

22  A.   So there could be instances, there could be multiple

23  instances of why something like that would happen.

24  Q.   Other than the fact that there could be, my question was

25  did you, the man who was proposing or considering whether he

```
 1  should take this employee's job, did you investigate that?
 2  A.   No, I did not.
 3          THE COURT:  Counsel approach.
 4          (Bench conference.)
 5          THE COURT:  How much longer?
 6          MR. TEMPLE:  Your Honor, I was thinking aloud.  If
 7  you would indulge me, this is such a critical component.
 8          THE COURT:  Mr. Surber, would you please just step
 9  down, thank you.
10          MR. TEMPLE:  This is such a critical component of our
11  theory that this a sham and a fraud.  I want to address those
12  Douglas principles.
13          THE COURT:  You've gone through two.  You've got more
14  to go?
15          MR. TEMPLE:  There's twelve, they're not all going to
16  be intense.
17          THE COURT:  We're at the outside of your time
18  estimate.
19          MR. TEMPLE:  Can I say this.  We realize that and we
20  talked to counsel.  Our case is going to be somewhat shorter to
21  compensate for that.
22          THE COURT:  We will take our fifteen minute recess.
23  We'll come back and go from there okay.
24          MR. TEMPLE:  Thank you.
25          THE COURT:  One more thing counsel.  I was thinking
```

1    Ms. Houston came up, would you like a brief instruction or just

2    leave it?

3            MR. TAAFFE:  We would request a limiting instruction

4    such that Ms. Houston's case is not at issue here.

5            MR. TEMPLE:  No objection.

6            (Open court.)

7            THE COURT:  Ladies and gentlemen, we're going to take

8    our fifteen minute afternoon break.  Before we break let me

9    just make a couple of comments.

10       First of all, you've heard some testimony regarding prior

11   depositions and the discovery process.  What happens prior to

12   trial is a process called discovery where the parties exchange

13   documents, exchange information and make their witnesses

14   available to be deposed or questioned under oath by either

15   side.  And the deposition testimony that witnesses give prior

16   to trial during discovery is often times brought at issue at

17   trial.  So there may be times where you'll hear one side or the

18   other attempt to show that the witness's prior deposition

19   testimony for instance was inconsistent with trial testimony

20   given by particular witnesses or the depositions referred to.

21   Just to give you some context I thought I would explain what

22   that means.

23       The second thing is you've heard some testimony from

24   Mr. Serpber.

25            THE WITNESS:  Surber.

```
1              THE COURT:  Surber this morning regarding allegations

2    made by another HUD employee Ms. Houston.  I have allowed that

3    testimony simply to show that there were allegations of similar

4    retaliation lodged against Ms. Stowe, but Ms. Houston is not a

5    witness in this case.  Her allegations are not before the Court

6    and so you are not to speculate or to try to resolve the

7    validity of Ms. Houston's allegations.  What's at issue in this

8    case is Ms. Burton's allegations, is that clear, okay.

9         We'll see you back in fifteen minutes.

10         (Jury excused @ 3:31 a.m.)

11         (Recess @ 3:31 p.m.)

12         (Proceedings resumed at 3:47 p.m.)

13         (Jury present.)

14              MR. TEMPLE:  Your Honor, may we briefly approach?

15              (Bench conference.)

16              MR. TEMPLE:  Your Honor, during the break Court made

17    a few observations.  I wanted to clarify a concern because we

18    did two depositions of this man and we did a lot of discovery,

19    but one thing we have not gotten or we never heard is what we

20    heard today.  He solidified.

21              THE COURT:  Sir.  If you could step down.

22              (Witness excused.)

23              MR. TEMPLE:  He solidified the fact that he did an

24    analysis of something that's totally in opposite with the

25    direction of his testimony in the deposition.  I just wanted to
```

1  raise to the Court the concern there is a real likelihood that

2  there's a missing evidence issue here.  And I've raised it with

3  counsel already and they said file a motion.  In the serious

4  light I'm really concerned because this was a big issue for us

5  and we really probed it hard.  We didn't get this.

6          MR. FIELD:  If I might, Your Honor, I think he's

7  talking about Defense Exhibit 43.  I think it's in the

8  exhibits.  The notes of his, I'm sorry, I don't have my exhibit

9  book.  But I can show you I think it's 34 or 43.  I can check

10  and get the number.

11          I apologize, it's actually Joint Exhibit 42.  We

12  discussed in this meeting in your office and I gave you all a

13  copy and you all actually put it on your original list and it

14  came off and I asked if this was intentionally left off and you

15  said it's not.

16          MR. FIELD:  It's the page 3 and after are Mr.

17  Surber's notes.

18          MR. TEMPLE:  I want to indulge the Court now, but I

19  know this isn't authenticated but I won't burden the Court with

20  it now.

21          THE COURT:  You can ask him if this is what he's

22  referring to.  If not we can explore it further, okay.

23      (Open court.)

24      (Keith Surber resumed the witness stand.)

25          THE COURT:  The floor is yours, Mr. Temple.

1          MR. TEMPLE:  Thank you.

2                  DIRECT EXAMINATION (Cont'd)

3  BY MR. TEMPLE:

4  Q.   Before I continue with the Douglas Factors, sir, you

5  mentioned to the jury that you did an analysis of each of these

6  factors and how they applied to Ms. Burton's termination; is

7  that correct?

8  A.   Correct.

9  Q.   I would like to direct your attention, before I do, tell

10  me when you say you did analysis, can you just tell me is that

11  a narrative as to, for example, how you analyzed factor number

12  one against the facts of this particular situation of

13  Ms. Burton?

14  A.   That would be correct.

15  Q.   And I'd like to direct your attention to -- strike that.

16      When you did this narrative, why did you do the narrative?

17  A.   Well, the analysis is required by HUD's procedures,

18  policies and procedures, so in documenting my analysis, that

19  information is then used in making the final decision and in

20  the final notification to the employee.

21  Q.   Now, then does that mean that you contemporaneously do

22  your analysis as you apply these principles?

23  A.   Yes.

24  Q.   Then when you complete that analysis, did you, in some

25  document, you give that document to somebody?

1  A.    Yes.

2  Q.    Okay.  And when you do that, do you actually memorialize

3  the time and date of the analysis and authenticate it with your

4  signature?

5  A.    There's usually a draft or two versions before it becomes

6  final, and then the final one would be would done with my

7  signature on it.

8  Q.    You said it would be done with your signature on it?

9  A.    I believe that's the standard practice.

10  Q.    Is there a signature block, that signature block would be

11  there presumably for your signature; is that right?

12  A.    I would think that's what it would be for, yes.

13  Q.    I'm just being elementary.  Wouldn't it have a signature

14  block after you do something that is required and not sign it;

15  is that right?

16  A.    So I don't know if it's required necessarily.  Because,

17  for example, if it was sent via e-mail-mail, it wouldn't

18  necessarily have the signature block on it unless I had scanned

19  it and sent it in a PDF file.

20  Q.    Let me direct your attention, please, to the Defendant's

21  Exhibit 42.

22             THE COURT:  Joint 42, Mr. Temple?

23             MR. TEMPLE:  This is Joint 42.

24  BY MR. TEMPLE:

25  Q.    And in pertinent part, there's a document here.

```
 1                    MR. TEMPLE:  May I publish, Your Honor?

 2                    THE COURT:  You may.

 3    BY MR. TEMPLE:

 4    Q.   There's a document here that is admitted and it says

 5    determining appropriateness of penalty.  Penalty track list for

 6    deciding officials an analysis of Douglas factors.  Is that the

 7    document that you're referring to?

 8    A.   Yes.

 9    Q.   Now, this document, for the record, is nine pages, you

10    would agree?

11    A.   No, the exhibit actually has an e-mail-mail in front of

12    the document so I'm not sure if you're including the

13    e-mail-mail.

14    Q.   I'm not including the email, sir.

15    A.   Okay.

16    Q.   I'm talking about this document is nine pages; is that

17    right?

18    A.   Yes.

19    Q.   Now, I just want to show the jury one page at a time.

20    This is page 1 of the analysis; is that correct?

21    A.   Yes.

22    Q.   And this is page 2; is that correct?

23    A.   Actually I think the first one was page 2.

24    Q.   Let me go back, Bates 00091, 000091.  Do you see that?

25    A.   That's the first page of the analysis?
```

```
1   Q.   First page of the analysis, right?

2   A.   Yes, correct.

3   Q.   And just to be clear, this segment here, the first full

4   paragraph under one is your analysis; is that your testimony?

5   A.   Yes.

6   Q.   And let me ask you, was that narrative prepared by you and

7   finalized as part of this proposed termination or was it

8   finalized after the proposed termination?

9   A.   It would have been finalized before the proposed -- oh,

10  before the proposed termination?

11  Q.   Yes.

12  A.   As submitted by Mr. Blocker.

13  Q.   Yes.

14  A.   So I would not be looking at any of this before the

15  proposed termination.

16  Q.   Excuse me, I'm going to rephrase that.  Before your, I'm

17  sorry, before your proposed termination?

18  A.   Before I made the termination decision, yes.

19  Q.   And to that extent you made these documents

20  contemporaneously; isn't that right?

21  A.   Yes.

22  Q.   So that's the same on page 2; is that right?

23  A.   Yes.

24  Q.   And this is not anybody else's writing, it's yours; is

25  that right?
```

1   A.   That's correct.

2   Q.   And did you consult with Jemine prior to writing it?

3   A.   I don't believe I did.

4   Q.   You said you don't believe, you're not sure?

5   A.   I don't know that there was no conversation for sure, but

6   I don't recall anything.

7   Q.   Did you talk to Priscilla Lewis in the process of

8   preparing this document?

9   A.   I don't recall having any discussion with Priscilla Lewis

10  as I was preparing it either.

11  Q.   Did you talk to Ms. Stowe?

12  A.   I don't recall any conversations with Ms. Stowe.

13  Q.   And you didn't talk to Ms. Burton; is that correct?

14  A.   That's correct.

15  Q.   Let me direct your attention to page 3.   To the extent

16  there is a narrative either here or here, those are your

17  analyses of these particular factors; is that correct?

18  A.   That's correct.

19  Q.   I'm going to skip a couple of pages here in the interest

20  of time, and I want to direct your attention to paragraph 11.

21  It says mitigating circumstances, do you see that?

22  A.   Yes.

23  Q.   And you have an aggravation X there for many

24  circumstances, right?

25  A.   Yes.

1    Q.    And lastly I see the blank page here.  Is there supposed

2    to be a name there where it says print?

3    A.    Generally that would seem to be the intent of that

4    paragraph, yes.

5    Q.    Did you not print your name there when you completed this?

6    A.    I did not.

7    Q.    And why did you not?

8    A.    Based upon the prior email, I was doing this as part of an

9    email file back and forth with the employee and labor

10   relations.

11   Q.    Can you read please that narrative, that language there to

12   the jury?

13   A.    So it says, "I, print name, certify that all of the

14   information I considered in determining the appropriateness of

15   the proposed penalty has been included in this analysis of the

16   Douglas factors, and I considered all relevant Douglas

17   factors."

18   Q.    And when you said "certify," what does that mean?

19   A.    I'm stating that that's the actions that I took.

20   Q.    And you did not sign this particular document, Mr. Surber;

21   is that correct?

22   A.    That's correct.

23   Q.    And thus this document is absent a certification; is that

24   correct?

25   A.    Yes.

1   Q.   And can you tell this jury, please, having read that, and

2   I'm sure you read it at the time; is that correct?

3   A.   Most likely, yes.

4   Q.   Is there a reason, can you tell them why you did not

5   either print or execute your signature on this analysis?

6   A.   I don't know that there was a thought process that went

7   through there.  I looked at it as a working document.  It was

8   provided in e-mail version via -- as a Word document to the

9   employee at Labor Relations Division, so that they could help

10  finalize the letter.  So the employee at Labor Relation did not

11  come back to me and say that I needed to actually sign the

12  document.  Nor did our office of general counsel when they

13  reviewed the package as well.

14  Q.   Mr. Surber, you have been working for the government for

15  25 years, you have seen a lot of documents with printed

16  signatures; isn't that correct?

17  A.   Yes.

18  Q.   And you were the deciding official; is that correct?

19  A.   Yes.

20  Q.   The application of the Douglas Factors were a critical

21  component of this particular consideration process; is that

22  correct?

23  A.   Yes.

24  Q.   You knew that; is that correct?

25  A.   Yes.

1   Q.   But it is your testimony that when you completed this

2   document contemporaneously it wasn't important enough for you

3   to sign it; is that correct?

4   A.   No.

5   Q.   Let me continue with the Douglas factors, I won't be long.

6        I direct your attention, please, to the employee's work

7   history, which is number 4?

8               THE COURT:  Do you want to give him an exhibit

9   number?

10              MR. TEMPLE:  I'm sorry.

11  BY MR. TEMPLE:

12  Q.   We're back to Plaintiff's Exhibit 80.  You gave Ms. Burton

13  an aggravating, aggravation mark here for employee's past work

14  record; is that correct?

15  A.   Correct.

16  Q.   And you knew at the time that she had worked over thirty

17  years in the United States Government without any performance

18  problems; isn't that correct?

19  A.   No.

20  Q.   You didn't know that?

21  A.   No.

22  Q.   Well, if you were examining her past work history, isn't

23  that something that you would want to know?

24  A.   So I knew that she had worked for over thirty years in the

25  Federal Government.  I had no knowledge of what all of her past

1  performance records were for that entire thirty years.  What I

2  examined was what had occurred in the last three years as being

3  the most relevant.

4  Q.   And that would have been three years from what date,

5  please, sir?

6  A.   It would have been three years of her most recent

7  performance ratings.

8  Q.   And the date would have been three years from

9  approximately December 2011; is that correct?

10 A.   Or September 2011, I believe, if it was on a fiscal year

11 basis.

12 Q.   So three years from September 11th is what?

13 A.   No, I'm sorry, there wouldn't have been one for September

14 for fiscal year '11, yes.

15 Q.   Well, going back --

16 A.   So it would have been fiscal year '10, fiscal year '09 and

17 fiscal year 2008, precisely.

18 Q.   I take it from that, correct me if I'm wrong, you would

19 have considered then her performance evaluation for 2008 and 9;

20 is that correct?

21 A.   I considered the ratings that were provided to me for

22 those periods.

23 Q.   Does that mean that you would not have looked at the

24 performance evaluation?

25 A.   I don't recall actually looking at the evaluations

1   themselves.

2   Q.   Well, you've told the jury already that you did not have

3   the evaluation for 2009 and '10 as of -- excuse me, '10 and '11

4   as of December 2011; is that right?

5   A.   So there would not have been a performance evaluation for

6   fiscal year '11, correct, because the performance period had

7   not ended yet.

8   Q.   So you would have looked at the performance ratings for

9   2008 and '9; is that correct?

10  A.   Yes.

11  Q.   Would you tell this jury, please, what those ratings were?

12  A.   One, the oldest rating was unsatisfactory, and the middle

13  rating was fully successful, and then the most resent rating

14  was minimally successful.

15  Q.   Your talking about 2008, 2009?

16  A.   2008, 2009 and 2010.

17  Q.   My question was related to 2008, 2009.

18  A.   So 2008 was unsatisfactory.  2009 was fully successful.

19  Q.   And directing your attention to Plaintiff's Exhibit 1.

20  Have you seen this document before today?

21  A.   No, I have not.

22        MR. TEMPLE:  Subject to defendant's want for

23  objection, the plaintiffs would move this into evidence?

24        MR. FIELD:  No objection.

25        THE COURT:  So moved.

1      (Plaintiff's Exhibit No. 1 was received in evidence.)

2   BY MR. TEMPLE:

3   Q.   Did you factor Ms. Burton's performance, 2009 performance

4   into consideration in the context of the fact that she

5   simultaneously experienced a discrimination incident and

6   settlement?

7   A.   No.

8   Q.   You made the determination that she had the desire and

9   capability to improve her performance level, correct?

10  A.   I'm sorry, say again?

11  Q.   You made a observation that based often the documentation

12  that Ms. Burton did not have the capability or desire to

13  improve her performance level?

14  A.   That sounds like what I put in the statement, yes.

15  Q.   How did you come to the conclusion that Ms. Burton did not

16  have the capability to improve her performance level?

17  A.   So I'm not so sure if it was capability as much as it was

18  desire.  Based on the responses that was provided by her union

19  representation that she would continue to conduct herself in

20  the manner that she had been and as she had been proposed to be

21  removed for.

22  Q.   Mr. Surber, at that time, you knew, you had received at

23  least five to ten e-mails-mails from Sandy Burton begging for

24  somebody to do something about her situation.  Did you consider

25  that to your mind set when you assessed whether she had the

1  desire under principle number 4?

2  A.   No.

3  Q.   Let me direct your attention, please, to principle number

4  5.   It states, "The effect of the offense upon the employee's

5  ability to perform at a satisfactory level has affect upon a

6  supervisor's confidence and the employee's work ability to

7  perform assigned duties."

8      Again, here you gave Ms. Burton an aggravating score; is

9  that right?

10 A.   I'd have to go back and look at the document, but I

11 believe that's correct.

12 Q.   Did you consider at that point in time that Ms. Stowe may

13 have been as much the problem as Ms. Burton and that that

14 problem maybe canceled itself after if it was a problem that

15 wasn't just Ms. Burton's fault?

16 A.   No, I did not.

17 Q.   I'll skip number 6 and number 7 and number 8.  And number

18 9 and 10.  I just want to go to number 11.  Number 11?

19         THE COURT:  Mr. Temple, why don't you put it on the

20 screen for the jury.

21         MR. TEMPLE:  Yes, thank you Your Honor.

22 BY MR. TEMPLE:

23 Q.   Let me go to number 10 quickly, the potential for

24 employee's rehabilitation.  You considered that and you gave

25 Ms. Burton X for aggravation again, for aggravating again.

1    The record that you had before you, you did not consider

2  that there was anything that Ms. Burton could do to

3  rehabilitate herself; is that correct?

4  A.   What I considered was the response that she provided in --

5  as part -- from the union, and that there was no, that there

6  was no intention to change the way that she had been conducting

7  herself.

8  Q.   Can you tell this jury, please, what is it that you

9  expected with what you knew and the record that you had that

10  Ms. Burton should do to, quote/unquote, at that point in time

11  rehabilitate herself?

12  A.   So when I say, when I'm referring to rehabilitation, what

13  I'm talking about is the way -- the way you act, the way you

14  perform.  Changing the way you treat people and taking steps to

15  correct that.

16  Q.   And at that particular point in time, did you consider the

17  extent to which Elie Stowe should have similarly changed the

18  way that she behaved toward Ms. Burton?

19  A.   No.

20  Q.   At that point in time, Mr. Surber, will you tell this

21  jury, please, how the management at one single time during that

22  time that you knew about Ms. Burton's situation disciplined,

23  disciplined Elie Stowe?

24  A.   So I'm not aware of any instances where that occurred.

25  But I was not, again, her supervisory change, so that would

1    have been the responsibility of her supervisor to do.

2    Q.   Was it of concern to you?

3    A.   No.

4    Q.   Let me direct your attention, please, finally to number

5    11, please.  And number 11 is mitigating circumstances

6    surrounding the offense such as unusual job tensions,

7    personality problems, mental impairment, harassment or bad

8    faith, malice or provocation on the part of others involved in

9    the matter.  Do you see that?

10   A.   Yes.

11   Q.   Is that the exact factor that you considered when you

12   prepared this signature on number 11?

13   A.   Yes.

14   Q.   Again at number 11, you stated that it was aggravating; is

15   that correct?

16   A.   I would have to look at the form, but I believe that's

17   correct.

18   Q.   And will you tell this jury, based upon the criteria

19   before them, why you deemed this factor to be aggravating?

20   A.   Generally it's because in the beginning the employee had

21   an opportunity to respond to the charges and the specifications

22   and could have brought out anything in her response that would

23   have found that, you know, in order to -- for me to take into

24   consideration if anything was going on that might have been

25   mitigating.

1        For example, if she did have some medical problems, that

2   could have been brought out in the response that I could say,

3   okay, that's a mitigating issue then.

4   Q.   To be clear, and I just need you to tell the jury, if the

5   human resources gave you seven documents, did you not have the

6   authority as the deciding official to request additional

7   information in order for you to properly apply one or more of

8   the Douglas factors?

9   A.   I don't know that we had that conversation.

10  Q.   Did you inquire, did you ascertain to the extent to which

11  you could, make some further examination outside of the limited

12  documents that were in your possession?

13  A.   I don't recall that I did.

14  Q.   To the extent that you said that you applied aggravation

15  to Ms. Burton here, going to number 11.  Number 11 talks about

16  unusual job tensions.

17       Did you consider the relationship between Ms. Burton and

18  Ms. Stowe the history of EEO complaints and all of the

19  correspondence that you saw coming from Ms. Burton to reflect

20  an unusual job tension?

21  A.   I did not.

22  Q.   Directing your attention to personality problems.  Did you

23  consider that might have been a personality problem on the part

24  of Ms. Stowe relative to Ms. Burton that influenced her

25  circumstances?

1    A.    Not specifically with reference to Ms. Stowe.

2    Q.    It says harassment.  You knew at that particular point in

3    time not only had she written to you about harassment, but she

4    had filed an EEOC complaint for harassment and that you had

5    testified or provided a statement basically in getting the

6    merits of her claim.  Did you consider that?

7                 MR. FIELD:  Objection.

8                 THE COURT:  Counsel, hold on.

9                 MR. FIELD:  Objection, mischaracterizes.

10                THE COURT:  As to the testimony?

11                MR. FIELD:  Yes, Your Honor.

12                THE COURT:  Rephrase, provide the statement.

13                MR. TEMPLE:  I will, thank you, Your Honor.

14   BY MR. TEMPLE:

15   Q.    Did you consider to the extent to which there was

16   harassment that attributed to Ms. Burton's actions?

17   A.    Yes.

18   Q.    And did you talk -- explain to the jury the extent to

19   which you considered that?

20   A.    I determined that Ms. Stowe's actions were not considered

21   harassment.  That they were allegations by the employee, but

22   there had been no affirmative determination of any type of

23   hostile work environment or harassment.

24   Q.    At that particular point in time, you knew that there was

25   an EEO complaint pending on the subject; is that correct?

```
1   A.   Yes.

2   Q.   You didn't do any additional independent investigation to

3   make any judgment about whether Ms. Burton's claims had any

4   validity; is that correct?

5   A.   That's correct.  That's the role of the EEO investigator.

6   Q.   Priscilla Lewis, do you remember her?

7   A.   Yes.

8   Q.   Priscilla Lewis participated as an advisor to you and

9   Jemine during the process of you determining whether to

10  terminate Mrs. Burton; is that correct?

11  A.   I'm not sure that I consulted with Priscilla or if it was,

12  if it was directly with the employee and Labor Relations

13  Division.  I don't recall any conversations with her, and I

14  don't believe there's any e-mails-mails back and forth with

15  her.

16           MR. TEMPLE:  No further questions of this witness,

17  Your Honor.

18           THE COURT:  Ladies and gentlemen, feel free to stand

19  up and stretch.  I know the afternoon can be long.

20           MR. FIELD:  Your Honor, may I approach and provide

21  him with an exhibit?

22           THE COURT:  You may.

23           MR. FIELD:  Thank you.

24                         CROSS-EXAMINATION

25  BY MR. FIELD:
```

1  Q.    Good afternoon.  I want to start by doing a brief -- we

2  heard some testimony about chain of command, and so I wanted to

3  do a work chart and for that we can use that erase board.

4      Mr. Surber, I want to start with and really focus on the

5  2009 time frame.  At that time CPO, chief procurement officer

6  is Jemine Bryon; is that correct?

7  A.    That's correct.

8  Q.    And Ms. Bryon is at the head of the OCPO?

9              MR. TEMPLE:  Objection, Your Honor.

10             THE COURT:  Hold on.

11             MR. TEMPLE:  May we approach?  I know where he's

12 going.

13     (Bench conference.)

14             MR. TEMPLE:  Your Honor, the defendant has laid a

15 foundation to exhibits which we discussed in advance which we

16 think are irrelevant to the claims they discussed before

17 Ms. Stowe started working Ms. Burton's interaction with Jemine

18 Bryon if that's correct.

19             MR. FIELD:  That's actually not what I'm doing.  I'm

20 trying to provide a role of credibility because we talked about

21 chain of command.  I'm happy to.

22             MR. TEMPLE:  I'll withdraw.

23             THE COURT:  Let's do it at a break if possible, but I

24 must say it's crying out for a work chart.

25             MR. TEMPLE:  It is, thanks, Your Honor.

1       (Open court.)

2    BY MR. FIELD:

3    Q.   Mr. Surber, we're talking about 2009, and it was Jemine

4    Bryon who was at the head of the organization; is that right?

5    A.   Yes.

6    Q.   Forgive my handwriting in advance.

7        So that's the chief procurement officer.  In 2009, under

8    the chief procurement officer, the head of policy, that would

9    be the -- what's the title?

10   A.   The assistant CPO.

11   Q.   Is that Jackie Harris?  She reported directly to

12   Ms. Bryon?

13   A.   Yes.

14   Q.   And Ms. Burton then worked for Ms. Harris; is that

15   correct?

16   A.   Yes.

17   Q.   At that time you were the deputy chief procurement

18   officer, correct?

19   A.   Correct.

20   Q.   Am I correct that would be over here?

21   A.   Yes.

22   Q.   And you reported to Ms. Bryon?

23   A.   Yes.

24   Q.   And then Priscilla Lewis, she was -- what was her title at

25   the time?

1   A.   She was an assistant CPO for customer service and support.

2   Q.   Okay.  Would she be over here?

3   A.   Yes.

4   Q.   All right.  And then did there come a time that Ms. Harris

5   left HUD?

6   A.   Yes.

7   Q.   Was that position back filled?

8   A.   Not right away.

9   Q.   So when that position was vacant, did Ms. Burton report

10  directly to Ms. Bryon?

11  A.   She did.

12  Q.   And then in 2010, Elie Stowe arrives; is that correct?

13  A.   Correct.

14  Q.   And she filled this position?

15  A.   That's correct.

16  Q.   And then fast forward to 2011.  David Blocker was hired;

17  is that correct?

18  A.   Correct.

19  Q.   And did he slot in right here as Ms. Stowe's deputy?

20  A.   Yes, he did.

21  Q.   Just to make sure we're clear, and we'll get into some of

22  the evidence in this case.  At this time, is this what the

23  organizational chart looked like at the time that you were

24  evaluating the proposal to remove?

25  A.   Yes.

1   Q.   And Ms. Burton's immediate supervisor was who?

2   A.   David Blocker.

3   Q.   Okay.

4        And as a deputy chief procurement officer, you never -- you

5   never supervised Ms. Burton, correct?

6   A.   That's correct.

7   Q.   Was it ever your job to investigate the EEO matters?

8   A.   No.

9   Q.   So it was never your job to investigate the truth of a

10  claim that somebody made?

11  A.   Correct.

12  Q.   If an employee had a claim that they believed was an EEO

13  claim of discrimination retaliation, what should they have

14  done?

15  A.   If they wanted to pursue it, they would file a complaint

16  with the office of departmental EEO.

17  Q.   You are aware that Ms. Burton did bring claims to the

18  department's EEO office?

19  A.   Yes.

20  Q.   You testified a bit earlier that you knew of a previous

21  settlement agreement that Ms. Burton made?

22  A.   Yes.

23  Q.   You ever know the details of that?

24  A.   No.

25  Q.   Did it bother you to find out that she had previously

1   filed the claim and settled the claim?

2   A.   I need to correct myself.  I did at some later date, it

3   may have been the part of the complaint that was filed in this

4   case, I did know the details, but I did not know at the time

5   when I was interacting with her.

6   Q.   Thank you.

7        Did it bother you to find out that she had made a claim?

8   A.   No.

9   Q.   Did it bother you that she had settled the claim?

10  A.   No.

11  Q.   Do you know who Dana Long is?

12  A.   Yes.

13  Q.   Do you work with her?

14  A.   I did for a short time when I became the deputy.

15  Q.   Were the two of you close?

16  A.   No.

17  Q.   Okay.  So --

18            THE COURT:  Counsel, say that name again.

19            MR. FIELD:  I'm sorry, that name was Dana Long.

20            THE COURT:  Dana Long.

21  BY MR. FIELD:

22  Q.   Before we get into a bit of the discussion about

23  Ms. Burton's interactions that you just testified about, I'd

24  like to look at Joint Exhibit 33.  I believe you looked at this

25  with plaintiff's counsel.

1        You looked at this with plaintiff's counsel, and I believe

2   that you were asked the question was, and you can highlight

3   that e-mail for her.  Assuming an e-mail from Ms. Bryon.  You

4   were asked if Ms. Bryon had directed Ms. Burton not to include

5   or copy other parties to audit e-mails; is that correct?

6   A.   Yes.

7   Q.   Can you read the e-mail from Ms. Bryon?

8   A.   It states, "Sandra, it is inappropriate to share audit

9   information with external parties in the manner that you have

10  below.  Please do not do so in the future.  Thank you."

11  Q.   And plaintiff's counsel, after you looked at this and

12  Ms. Burton did, in fact, stop copying these third parties.  If

13  we keep looking at this zoomed in portion, look at the

14  underlying email, that's the email from Sandra Burton.  CC'd on

15  there in addition to Mr. Blocker, Ms. Bryon, Ms. Stowe, what

16  looks to be the ALO email box.  Do you see the names after the

17  OCPO ALO mailbox where it says Donald Temple, Russell Varnado,

18  Wilkerson?

19  A.   That's at the top of the email?

20  Q.   I'm sorry, that's at the bottom , the email?

21  A.   Yes.

22  Q.   In that email Ms. Burton was copying in addition to

23  plaintiff's counsel some others.  Ms. Bryon takes those people

24  off the email and tells Ms. Burton to stop.  Plaintiff's

25  counsel suggested that she did, in fact, stop.  If we could

```
 1   just zoom in on Ms. Burton's response to that.  Again Ms. Bryon
 2   had taken those people off.
 3       Do I see that those people are back on the email in
 4   Ms. Burton's response?
 5   A.   Yes, she did add them back in.
 6   Q.   Okay, thank you.  So you testified earlier about your
 7   interactions with Ms. Burton while she was employed at HUD.
 8   Can you --
 9           THE COURT:  Sorry, counsel.  Other than Mr. Temple,
10   can you identify who the outside parties just so that the jury
11   is aware?
12           MR. FIELD:  Of course.
13           THE COURT:  Or ask the witness if he knows them.
14   BY MR. FIELD:
15   Q.   Do you know who those individuals are?
16   A.   Yes, I do.  Mr. Varnado and Mr. Christie are with the
17   union.  The AG Union.
18   Q.   Do you know who Ms. Austin is?
19   A.   The name doesn't ring a bell for me.
20           THE COURT:  Thank you.
21   BY MR. FIELD:
22   Q.   So you want to talk briefly about your interactions with
23   Ms. Burton before Elie Stowe arrived at HUD.  It was your
24   testimony earlier that you interacted with Ms. Burton at that
25   time; is that right?
```

1  A.    Yes.

2  Q.    How would you describe the interactions with her?

3  A.    Well, again, she would come and talk to me if she needed

4  to talk about anything.  But generally many of the interactions

5  were via e-mail.  Sometimes they were if there was a meeting

6  where both she and I were -- attended a meeting with Ms. Bryon.

7  Q.    How would you describe Ms. Burton's tone in those

8  interactions?

9  A.    Very frequently I felt her tone of her interactions were,

10 especially in the e-mails, were not appropriate for the

11 interaction between a subordinate and not just a supervisor,

12 but the highest level supervisor in our organization, the chief

13 procurement officer, a senior executive, and they were even,

14 they were disrespectful and even insubordinate.

15 Q.    How was it again that you came to observe that?

16 A.    Either I was -- if I was in a meeting with her, there were

17 occasions where there were meetings, but also via e-mail.

18 Q.    Okay.  If I could have you take a look at what's been

19 marked as Joint Exhibit 2, please.

20 A.    Which book?

21 Q.    I'm sorry, Joint Exhibit 2.  If you look at the exhibit

22 book that I gave you, the black binder, it will be the first

23 tab.  And I would start on the last portion of this e-mail.  I

24 would just like to make sure we're clear exactly what's going

25 on in this e-mail.

1        So it looks like in the bottom of the email there's an

2   email from, on the last page there's an email from Ms. Bryon to

3   a collection of individuals.   This email is entitled, OIG audit

4   of contract closeouts.   Above that, then Ms. Burton replies.

5   Can you just tell us very briefly what's going on in this

6   e-mail, the underlying e-mail?

7   A.   So this is one I talked about earlier where we were trying

8   to close out audit findings from on OIG audit.   Sometime prior

9   to this the operations managers had been requested to provide

10  documents to support the closing out of the contracts; that

11  those documents had not been provided in time.

12       So the first e-mail on December 30th of 2009 was from Ms.

13  Bryon to the operations manager directing them to get those

14  documents in place.

15  Q.   Okay.   As we're moving up on the top of this last page at

16  the tail end of the e-mail from Ms. Burton, if we're looking at

17  the third page, then there's an e-mail from Norma Canon, is

18  that one of the people you supervised?

19  A.   Yes.

20  Q.   And it suggests that Sandra I apologize, I'm confused goes

21  on asking question was and you reply.   How do you respond?

22  A.   So I responded to Norma and copied everybody else that was

23  on the email.   I said, Norma, et al. for the time being please

24  only copy the closeout modification and print out a copy of the

25  contract summary from HPS.   Hold these until either Jemine or I

1   get back to you with additional instructions.

2   Q.   Going one page earlier there are two emails from

3   Ms. Burton, and I would like -- see if we can zoom in on the

4   question. "I was also under the impression."  She says, "Also I

5   was under the impression that the files could not be tampered

6   with by others that had not been involved with the signatures

7   of the contract.  Wherein the underlying email did you discuss

8   tampering with the contract?

9   A.   It never occurred.

10  Q.   In fact, we go up, Ms. Bryon clarified that; is that

11  correct?  If we zoom in on the next email from Ms. Bryon?

12  A.   Correct.

13  Q.   It says, "First, I did not instruct anyone to do so and

14  secondly I find it professionally insulting that you would

15  imply that in the email below."

16      After Ms. Bryon clarified that she had not, in fact,

17  directed anybody to tamper, did Ms. Burton accept that

18  clarification?

19  A.   No.

20  Q.   If we move up to the first page, in fact, didn't

21  Ms. Burton reply thirdly right down here?  It says, jumping to

22  conclusions with any of your employees is not a good idea

23  around here as things are not always as they seem.  Writing

24  nasty accusatory emails, then talking it out finding the reason

25  for an email is not a good idea.  Did I read that correctly?

1    A.    Yes.

2    Q.    Did you find the tone of that email from Ms. Burton

3    appropriate?

4    A.    No.

5    Q.    Why not?

6    A.    First of all, Ms. Bryon was clarifying that she was

7    offended by the implication in Ms. Burton's email that there

8    was any attempt to correct any files prior to submitting them

9    to the IG, and that she needed to be very clear that there was

10   no such requirement or request.

11   Q.    Okay.  Then after Ms. Bryon clarified that again, did

12   Ms. Burton then accept that clarification?

13   A.    No.

14   Q.    How did she respond?

15   A.    Let's agree to disagree.

16   Q.    Did you find that to be appropriate?

17   A.    No.

18   Q.    If Ms. Burton did have complaints about something like

19   being told to back date or something like that if that was the

20   term, tamper; what should she have done?

21   A.    If she believed that there was any attempt to tamper with

22   files, she had a couple of options.  First of all she could

23   have had that discussion with her supervisor as to what was

24   really being asked.  But she also could have responded to the

25   Office of Inspector General and advised him that she believed

1    that tampering with documents was going on.

2    Q.   Now, more generally, did there come a time when Ms. Burton

3    complained about being assigned tasks at her job?

4    A.   Yes.

5    Q.   What do you recall about those incidents?

6    A.   There, I believe there were a couple instances.  There

7    were e-mail documents that if I could refer to them I could be

8    more specific.

9    Q.   We can -- well, is there a document that would refresh

10   your recollection?

11   A.   Yes.

12   Q.   Would seeing a copy of the affidavit you filed in the EEO

13   affidavit refresh your recollection?

14   A.   Yes, it would.

15           MR. FIELD:  Can I approach, Your Honor?

16           THE COURT:  Yes.

17   BY MR. FIELD:

18   Q.   Mr. Surber, I handed you what is your witness affidavit

19   filed in the EEO matter.  If you could take a look at the

20   bottom of page 5 and look up when you're done, let me know if

21   that refreshes your recollection.

22   A.   Yes.

23   Q.   Could I have it back, please?

24   A.   (Witness complies.)

25   Q.   So did there come a time when Ms. Burton refused -- did

1  there come a time that you recall Ms. Burton refusing to

2  complete tasks that were assigned to her?

3  A.    Yes.

4  Q.    Can you tell me about that?

5  A.    Well, there was one occasion where she indicated that

6  this, that this task that the supervisor, I don't remember

7  which supervisor it was at that time, but that the supervisor

8  could do the job and that it should be taken off her list of

9  things to do.

10 Q.    You said the supervisor should do the job?

11 A.    I believe so, yes.

12 Q.    And did there also come a time that learned that

13 Ms. Burton was refusing to attend meetings?

14 A.    Yes.

15 Q.    What meetings were those?

16 A.    Generally those would be meetings with the Office of

17 Inspector General to discuss audit closeout recommendations and

18 findings.

19 Q.    Was it appropriate for her to refuse to attend those?

20 A.    No.

21 Q.    If Ms. Burton did have a concern that a particular meeting

22 or task was not part of her responsibility, what should she

23 have done?

24 A.    She should have had a discussion with her supervisor as to

25 why she believed that that was not within her responsibility.

1   Q.   Should she also have gone to the meeting still?

2   A.   Yes.

3   Q.   And do you recall the time when you -- strike that.

4        Do you recall a time when Ms. Bryon told Ms. Burton that

5   refusing to attend the meetings would be considered

6   insubordination?

7                MR. TEMPLE:  Objection.

8                THE COURT:  Overruled.

9   BY MR. FIELD:

10  Q.   Do you recall Ms. Burton -- I'm sorry.  Do you recall

11  telling Ms. Burton that disobeying or giving the appearance of

12  disobedience could lead to discipline?

13  A.   Yes.

14  Q.   You talked earlier a bit about telework in your --

15  telework in your earlier testimony.  Do you have employees that

16  work for you to observe telework?

17  A.   Yes.

18  Q.   Have you ever observed telework being abused?

19  A.   Yes.

20  Q.   In what way?

21  A.   We have employees that, some of the managers have informed

22  me that they may slow roll their work so that they have work to

23  do on their telework day.  Employees have to have work to do at

24  their remote location.  If they don't, they are required to

25  come into the office or take leave that day.  But there are

1    indications that there are employees that don't have enough

2    work to do on their telework day, we kind of refer to it as

3    there telework day off.

4    Q.    Did there ever come a time when you observed Ms. Burton

5    while she was teleworking?

6    A.    Yes.

7    Q.    How did you come to observe that if you weren't a

8    supervisor?

9    A.    Because the way she copied me on e-mails frequently.

10   Q.    Did you ever have the opportunity to counsel Ms. Burton

11   about her practice, her work practice on telework?

12   A.    Yes.

13   Q.    What did you tell her?

14   A.    I explained to her the concept of what an employee is

15   supposed to do under telework, what their responsibilities are.

16   She had indicated in her e-mail that her computer wasn't

17   working or her system was down, something like that, leading me

18   to believe that she had nothing to do, but actually I believe

19   that may have been a statement in there, that she had nothing

20   else to do.

21       So I advised her that in the event like that under the

22   rules of telework, you are either required to come into the

23   office if you cannot perform your duties there at the remote

24   location or take leave.

25   Q.    Just to clarify, is the employee permitted to telework if

1  they don't have access to the system they need to work?

2  A.    It depends on the duties involved requiring access to the

3  system.   Every telework situation is different.   It's up to the

4  individual circumstances and the individual employee, and there

5  are a number of things that the manager has to assess in

6  determining whether the employee is first of all telework

7  eligible, but also if it's an appropriate situation for that

8  employee.

9  Q.    And just to clarify, if an employee's job requires access

10  to a system and they don't have access to that system, are they

11  permitted to telework that day?

12  A.    No.

13  Q.    Thank you.

14     So Ms. Stowe arrived in June 2010, and you testified that

15  you worked directly with her, correct?

16  A.    Yes.

17  Q.    In what capacity were you working together?

18  A.    More as colleagues because much of the work that she did

19  affected or required her to interact with me and my staff on

20  the operation side of the house.

21  Q.    How frequently when you say that you interacted with her?

22  A.    I would say almost daily.

23  Q.    In person?

24  A.    Yes.

25  Q.    And did you also observe Ms. Burton's interaction with

1  Ms. Stowe?

2  A.   To some extent.

3  Q.   And were those interactions similar to or different to the

4  interactions you observed between Ms. Burton and Ms. Bryon?

5           MR. TEMPLE:  Objection.

6           THE COURT:  Overruled.

7           THE WITNESS:  So many of the interactions were very

8  similar.

9  BY MR. FIELD:

10  Q.   How would you describe the interactions you observed

11  between Ms. Burton and Ms. Stowe?

12           MR. TEMPLE:  Objection, Your Honor, time period.

13           MR. FIELD:  Between the time that Ms. Stowe was

14  working at HUD.

15           THE WITNESS:  So I observed that many of the

16  interactions were disrespectful.  In my opinion they were

17  disrespectful, even to the point of potentially insubordinate.

18  And I actually had cautioned her on that as well.

19  BY MR. FIELD:

20  Q.   In this time period after Ms. Stowe started working at

21  HUD, did there come a time when you also observed Ms. Burton

22  telling Ms. Stowe that she refused to attend meetings?

23  A.   Yes.

24  Q.   And what meetings were those?

25  A.   Again, those would be meetings related to her duties

1    generally as the ALO.

2    Q.   Are those the same meeting that Ms. Burton told Ms. Bryon

3    she was not going to attend?

4    A.   I believe these were the same types of meetings, yes.

5    Q.   Do you ever recall Ms. Burton telling you or other HUD

6    officials that she wanted to meet with you?

7    A.   Yes.

8    Q.   In what capacity?

9    A.   Basically she made a statement that she would not meet

10   with any member of management unless there were certain

11   conditions that she wanted to have in place.

12   Q.   Like what.

13   A.   There had to be an agenda, and basically there had to be

14   an agenda, and she wanted a representative to be in place, some

15   sort of representative, it wasn't clear.

16   Q.   Did you also have an opportunity to advise Ms. Burton

17   about issues that you identified with her conduct?

18   A.   Yes.

19   Q.   Take a look at what's been marked as Joint Exhibit 17,

20   please.

21   A.   I'm there.

22   Q.   Look at the bottom.  Jimmy Scott, who is that?

23   A.   Jimmy Scott at that time was one of my division directors.

24   He was in charge of the IT Division.

25   Q.   Do I read it correctly that it says, requested information

1  is attached.  I wasn't sure if there was anyone else in your

2  office that you wanted copied on this information.  Let me know

3  if you have any questions.  And he was talking to Ms. Stowe,

4  correct?

5  A.   Correct.

6  Q.   As we move on, Ms. Stowe responds, Thanks.  What about the

7  other five.  Continuing to move up?

8          THE COURT:  I'm sorry, counsel, what's the

9  information attached, is the attachment in the email?

10          MR. FIELD:  It is not in this underlying, the

11  underlying email.  I believe may have had the document

12  attached, but some were on the email chain.

13          THE COURT:  Are you asking him about the attachments?

14          MR. FIELD:  No, I'm not, Your Honor.  I was trying to

15  set a very brief context.  I apologize.

16          THE COURT:  No worries.

17  BY MR. FIELD:

18  Q.   So Jimmy Scott says here provides a full list.  Ms. Stowe

19  then forwards that to Ms. Burton, says, here you are.

20     Ms. Burton then responds, I'll just read it for the sake of

21  clarity beginning in the middle.  She says, underlined in bold,

22  Obviously hot topics is not an issue as you had told me it's

23  where you got your updated information even as of yesterday

24  morning I have not been copied on any of these updates via

25  email until today which caused a day of turmoil.

```
 1        She goes on to say  when you started answering your email
 2   you could have easily forwarded me the information or told us
 3   where you were actually getting your information instead of
 4   withholding it.  Were you copied on this email?
 5   A.    Yes.
 6   Q.    Do you find the tone of this e-mail to be appropriate?
 7   A.    No.
 8   Q.    In fact, did you respond to that e-mail?
 9   A.    I did.
10   Q.    If we look at that that's on the second page, can you read
11   the last sentence of your first paragraph?  It starts with, "I
12   believe"?
13   A.    "I believe you owe your supervisor an apology for your
14   very disrespectful e-mail."
15   Q.    Why did you write that?
16   A.    Because, first of all, she had, as I said initially, she
17   was talking about a different subject even then, what was
18   responsible that we were trying to address in the e-mail and
19   just the tone that she did it in was again disrespectful.
20   Q.    Then in the next paragraph, could you read just the first
21   sentence?  It begins with, "As the deputy CPO."
22   A.    "As the deputy CPO and for many years prior to coming here
23   I continually emphasize to managers and staff that every
24   communication that leaves a person, whether verbal, written or
25   e-mail, creates an impression on the receivers, whether they
```

1  are coworkers, managers, executives or the general public."

2  Q.   Why did you write that?

3  A.   Generally it was because she continues to send e-mails

4  that leave negative impressions on people.  Whether that's her

5  intent or not, I was pointing out that every communication she

6  has leaves an impression on somebody, on all of the receivers

7  with some sort of impression, and her e-mails tended to be very

8  negative.

9  Q.   If you could just read the sentence beginning with,

10 "Hopefully," it's at the end of that paragraph.

11 A.   "Hopefully, you can turn this around.  Even when people

12 disagree, they should do so respectfully."

13 Q.   Did Ms. Burton's response suggest that she was open to

14 your counseling?

15 A.   No.

16 Q.   Rather on the first page, didn't she respond with, "Again

17 you are missing the point"?

18 A.   Yes.

19 Q.   Did there ever come a time when you received complaints

20 from other co-workers about Ms. Burton?

21 A.   Yes.

22 Q.   Who?

23 A.   The one that sticks out the most is Gerald Fairbanks.

24        MR. TEMPLE:  Objection.  May we approach, Your Honor?

25     (Bench conference.)

```
 1              MR. TEMPLE:  Multiple objections.  One, Your Honor,

 2    he's not in this chain of command; is not disciplined, formal

 3    discipline is not documented in her performance evaluation.

 4    He's a third party.  It's also hearsay.  There's no --

 5              MR. FIELD:  I can quote cases.

 6              THE COURT:  Let's address the hearsay issue.  I don't

 7    care whether it's documented or not.

 8              MR. FIELD:  Sure, I don't think it will be hearsay

 9    issue because --

10              THE COURT:  What are you trying to elicit?

11              MR. FIELD:  There's going to be an email that

12    Mr. Surber received from Fairbanks specifically describing the

13    issue.  The purpose of that is to show that he did in fact

14    receive this summary of the interaction between Ms. Burton and

15    Ms. Stowe which is essential to this case and there's case law

16    to say that the a supervisor that receives complaints by other

17    individuals that that could be admitted for the purpose of

18    showing the information that they received.

19              THE COURT:  So it's effect on the receiver is that an

20    effect or exception it's non hearsay what it's being offered.

21              MR. FIELD:  Correct.

22              MR. TEMPLE:  The question has an affect on the

23    receiver to what end.  That particular case I guarantee you

24    that the employer that they are talking about is the employee

25    that the same supervisor is managing and has a disciplinary or
```

```
 1   personnel relationship with.  It's a different situation.  This

 2   particular case is that there is a third party we don't know.

 3              THE COURT:  Let me, where is the e-mail?

 4              MR. FIELD:  It would be -- I'm sorry I don't have the

 5   number.

 6              THE COURT:  Why don't you go get the number, so I can

 7   just see it.

 8              MR. TEMPLE:  Is that defendants?

 9              MR. FIELD:  It's Defendant's 17.

10      (Pause.)

11              MR. FIELD:  Just briefly whenever you're ready, Your

12   Honor, I can respond.

13              THE COURT:  Yes.

14              MR. FIELD:  Mr. Temple said of course they -- this

15   has been an exhibit for awhile.  I believe there was also some

16   suggestion that there was some disciplinary.

17              MR. TEMPLE:  I didn't say the email.  I said the case

18   that you were referencing I had not seen it.

19              MR. FIELD:  I'm happy to give you a copy of it.

20              MR. TEMPLE:  Okay.

21              MR. FIELD:  I guess I'm not sure what the objection

22   is to this exhibit going in to show the evidence or to show the

23   affect it had on Mr. Surber and to show that he did in fact

24   receive this and also to counter the narrative that has already

25   been elicited that there were no witnesses to these events.
```

1          THE COURT:  I'm going to deny the objection.  I'll

2     let this in for the affect that it had on Mr. Surber.  I'll

3     instruct the jury that they're not to consider it in assessing

4     whether Mr. Fairbanks is right or wrong in his reciting of the

5     events, okay.

6          MR. FIELD:  Thank you.

7        (Open court.)

8     BY MR. FIELD:

9     Q.   Mr. Surber, I just asked if you recall anyone coming to

10    you lodging complaints about Ms. Burton, do you recall that

11    question?

12    A.   Yes.

13    Q.   And how did you answer?

14    A.   I said there was an employee named Gerald Fairbanks.

15    Q.   Who is Mr. Fairbanks?

16    A.   Mr. Fairbanks was an employee in the Office of Policy at

17    that time.

18    Q.   Had you ever worked with Mr. Fairbanks?

19    A.   I did.

20    Q.   In what capacity?

21    A.   He used to work on the operations side.  So he was a

22    contract specialist that I was, not directly supervised, but I

23    was in his supervisory chain at that time.

24    Q.   Okay.  Take a look at what's been marked as Defense

25    Exhibit 17, please.

```
1   A.    (Witness complies.)

2   Q.    Do you recognize this document?

3   A.    Yes.

4   Q.    Is this an email that you received?

5   A.    Yes.

6           MR. FIELD:  I would move this document's admission?

7           THE COURT:  Okay.  Subject to Mr. Temple's objection,

8   Defendant's 17 is admitted.

9           MR. FIELD:  Thank you, Your Honor.

10      (Defendant's Exhibit No. 17 was received in evidence.)

11          MR. FIELD:  Permission to publish?

12  BY MR. FIELD:

13  Q.    If we could zoom in on the large paragraph here and just

14  moving along, referencing 11/13.  It says he was in a meeting

15  with Ms. Stowe in her office.  Starting in the middle with

16  Ms. Stowe trying to explain to you, read that portion.

17  A.    Ms. Stowe tried to explain her position in the matter, but

18  Ms. Burton did not accept the explanations.  She instead grew

19  more hostile and make statements is a threatening and abusive

20  manner.

21  Q.    I'm sorry, could you continue?

22  A.    Ms. Burton went as far to tell Ms. Stowe that because of

23  her involvement that she can do the work, that she was no

24  longer going to do it.  At this point Ms. Burton stormed off,

25  but moments later returned with more confrontation."
```

```
 1   Q.   All right, thank you.

 2        And is this instance you were referencing earlier where

 3   you said you had heard that Ms. Burton told Ms. Stowe, I

 4   believe you said earlier a supervisor, that that supervisor

 5   could do the job?

 6   A.   Yes.

 7   Q.   And does earlier in this email, it says this is a

 8   follow-up statement for our conversation yesterday morning, so

 9   did you, in fact, speak with Mr. Fairbanks about this?

10   A.   I did.

11   Q.   And does this email documentation accurately reflect what

12   he told you?

13   A.   It does.

14   Q.   Thank you.

15             THE COURT:  Is that all the email?

16             MR. FIELD:  Yes.

17             THE COURT:  Ladies and gentlemen, sometimes exhibits

18   are admitted into evidence for one purpose, but cannot be used

19   for another purpose.  We touched on this a little bit in

20   Mr. Temple's direct examination this morning with respect to

21   Ms. Houston's allegation.  This is a similar situation.  This

22   document is not being offered to prove the accuracy of what

23   Mr. Fairbanks has reported.  So you should not consider it for

24   that purpose.  It's being offered to show the effect that it

25   had on Mr. Surber and the fact that Mr. Surber received
```

```
 1   complaints from other employees.  Okay, is that clear?
 2   Proceed.
 3              MR. FIELD:  Thank you, Your Honor.
 4       I looked at the clock, I'm going to turn to a new topic.
 5              THE COURT:  Very well.  Why don't you approach.
 6       (Bench conference.)
 7              THE COURT:  How long do you think you have?
 8              MR. FIELD:  I have to go through the proposal to
 9   remove and the Douglas factors, but less than an hour, but it
10   may be 45 minutes.
11              THE COURT:  Why don't we go for another fifteen
12   minutes or so.
13              MR. FIELD:  Can go through the proposal stop before
14   we switch to the decision?
15              THE COURT:  If we're going to come back tomorrow, I
16   might as well get out sooner than later.
17              MR. FIELD:  Okay.
18       (Open court.)
19              THE COURT:  Proceed.
20              MR. FIELD:  Thank you, Your Honor.
21   BY MR. FIELD:
22   Q.   You mentioned in your testimony earlier that you were
23   selected or that you were identified as the decision maker on
24   the proposal order; is that correct?
25   A.   Yes.
```

```
 1   Q.    Let's take a look at Joint Exhibit 41 if you could.  Do

 2   you recognize this document?

 3   A.    Yes.

 4   Q.    Is this one of the documents that you received as part of

 5   the package for the proposal?

 6   A.    Yes.

 7   Q.    You talked earlier with plaintiff's counsel about the

 8   materials you received.  I just want to make sure that what it

 9   is that you received as part of the removal package, this was

10   this document, correct?

11   A.    Yes.

12   Q.    You also testified that there was a union response?

13   A.    No, the union response came, if I recall correctly, came

14   directly to me separate from the package.

15   Q.    I apologize.  As part of the materials that you reviewed

16   in order to make a decision on the proposal to remove, did you

17   receive and consider a response from the union?

18   A.    Yes.

19   Q.    Was that response offered on Ms. Burton's behalf?

20   A.    Yes.

21   Q.    And you said that you also reviewed the prior disciplinary

22   actions, correct?

23   A.    Yes.

24   Q.    And then also the performance ratings for the past, the

25   three previous performance ratings?
```

1  A.    Correct.

2  Q.    At any point did you feel or conclude that you did not

3  have adequate information with which to decide whether or not

4  to approve the proposal?

5  A.    No.

6  Q.    Can we look at Joint Exhibit 41?  What were the charges

7  for which removal was proposed?

8  A.    So charge one was failure to follow instructions with

9  multiple -- two specifications.

10  Q.    Okay.

11  A.    And then charge two was conduct unbecoming a federal

12  employee with, I believe there were four specifications.

13  Q.    When we were talking to plaintiff's counsel, I believe

14  plaintiff's counsel suggested that all of the incidents in here

15  related to interactions between Ms. Burton and Ms. Stowe, do

16  you recall that?

17  A.    Yes.

18  Q.    I want to talk about these in a bit more detail.  But I

19  just want to touch briefly on the bottom of page 2, you'll see

20  specification two.  Do you see where I am?  This is the bottom

21  of the second page.

22  A.    Yes.

23  Q.    Says specification two.  Says on July 19, 2011, I

24  requested via email that Kevin Stutzman provide additional

25  e-mails.  Then on the last page it has an email says stop,

1    stop, stop sending out the email until you check with me.

2        Who wrote that proposal?

3    A.   Mr. Blocker.

4    Q.   This details the interaction Ms. Burton had with

5    Mr. Blocker?

6    A.   Yes.

7    Q.   Not with Ms. Stowe?

8    A.   Correct.

9    Q.   Looking at the first charge it says failure to follow

10   instructions.  Can you tell me very briefly what the

11   specifications were to support that?

12   A.   So the specification was that she was copying, generally

13   that she was copying external individuals, that the CPO had

14   directed her email to discontinue doing so.

15   Q.   And then specification two?

16   A.   Again she was, she included external individuals that had

17   no involvement with the matter on the email exchange.  And

18   despite Ms. Bryon's instruction to not do so, she did again.

19   Q.   If you look at the second charge styled conduct unbecoming

20   a federal employee.  Can you summarize very briefly what the

21   specifications were to support that charge?  For instance,

22   that's specification one?

23   A.   Specification one, she failed to respond to a request for

24   information, and Mr. Blocker had asked her for the information.

25   And she -- and because Ms. Stowe was looking for the

1  information from him, and he was requesting it from Ms. Burton,

2  and she responded, she can look at it on the Sharepoint

3  calendar like everyone else.

4  Q.   Did she also respond, this is a waste of time?

5  A.   Yes.

6  Q.   If we look at specification two, we just read that that's

7  the stop, stop, stop email I was mentioning.  If we go to the

8  next page at specification three and carried onto the page

9  after that, briefly what's going on here?

10 A.   This is a, this is where she responded to Ms. Bryon where

11 Ms. Bryon directed her to stop seminating information to

12 individuals external to CPO and she went on a long, she had a

13 long paragraph about why it's important for her to be able to

14 do so.

15 Q.   All right.  And on the next page, that's page 4 of this

16 long paragraph that it's referencing. She says on the fourth

17 line down, my suggestion to you is to back off me?

18 A.   Yes.

19 Q.   Okay, and that's Ms. Bryon?

20 A.   Yes.

21 Q.   And one more specification down.  I believe this is the

22 last specification.  Could you summarize briefly?

23 A.   So this is in response to Mr. Blocker where he had

24 instructed her to stop sending emails to anyone at ARCATS

25 without his approval.  She responded in essence, I don't know

1    need your approval or supervision.

2    Q.    When you received this proposal to remove, did you defer

3    to Mr. Blocker's determination?

4    A.    I'm not sure if defer is the right word.

5    Q.    I'm sorry, I'll reask the question more clearly.   When you

6    received this, did you perform your own independent analysis of

7    the information that was included in here?

8    A.    Yes.

9    Q.    And you mentioned that you reviewed prior disciplinary

10   actions, what disciplinary actions did you review?

11   A.    So those would have been the prior disciplinary actions

12   from the letter of reprimand, the five day suspension and the

13   30 day suspension, which were all for misconduct as well.

14   Q.    And after you reviewed the material regarding the proposal

15   to suspend, what did you do in order to rate your

16   determination?

17   A.    So I took all of that information and then I applied the

18   Douglas Factors, began looking at each of the Douglas Factors

19   individually to see  how those factors would apply to the

20   proposal to remove; whether they would be aggravating, which

21   would support the proposal to remove, or whether they would be

22   mitigating, which would support somewhat of a lesser penalty,

23   or whether they were neutral, neither one way or the other.

24   Q.    Can you turn two tabs in your book to Joint Exhibit 48?

25   A.    (Witness complies.)

1  Q.   And read the second paragraph of that document, as the

2  deciding official?

3  A.   As the deciding official, I carefully considered your

4  written response as well as the materials used to support the

5  proposed action.  I have determined that the charges and

6  specifications are supported by the evidence in the record.

7  Therefore, I sustain the removal as proposed.

8  Q.   I just want to go down two paragraphs later, In deciding

9  to remove.  Can you read that portion?

10  A.   In deciding to remove you from your position in federal

11  service, I have considered all of the Douglas Factors and find

12  the following to be the most relevant as aggravating factors.

13  Q.   Go back one tab, you'll see Joint Exhibit 42.  Let me know

14  when you're there.

15      These are the factors you reviewed in deciding whether or

16  not to approve the proposed suspension?

17  A.   Correct.

18  Q.   I want to go through each of these.  I believe we can go

19  through the first one and pick up maybe tomorrow morning if

20  that will work out.

21      Okay, looking at factor one.  What's the title of that

22  factor?

23  A.   Nature and seriousness of the offense.

24  Q.   And when you were speaking with Mr. Temple, I think there

25  was a question you were asked, did you consider Ms. Burton's

1    conduct to be malicious or intentional?  I believe you said you

2    didn't recall.

3            Could you read your first sentence in your narrative

4    starting with, it is clear?

5    A.   It is clear from the correspondence that the employee has

6    intentionally committed the offenses and intends to continue

7    her pattern by stating she will continue despite prior

8    admonishments and suspensions.

9    Q.   So how did you characterize -- or strike that.

10       Did you consider this factor to be aggravating, mutual or

11   mitigating?

12   A.   It was aggravating.

13   Q.   You referenced a pattern.  Yes, at the very bottom of that

14   page, you say or state intentions continuing with actions and a

15   lack of remorse as aggravating factors.  What pattern or

16   continuing infractions are you referring to?

17   A.   I'm not sure, I lost you.

18   Q.   I'm sorry.  That was probably inartful.  At the bottom of

19   page 1, you referenced her stating intentions then you

20   referenced continuing infractions.  What continuing infractions

21   were you referring to?

22   A.   So the continuing infractions of sending -- well, first of

23   all in charge one, sending the emails to inappropriate parties.

24           THE COURT:  Okay, ladies and gentlemen, we're going

25   to break for the day.  Thank you very much for your patience

1   and your attention, and we'll get started around 9:00 in the

2   morning, so if you could come back and be ready to go.

3           As I cautioned you earlier, please do not discuss the

4   case with anyone or conduct any research.  Have a great

5   evening, and we'll see you in the morning.

6       (Jury excused at 5:14 p.m.)

7           THE COURT:  Mr. Surber, you are excused.  I hoped to

8   get you off the stand today, but best made plans don't always

9   work out.

10          THE WITNESS:  That makes two of us.

11          THE COURT:  We'll see you in the morning.  Please do

12  not discuss your testimony with anyone.

13          THE WITNESS:  Thank you.

14      (Witness excused.)

15          THE COURT:  Anything to take up?

16          MR. TAAFFE:  Two minor things, Your Honor.  First, we

17  have been talking about Joint Exhibit 42.

18          THE COURT:  Joint Exhibit 42.

19          MR. TAAFFE:  Yes, on the first aggravating factor.

20  We just referred to it.  Mr. Surber's explanation refers twice

21  to the Whistleblower Protection Act.  And I would just request

22  a brief limiting instruction to make sure that the jurors don't

23  get confused that this is a whistleblower case.

24          And the second thing is that we were told downstairs

25  that attorneys can be put on a list to avoid the extremely long

1  lines.  I wondered if we could do that.

2          THE COURT:  Lauren, can we get names for all of the

3  attorneys so that they don't have to check their phones.  Is it

4  a phone issue?

5          MR. TAAFFE:  Security line issue.

6          THE COURT:  I'm not sure I can get you out of

7  security.

8          MR. TAAFFE:  Okay.

9          THE COURT:  There are two entrances.  I think we have

10  three or four trials going on.  It's just a busy time.  So get

11  here early.

12          MR. TEMPLE:  We did.

13          THE COURT:  Okay.  We're in recess.  See you in the

14  morning.

15          (Court adjourned at 5:15 p.m.)

16                              -oOo-

17

18

19

20

21

22

23

24

25

1                              CERTIFICATE

2              I certify that the foregoing is a true and correct

3   transcript, to the best of my ability, of the above pages, of

4   the stenographic notes provided to me by the United States

5   District Court, of the proceedings taken on the date and time

6   previously stated in the above matter.

7              I further certify that I am neither counsel for, related

8   to, nor employed by any of the parties to the action in which

9   this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  _____        _____

13  /s/ Crystal M. Pilgrim, RPR, FCRR       Date: July 11, 2017

14

15

16

17

18

19

20

21

22

23

24

25

'09 [1]   192/16
'10 [3]   192/16 193/3
 193/3
'11 [3]   192/14 193/3
 193/6
'9 [1]   193/9

–

-------------------------
 118/7
-oOo [1]   236/16

/

/s [1]   237/12

0

000091 [1]   186/24
00091 [1]   186/24

1

10 [4]   118/5 145/3 195/18
 195/23
100 [3]   156/15 156/17
 156/25
11 [10]   188/20 195/18
 195/18 197/5 197/5 197/12
 197/14 198/15 198/15
 237/12
11/13 [1]   225/14
1150 [1]   118/16
11th [1]   192/12
12 [1]   158/20
12-1537 [1]   120/3
124 [1]   119/5
13 [1]   225/14
1310 [1]   118/14
1537 [1]   120/3
17 [5]   218/19 223/9
 224/25 225/8 225/10
170 [1]   119/16
1775 [1]   118/16
19 [1]   229/23
194 [1]   119/15
1992 [2]   125/13 125/20
1:12-cv-01537-CRC [1]
 118/4
1:35 [1]   118/6

2

20 [1]   157/3
200 [1]   119/6
20001 [1]   118/23
20005 [1]   118/14
20006 [1]   118/17
2008 [8]   142/8 192/17
 192/19 193/9 193/15
 193/16 193/17 193/18
2009 [15]   126/5 126/16
 127/23 127/25 142/8 193/3
 193/15 193/16 193/17
 193/18 194/3 201/5 202/3
 202/7 209/12
2010 [23]   126/9 128/11
 128/19 128/19 129/1
 131/10 131/21 133/2 133/2
 133/3 136/17 142/14
 142/23 142/25 144/13
 144/15 147/7 148/20
 156/10 160/5 193/16
 203/12 216/14

2011 [22]   128/18 140/15
 149/16 149/24 150/20
 152/15 154/23 158/7 160/5
 162/19 166/5 168/14
 168/19 168/22 169/8 178/1
 178/1 192/9 192/10 193/4
 203/16 229/23
2014 [1]   157/9
2016 [1]   127/10
2017 [2]   118/5 237/12
20510 [1]   118/20
22 [1]   155/5
24th [1]   168/19
25 [2]   150/11 190/15
26 [2]   152/13 152/15
27 [1]   157/4
28 [2]   157/11 162/19
2:15 [1]   148/14
2:21 [1]   148/15
2nd [1]   150/20

3

30 [6]   159/22 162/16
 165/9 165/13 179/19
 232/13
30th [2]   149/11 209/12
32 [3]   166/2 166/3 166/4
33 [3]   162/16 167/11
 205/24
333 [1]   118/22
34 [1]   183/9
39 [1]   168/18
3:31 [2]   182/10 182/11
3:47 [1]   182/12

4

41 [2]   228/1 229/6
42 [7]   183/11 185/21
 185/22 185/23 233/13
 235/17 235/18
43 [2]   183/7 183/9
45 [1]   227/10
4700-F [1]   118/23
476 [1]   157/16
48 [1]   232/24

5

555 [1]   118/19
5:14 [1]   235/6
5:15 [1]   236/15

7

700 [1]   126/7
750 [1]   118/14
7th [1]   126/7

8

80 [5]   119/16 170/3 170/6
 170/10 191/12
8:02 [1]   152/21
8th [1]   166/5

9

90 [4]   143/2 156/24
 177/15 177/23
90-day [1]   178/10
9:00 [1]   235/1

A

A-R-C-A-T-S [1]   130/14
a.m [2]   152/21 182/10
ability [3]   195/5 195/6

2013 121 of 145
able [10]   123/11 123/20
 123/21 131/23 161/11
 171/11 171/13 173/7
 173/11 231/13
about [79]   122/4 122/10
 122/18 123/5 125/13 127/9
 130/6 131/14 131/22
 132/19 133/20 136/24
 137/23 138/14 141/1 142/9
 142/16 143/11 143/12
 143/13 143/20 143/24
 147/3 149/21 150/3 151/5
 153/2 153/22 154/8 154/16
 156/5 161/8 162/19 163/16
 163/20 164/7 166/25
 167/22 174/20 176/5 177/3
 177/5 178/13 183/7 186/16
 193/15 194/24 196/13
 196/22 198/15 199/3 200/3
 201/2 201/20 202/3 205/22
 205/23 207/6 207/22 208/4
 209/7 211/18 212/3 212/5
 213/4 214/14 215/11
 218/17 219/6 219/13
 220/17 221/20 222/24
 224/10 226/9 228/7 229/18
 231/13 235/17
above [3]   209/4 237/3
 237/6
absent [2]   172/25 189/23
abuse [1]   163/1
abused [1]   214/18
abusive [1]   225/19
accept [4]   138/21 210/17
 211/12 225/18
acceptable [1]   162/25
accepted [2]   149/23 150/1
access [4]   216/1 216/2
 216/9 216/10
accessible [1]   143/4
according [3]   150/7 155/2
 156/25
account [2]   173/4 175/17
accountability [1]   129/23
accuracy [1]   226/22
accurate [3]   138/21
 140/17 143/5
accurately [1]   226/11
accusation [1]   153/9
accusatory [1]   210/24
accused [1]   163/25
acknowledgment [1]   166/22
ACPOs [1]   135/8
across [2]   126/3 170/20
act [6]   137/25 141/8
 141/9 141/9 196/13 235/21
acting [3]   127/9 127/19
 127/20
action [14]   130/20 130/21
 130/25 131/2 131/6 140/20
 140/25 146/1 170/18
 170/18 174/25 233/5 237/8
 237/10
actions [15]   130/10
 131/12 155/14 165/17
 165/19 165/21 174/25
 189/19 199/16 199/20
 228/22 232/10 232/10
 232/11 234/14
activities [1]   126/2

**A** Case 1:12-cv-01537-CRC

activity [3]   120/23
 138/15 155/15
actual [1]   164/3
actually [21]   122/18
 132/24 139/9 139/19
 139/20 156/7 161/4 161/7
 174/13 177/13 183/11
 183/13 185/2 186/11
 186/23 190/11 192/25
 201/19 215/18 217/18
 220/3
add [2]   130/10 207/5
added [1]   171/22
addition [5]   140/17
 160/22 162/9 206/15
 206/22
additional [5]   146/2
 198/6 200/2 210/1 229/24
address [8]   130/10 146/13
 154/11 163/12 173/5
 180/11 220/18 222/6
addressed [10]   120/18
 130/1 143/23 153/25
 154/13 162/19 162/23
 163/2 163/14 167/7
adequate [1]   229/3
adjourned [1]   236/15
adjustments [1]   136/6
admin [1]   146/3
admissible [1]   121/6
admission [3]   122/3 170/7
 225/6
admitted [8]   122/13 123/5
 123/14 152/6 186/4 222/17
 225/8 226/18
admonishments [1]   234/8
adopted [1]   121/10
advance [2]   201/15 202/6
advantage [1]   143/18
adverse [1]   145/16
advise [2]   162/9 218/16
advised [2]   211/25 215/21
advisor [1]   200/8
affect [4]   195/5 222/22
 223/23 224/2
affected [1]   216/19
affidavit [4]   161/3
 212/12 212/13 212/18
affirmative [1]   199/22
AFGE [1]   157/16
afraid [1]   145/20
after [15]   142/15 142/21
 161/5 165/22 183/16
 185/14 187/8 195/14
 206/11 206/16 210/16
 211/19 217/20 231/9
 232/14
afternoon [10]   118/9
 120/5 120/6 124/13 124/15
 125/1 125/2 181/8 200/19
 201/1
AG [1]   207/17
again [20]   136/1 154/1
 163/20 176/8 194/10 195/8
 195/25 195/25 196/25
 197/14 205/18 207/1 208/3
 208/15 211/11 217/25
 220/19 221/16 230/16
 230/18

against [10]   121/20 122/2
 131/18 137/18 155/18
 160/22 173/11 176/16
 182/4 184/12
age [1]   155/7
aged [1]   131/23
agency [5]   126/2 130/12
 139/3 141/23 179/5
agenda [2]   218/13 218/14
aggravating [24]   158/22
 171/25 172/2 175/1 175/2
 175/6 175/9 175/17 175/18
 175/24 175/25 176/2 176/7
 191/13 195/8 195/25
 197/14 197/19 232/20
 233/12 234/10 234/12
 234/15 235/19
aggravation [4]   188/23
 191/13 195/25 198/14
ago [1]   178/13
agree [2]   186/10 211/15
agreed [1]   122/18
agreement [8]   127/25
 142/7 142/8 142/11 142/16
 142/21 164/1 204/21
agreements [2]   122/17
 142/5
ahead [1]   150/17
aided [1]   118/25
Air [1]   161/8
al [1]   209/23
all [53]   120/16 126/1
 126/3 130/1 130/2 130/4
 135/10 136/10 136/12
 138/11 138/12 141/16
 151/15 151/23 158/12
 160/25 161/23 164/16
 165/16 165/17 165/19
 166/16 168/1 168/2 169/25
 171/23 172/10 172/11
 172/11 173/12 180/15
 181/10 183/12 183/13
 189/13 189/16 191/25
 198/18 203/4 211/6 211/22
 216/6 220/16 221/6 226/1
 226/15 229/14 231/15
 232/13 232/17 233/11
 234/23 236/2
allegation [3]   151/15
 176/15 226/21
allegations [8]   121/8
 151/8 182/1 182/3 182/5
 182/7 182/8 199/21
alleged [6]   137/24 139/10
 141/24 142/14 164/13
 179/4
allegedly [3]   151/12
 155/7 155/7
allow [2]   122/3 123/7
allowed [1]   182/2
almost [2]   122/12 216/22
ALO [22]   129/18 129/19
 129/19 130/4 130/16
 131/10 132/25 133/5
 133/13 133/16 134/4
 135/22 136/6 136/8 156/11
 174/24 175/25 176/6
 176/10 206/16 206/17
 218/1
along [1]   225/14
aloud [1]   180/6

against [10]   121/20 122/2
 131/21 137/18 155/18
 160/22 173/11 176/16
 182/4 184/12
already [4]   149/11 150/11
 193/2 223/24
also [36]   121/19 122/1
 128/23 135/7 138/14
 139/16 141/2 141/22
 142/10 150/22 159/23
 161/9 162/3 163/17 166/7
 167/20 168/3 171/11
 175/15 208/17 210/4 210/4
 211/24 213/12 214/1 216/7
 216/25 217/21 218/16
 222/4 223/15 223/24
 228/12 228/21 228/24
 231/4
altercation [1]   179/21
always [3]   161/11 210/23
 235/8
am [6]   123/3 179/7 202/20
 229/20 237/7 237/9
analyses [1]   188/17
analysis [17]   172/14
 182/24 184/5 184/10
 184/17 184/18 184/22
 184/24 185/3 186/6 186/20
 186/25 187/1 187/4 189/15
 190/5 232/6
analyze [1]   172/5
analyzed [1]   184/11
anguish [1]   121/16
annual [2]   149/8 177/16
annually [1]   138/11
another [5]   163/16 163/18
 182/2 226/19 227/11
answer [4]   132/13 138/1
 173/24 224/13
answering [1]   220/1
anti [1]   137/3
any [53]   120/18 123/15
 129/10 135/17 136/6
 137/25 138/14 140/25
 143/13 146/1 147/14
 151/22 152/6 155/22
 157/14 158/6 159/2 164/23
 165/14 167/3 167/8 167/8
 167/17 167/18 167/22
 168/14 168/16 168/23
 169/20 173/10 174/16
 178/14 187/14 188/9
 188/12 191/17 196/24
 199/22 200/2 200/3 200/3
 200/13 200/14 210/22
 211/8 211/8 211/21 218/10
 219/3 219/24 229/2 235/4
 237/8
anybody [3]   143/13 187/24
 210/17
anyone [7]   169/8 210/13
 219/1 224/9 231/24 235/4
 235/12
anything [16]   154/11
 154/13 161/21 165/14
 168/17 169/9 169/11
 169/14 169/18 169/21
 188/6 196/2 197/22 197/24
 208/4 235/15
AOL [1]   133/24
Apart [1]   122/3
apologize [6]   131/25
 132/18 183/11 209/20
 219/15 228/15
apology [1]   220/13

**A**

appearance [1]   214/11
APPEARANCES [1]   118/12
appears [1]   121/24
application [4]   149/2
172/15 176/7 190/20
applications [1]   148/25
applied [8]   170/20 171/20
171/23 173/1 174/20 184/6
198/14 232/17
apply [8]   171/6 171/15
171/16 172/5 173/8 184/22
198/7 232/19
approach [9]   139/21
144/21 180/3 182/14
200/20 201/11 212/15
221/24 227/5
approached [1]   142/14
appropriate [6]   208/10
211/3 211/16 213/19 216/7
220/6
appropriateness [2]   186/5
189/14
approval [2]   231/25 232/1
approve [2]   229/4 233/16
approximately [6]   126/5
127/20 128/11 150/20
177/23 192/9
April [1]   162/19
ARCATS [3]   130/14 130/18
231/24
are [78]   120/16 121/10
123/1 123/17 124/3 124/6
124/7 124/15 125/8 125/16
127/24 129/25 129/25
130/1 130/3 130/13 132/3
132/14 132/19 133/15
135/7 135/8 135/8 136/3
137/16 138/15 139/13
141/11 141/20 141/22
141/25 142/4 143/4 144/7
144/23 148/19 151/23
155/17 156/3 158/10
158/21 158/22 160/22
160/25 161/13 170/20
171/11 182/5 182/6 183/16
188/16 201/16 204/17
207/3 207/15 207/16 210/2
210/23 214/24 214/25
215/1 215/15 215/22 216/5
216/10 218/2 219/13
219/19 221/1 221/17
222/10 222/24 226/18
233/6 233/15 234/16 235/7
236/9
area [1]   156/8
arise [1]   123/24
around [7]   123/23 142/1
144/1 158/7 210/23 221/11
235/1
array [1]   160/19
arrived [5]   126/16 126/21
142/15 207/23 216/14
arrives [1]   203/12
as [117]   122/9 125/22
128/22 129/17 129/23
131/1 132/14 132/15
132/25 133/13 133/16
133/24 134/4 135/9 135/15
136/8 136/19 136/23 137/9

141/14 142/13 143/2 143/2
144/8 146/3 146/4 146/10
146/12 147/7 151/24 155/9
155/10 155/16 156/11
160/8 161/4 161/8 161/23
161/23 163/11 163/13
163/20 166/22 168/21
169/8 169/23 170/6 170/14
170/19 171/4 172/13
172/23 173/3 174/1 174/2
174/8 174/24 176/6 176/11
176/11 184/11 184/22
187/7 187/12 188/10 189/8
190/7 190/8 190/13 192/2
193/3 193/4 194/17 194/17
194/20 195/13 195/13
196/5 197/6 198/6 199/10
200/8 203/19 204/4 208/19
209/15 210/23 210/23
211/23 213/24 215/2
216/18 217/18 218/1
218/19 219/6 219/22
219/23 220/16 220/21
220/22 224/24 225/22
227/16 227/23 228/4 228/9
228/15 232/13 233/1 233/3
233/4 233/4 233/7 233/12
234/15 235/3
ascertain [2]   146/9
198/10
ascertained [1]   153/17
Aside [1]   120/19
ask [12]   121/11 121/14
121/19 144/25 149/16
151/25 152/2 163/3 168/10
183/21 187/6 207/13
asked [11]   122/14 147/22
168/8 168/12 183/14 206/2
206/4 211/24 224/9 230/24
233/25
asking [3]   178/13 209/21
219/13
aspects [2]   138/13 175/6
assess [3]   146/20 177/25
216/5
assessed [1]   194/25
assessing [1]   224/3
assessment [4]   164/23
171/18 178/4 178/5
assessments [1]   178/7
assigned [9]   125/16
125/19 126/4 132/11
157/22 157/25 195/7 212/3
213/2
assignment [3]   165/18
165/19 165/22
assignments [2]   156/25
169/1
assist [8]   136/7 139/23
156/8 169/9 169/12 169/15
169/18 169/21
assistance [2]   155/22
156/1
assistant [7]   128/10
135/5 135/15 169/11
169/13 202/10 203/1
associate [2]   127/17
127/18
associated [1]   158/13
assume [1]   120/22
Assuming [1]   206/3

Atlanta [2]   219/1 219/9
219/12
attachment [1]   219/9
attachments [1]   219/13
attempt [3]   181/18 211/8
211/21
attend [5]   213/13 213/19
214/5 217/22 218/3
attended [1]   208/6
attention [26]   126/9
128/19 145/2 152/9 152/13
156/14 157/3 157/11
162/15 166/1 166/20
167/11 168/18 170/2
174/19 184/9 184/15
185/20 188/15 188/20
191/6 191/9 195/3 197/4
198/22 235/1
Attorney's [1]   118/19
attorneys [2]   235/25
236/3
attributed [2]   132/2
199/16
audit [14]   129/17 130/3
131/22 132/10 132/22
134/6 135/11 136/2 206/5
206/8 209/3 209/8 209/8
213/17
audits [1]   129/22
August [10]   140/15 144/13
144/15 147/7 148/20
154/25 160/21 168/14
168/19 169/8
Austin [1]   207/18
authenticate [1]   185/3
authenticated [2]   122/16
183/19
authority [1]   198/6
available [1]   181/14
Avenue [1]   118/22
avoid [1]   235/25
award [2]   134/22 134/22
aware [26]   127/24 128/1
128/3 132/14 133/1 133/9
133/15 139/13 139/16
141/25 142/17 142/18
142/20 149/20 157/2 161/2
164/4 164/11 164/16
165/14 179/7 179/9 179/17
196/24 204/17 207/11
away [1]   203/8
awhile [1]   223/15

**B**

back [26]   120/2 124/10
129/4 148/5 152/7 174/6
175/23 180/23 182/9
186/24 189/9 190/11
191/12 192/15 195/10
200/14 203/7 207/3 207/5
210/1 211/19 212/23
227/15 231/17 233/13
235/2
backlog [12]   131/10
131/14 131/25 132/1 132/2
132/3 132/4 132/6 132/14
136/5 136/7 136/10
bad [2]   175/9 197/7
based [8]   155/5 159/17
173/12 178/9 189/8 194/11

based... [2]   194/18
 197/18
basically [6]   148/23
 158/20 170/15 199/5 218/9
 218/13
basis [5]   134/6 134/8
 140/19 142/19 192/11
Bates [1]   186/24
be [130]
became [10]   127/7 127/10
 127/10 142/18 142/20
 149/20 158/6 161/20
 164/11 205/14
because [30]   123/18
 123/21 136/25 143/18
 145/11 146/6 146/12 154/6
 154/11 163/11 163/20
 168/3 174/24 175/23 176/2
 176/9 177/8 182/17 183/4
 185/16 193/6 197/20
 201/20 215/9 216/18
 220/16 221/3 222/9 225/22
 230/25
become [5]   128/9 131/14
 142/17 160/20 164/4
becomes [1]   185/5
been [56]   123/5 125/13
 125/19 126/15 127/8
 127/23 128/11 131/15
 131/19 132/16 132/23
 135/5 142/21 151/18 152/6
 158/18 159/1 159/1 159/23
 161/8 165/24 167/6 167/24
 177/3 177/7 187/9 189/15
 190/14 192/4 192/6 192/8
 192/13 192/16 193/5
 194/20 194/20 195/13
 196/6 197/1 197/24 198/2
 198/23 199/22 205/3
 208/18 209/9 209/11 210/6
 215/19 218/19 219/24
 223/15 223/25 224/24
 232/11 235/17
before [38]   118/10 122/13
 124/21 126/17 127/22
 127/23 140/25 142/21
 153/8 157/5 160/11 160/20
 165/9 165/16 165/21
 167/12 167/18 171/6
 173/18 175/5 181/8 182/5
 184/4 184/9 185/5 187/9
 187/10 187/14 187/16
 187/17 187/18 193/20
 196/1 197/19 201/16
 205/22 207/23 227/13
began [2]   132/25 232/18
begging [1]   194/23
beginning [6]   121/15
 121/23 140/7 197/20
 219/21 221/9
begins [2]   155/6 220/21
behalf [5]   119/3 119/14
 126/2 139/4 228/19
behaved [1]   196/18
behavior [2]   163/18
 173/20
behind [1]   150/9
being [26]   120/15 120/22
 121/17 131/23 132/11

Ben [1]   147/15 151/12
 155/17 161/7 164/25 169/1
 169/3 169/5 179/3 179/19
 185/13 192/2 209/23
 211/19 211/24 212/3
 214/18 222/20 226/22
 226/24
believe [38]   140/10
 145/18 146/24 147/2 147/9
 147/11 149/13 149/14
 152/4 154/20 159/19
 161/18 167/19 168/21
 185/9 188/3 188/4 192/10
 195/11 197/16 200/14
 205/24 206/1 212/6 213/11
 215/18 215/18 218/4
 219/11 220/12 220/13
 223/15 226/4 229/12
 229/13 231/21 233/18
 234/1
believed [5]   147/9 204/12
 211/21 211/25 213/25
bell [1]   207/19
below [5]   135/5 135/7
 135/7 206/10 210/15
Bench [5]   180/4 182/15
 201/13 221/25 227/6
best [4]   152/4 161/13
 235/8 237/3
between [11]   167/17 178/1
 178/14 178/25 198/17
 208/11 217/4 217/11
 217/13 222/14 229/15
beyond [1]   121/11
biases [2]   173/9 173/10
big [1]   183/4
binder [1]   208/22
bit [6]   122/24 204/20
 205/22 214/14 226/19
 229/18
black [1]   208/22
blank [1]   189/1
block [4]   185/10 185/10
 185/14 185/18
Blocker [18]   165/23
 168/19 176/24 177/2 177/6
 177/19 177/22 177/25
 178/6 178/17 187/12
 203/16 204/2 206/15 230/3
 230/5 230/24 231/23
Blocker's [2]   178/9 232/3
blowing [1]   152/11
board [3]   168/20 168/21
 201/3
bold [1]   219/21
book [4]   183/9 208/20
 208/22 232/24
both [7]   121/22 134/21
 135/16 149/7 149/7 164/13
 208/6
bother [3]   204/25 205/7
 205/9
bottom [9]   150/22 206/20
 209/1 212/20 218/22
 229/19 229/20 234/13
 234/18
box [1]   206/16
break [6]   148/1 181/8
 181/8 182/16 201/23
 234/25
BRIAN [1]   118/18

brief [4]   181/4
 219/15 235/22
briefly [9]   182/14 207/22
 209/5 223/11 229/19
 230/10 230/20 231/9
 231/22
bring [1]   204/17
brought [3]   181/16 197/22
 198/2
Brown [1]   122/20
Bryon [44]   126/14 126/15
 128/9 132/17 135/16
 135/20 136/10 146/20
 146/20 152/2 152/14
 153/25 157/15 157/23
 158/1 166/5 166/23 201/6
 201/8 201/18 202/4 202/12
 202/22 203/10 206/3 206/4
 206/7 206/15 206/23 207/1
 208/6 209/2 209/13 210/10
 210/11 210/16 211/6
 211/11 214/4 217/4 218/2
 231/10 231/11 231/19
Bryon's [1]   230/18
building [2]   179/6 179/20
burden [2]   121/2 183/19
BURTON [143]
Burton's [30]   121/23
 156/9 157/23 165/8 166/24
 168/23 172/16 173/2
 173/20 175/25 176/25
 177/2 182/8 184/6 194/3
 195/15 196/22 199/16
 200/3 201/17 204/1 205/23
 207/1 207/4 208/7 211/7
 216/25 221/13 228/19
 233/25
business [1]   129/10
busy [1]   236/10

C

CA [1]   118/4
calendar [2]   149/14 231/3
call [8]   123/21 124/12
 124/14 137/6 155/25
 158/22 162/7 172/9
called [7]   130/14 134/18
 139/6 141/2 141/17 160/7
 181/12
came [12]   126/22 127/22
 128/13 158/1 161/5 165/9
 168/21 181/1 183/14
 208/15 228/13 228/13
can [55]   123/4 130/10
 131/9 134/23 141/8 145/21
 148/10 150/9 155/19
 156/14 166/16 166/20
 173/13 175/3 175/14
 176/13 178/17 180/19
 183/9 183/9 183/21 183/22
 184/10 189/11 190/1 190/4
 196/8 200/19 201/3 206/2
 206/7 207/8 207/10 209/5
 210/3 212/9 212/15 213/4
 220/10 221/11 222/5 223/6
 223/12 225/23 227/13
 229/6 230/10 230/20 231/2
 232/24 233/9 233/18
 235/25 236/2 236/6
can't [3]   123/18 129/2
 171/22

canceled [1]   195/14
Cannon [1]   135/6
cannot [4]   172/25 177/21
 215/23 226/18
Canon [1]   209/17
capability [4]   194/9
 194/12 194/16 194/17
capacity [3]   216/17 218/8
 224/20
care [1]   222/7
career [3]   161/8 161/9
 161/16
carefully [1]   233/3
carried [1]   231/8
case [30]   120/3 120/19
 121/9 123/22 131/3 139/13
 141/7 142/3 142/3 154/19
 158/13 158/17 159/6
 163/14 170/1 172/17
 172/20 180/20 181/4 182/5
 182/8 203/22 205/4 222/15
 222/15 222/23 223/2
 223/17 235/4 235/23
cases [4]   141/23 141/24
 142/4 222/5
cause [3]   121/15 154/17
 154/21
caused [1]   219/25
causing [1]   155/14
cautioned [2]   217/18
 235/3
CC'd [1]   206/14
CCed [4]   145/5 145/7
 152/15 162/11
certain [4]   130/21 141/10
 159/12 218/10
CERTIFICATE [1]   237/1
certification [1]   189/23
certify [4]   189/13 189/18
 237/2 237/7
chaff [1]   161/12
chain [12]   127/4 128/15
 145/10 145/25 146/1
 146/13 163/12 201/2
 201/21 219/12 222/2
 224/23
change [2]   196/6 196/25
changed [1]   196/17
Changing [1]   196/14
chaos [1]   153/3
characterize [1]   234/9
charge [8]   129/2 218/24
 229/8 229/11 230/9 230/19
 230/21 234/23
charges [9]   158/14 158/21
 158/25 178/20 178/20
 178/24 197/21 229/6 233/5
charging [1]   176/16
chart [3]   201/3 201/24
 203/23
check [4]   156/1 183/9
 230/1 236/3
chief [16]   123/22 125/18
 125/22 126/12 126/20
 127/7 127/16 127/18
 128/10 135/15 201/5 202/7
 202/8 202/17 204/4 208/12
choice [2]   121/3 175/15
chose [2]   153/7 153/12

Christieint [1]   207/16
CHRISTOPHER [1]   118/10
circumstances [7]   128/1
 169/25 188/21 188/24
 197/5 198/25 216/4
civil [1]   120/3
claim [14]   138/20 138/21
 138/23 138/24 155/7 164/2
 199/6 204/10 204/12
 204/13 205/1 205/1 205/7
 205/9
claimed [1]   164/9
claiming [1]   146/11
claims [7]   147/14 147/15
 147/17 147/18 200/3
 201/16 204/17
clarification [2]   210/18
 211/12
clarified [3]   210/10
 210/16 211/11
clarify [3]   182/17 215/25
 216/9
clarifying [1]   211/6
clarity [1]   219/21
clear [17]   122/10 123/5
 138/19 157/22 159/4 171/4
 171/14 182/8 187/3 198/4
 203/21 208/24 211/9
 218/15 227/1 234/4 234/5
clearly [3]   151/17 178/22
 232/5
clock [1]   227/4
close [12]   131/16 131/22
 132/4 132/9 132/22 132/24
 134/6 134/8 135/11 136/4
 205/15 209/8
closed [1]   131/24
closeout [2]   209/24
 213/17
closeouts [1]   209/4
closing [1]   209/10
co [1]   221/20
co-workers [1]   221/20
colleagues [1]   216/18
collection [5]   131/11
 162/4 162/7 166/7 209/3
collects [1]   159/4
COLUMBIA [2]   118/1 118/22
come [25]   142/6 142/9
 142/10 142/12 143/13
 143/19 144/13 179/5
 180/23 190/11 194/15
 203/4 208/3 212/2 212/25
 213/1 213/12 214/25 215/4
 215/7 215/22 217/21
 221/19 227/15 235/2
coming [6]   130/10 144/15
 168/19 198/19 220/22
 224/9
command [5]   127/4 128/15
 201/2 201/21 222/2
comments [1]   181/9
commits [1]   141/8
committed [2]   171/2 234/6
communicate [3]   146/20
 150/2 150/4
communicated [5]   149/17
 154/15 154/23 161/17
 162/4
communicating [2]   147/3
 160/19

communicasion [6]   146/9
 164/15 164/16 167/17
 220/24 221/5
communications [7]   129/9
 134/7 135/22 150/4 167/20
 168/9 168/15
compensate [1]   180/21
competent [1]   177/7
complain [1]   149/21
complained [2]   122/4
 212/3
complaining [1]   155/1
complaint [13]   139/14
 139/17 142/7 149/23 150/1
 160/21 160/23 161/2 161/4
 199/4 199/25 204/15 205/3
complaints [10]   137/18
 138/14 155/19 160/19
 198/18 211/18 221/19
 222/16 224/10 227/1
complete [2]   184/24 213/2
completed [4]   131/2
 156/24 189/5 191/1
complies [3]   212/24 225/1
 232/25
component [3]   180/7
 180/10 190/21
comprised [1]   159/12
computer [2]   118/25
 215/16
computer-aided [1]   118/25
concept [1]   215/14
concern [10]   131/12
 144/19 151/13 167/22
 167/25 168/1 182/17 183/1
 197/2 213/21
concerned [3]   145/14
 151/4 183/4
concerning [1]   121/7
concerns [9]   143/10
 143/20 143/23 143/24
 147/3 147/15 155/1 161/17
 168/1
conclude [1]   229/2
conclusion [1]   194/15
conclusions [1]   210/22
condition [1]   154/21
conditions [1]   218/11
conduct [19]   138/11
 138/17 139/2 147/22 156/6
 164/23 175/7 175/9 178/5
 178/7 178/9 178/14 178/18
 194/19 218/17 229/11
 230/19 234/1 235/4
conducted [3]   126/2
 147/19 164/25
conducting [3]   138/23
 163/18 196/6
conducts [1]   138/24
conference [5]   180/4
 182/15 201/13 221/25
 227/6
confided [1]   154/7
confidence [1]   195/6
confidential [3]   142/4
 142/11 168/9
confidentiality [1]   142/1
confrontation [1]   225/25
confronted [1]   164/2
confronting [1]   164/5
confused [2]   209/20

C Case 1:12-cv-01537-CRC Document 220-4 Filed 07/31/17 Page 14 of 146

**C**

confused... [1]   235/23
conjunctively [1]   134/25
conscious [1]   173/22
consider [20]   149/1 155/8
170/24 173/15 175/13
175/24 175/24 194/24
195/12 196/1 196/16
198/17 198/23 199/6
199/15 224/3 226/23
228/17 233/25 234/10
consideration [4]   170/16
190/21 194/4 197/24
considered [18]   127/18
128/20 134/21 142/4 160/3
171/21 189/14 189/16
192/19 192/21 195/24
196/4 197/11 199/19
199/20 214/5 233/3 233/11
considering [4]   160/24
162/12 166/24 179/25
consist [1]   134/2
consisted [1]   148/22
constant [1]   153/3
Constitution [1]   118/22
consult [1]   188/2
consultation [1]   158/2
consulted [1]   200/11
Cont'd [1]   184/2
contact [2]   143/10 164/12
contacts [1]   173/16
contains [1]   139/9
contemporaneous [1]   172/4
contemporaneously [3]
184/21 187/20 191/2
content [2]   146/8 170/5
CONTENTS [1]   119/1
context [5]   151/16 173/7
181/21 194/4 219/15
continually [1]   220/23
continue [7]   153/11 184/4
191/5 194/19 225/21 234/6
234/7
continued [2]   149/17
162/25
continues [1]   221/3
continuing [6]   219/7
234/14 234/16 234/20
234/20 234/22
contract [15]   130/21
130/22 130/24 130/25
131/1 134/10 134/14
138/17 138/19 139/1 209/4
209/25 210/7 210/8 224/22
contracting [2]   125/20
161/9
contractor [2]   134/19
161/14
contractors [1]   161/10
contracts [7]   131/19
131/23 131/23 132/23
132/24 134/22 209/10
conversation [4]   144/18
188/5 198/9 226/8
conversations [8]   144/1
144/3 144/6 144/9 144/19
151/16 188/12 200/13
COOPER [1]   118/10
copied [8]   150/6 167/19
167/20 209/22 215/9 219/2

copies [4]   130/17 131/18
152/8 159/18
copy [9]   131/8 145/9
145/12 183/13 206/5
209/24 209/24 212/12
223/19
copying [6]   154/1 167/22
206/12 206/22 230/12
230/13
correct [179]
corrected [2]   130/20
130/21
corrective [4]   130/10
130/25 131/5 131/12
correctly [6]   126/4 131/3
172/1 210/25 218/25
228/13
correspondence [2]   198/19
234/5
corroborate [1]   131/5
could [56]   121/13 124/17
130/23 132/9 133/14
136/12 136/14 141/14
141/16 143/10 143/13
148/1 154/21 160/23 167/6
168/6 170/12 171/16
172/16 175/16 176/8
177/25 178/4 179/22
179/22 179/24 182/21
190/9 196/2 197/22 198/2
198/2 198/11 206/25
208/18 210/5 211/22
211/24 212/7 212/7 212/19
212/23 213/8 214/12 220/2
220/20 221/9 222/17
225/13 225/21 226/5 228/1
231/22 234/3 235/2 236/1
counsel [28]   122/12
123/15 144/23 144/25
150/16 152/9 156/15
164/17 164/17 180/3
180/20 180/25 183/3
190/12 199/8 205/18
205/25 206/1 206/11
206/23 206/25 207/9
215/10 219/8 228/7 229/13
229/14 237/7
counseling [3]   141/15
159/20 221/14
count [1]   144/7
counter [1]   223/24
couple [6]   121/10 125/3
181/9 188/19 211/22 212/6
course [3]   120/25 207/12
223/14
court [18]   118/1 118/21
118/21 121/9 122/2 122/12
181/6 182/5 182/16 183/1
183/18 183/19 183/23
202/1 224/7 227/18 236/15
237/5
Court's [3]   121/11 121/18
156/14
coworkers [1]   221/1
CPO [9]   127/19 127/21
201/5 202/10 203/1 220/21
220/22 230/13 231/12
CPOs [1]   135/5
CRC [1]   118/4
created [1]   172/12

creates [1]   220/25
creating [2]   151/5 154/16
credibility [1]   201/20
criteria [1]   197/18
critical [3]   180/7 180/10
190/20
cross [3]   119/2 123/20
200/24
CROSS-EXAMINATION [1]
200/24
crying [1]   201/24
CRYSTAL [2]   118/21 237/12
cumulative [1]   123/15
customer [1]   203/1
cut [1]   146/14
cv [1]   118/4

**D**

D.C [2]   118/5 118/19
daily [1]   216/22
damage [1]   154/22
DAMON [1]   118/18
Dana [3]   205/11 205/19
205/20
date [11]   144/12 144/18
149/25 163/9 185/3 192/4
192/8 205/2 211/19 237/5
237/12
dated [3]   122/16 152/15
166/5
dates [1]   144/17
David [7]   127/13 127/16
176/24 177/2 177/6 203/16
204/2
day [12]   159/21 159/22
178/10 214/23 214/25
215/2 215/3 216/11 219/25
232/12 232/13 234/25
days [3]   149/3 177/15
177/23
DC [4]   118/14 118/17
118/20 118/23
deadline [2]   136/11
136/13
deal [1]   144/12
dealings [2]   135/22
135/25
December [6]   128/19 133/3
157/9 192/9 193/4 209/12
decide [1]   229/3
deciding [24]   157/23
157/25 158/6 158/9 158/12
158/20 159/4 159/22 160/8
160/11 160/20 161/1
161/20 164/22 171/4
175/15 186/6 190/18 198/6
233/2 233/3 233/8 233/10
233/15
decision [13]   135/19
135/20 158/16 161/6 162/1
162/2 173/12 178/2 184/19
187/18 227/14 227/23
228/16
decisions [5]   130/18
159/19 161/12 161/15
170/18
deem [2]   173/24 174/5
deemed [3]   145/15 173/19
197/19
defendant [3]   118/7
118/18 201/14

**D** Case 1:12-cv-01537-CRC

defendant's [5]  185/20
 193/22 223/9 225/8 225/10
defendants [1]  223/8
Defense [2]  183/7 224/24
defer [2]  232/2 232/4
deliberations [1]  152/8
deny [2]  149/2 224/1
department [10]  125/11
 125/13 125/16 137/16
 137/20 148/23 159/9
 164/12 164/18 176/12
department's [1]  204/18
departmental [1]  204/16
depending [1]  143/1
depends [3]  172/9 175/20
 216/2
deposed [1]  181/14
deposition [3]  181/15
 181/18 182/25
depositions [5]  157/6
 157/8 181/11 181/20
 182/18
depth [1]  170/14
deputy [8]  126/12 169/20
 202/17 203/19 204/4
 205/14 220/21 220/22
describe [3]  208/2 208/7
 217/10
describing [1]  222/12
descriptive [1]  164/6
desire [4]  194/8 194/12
 194/18 195/1
despite [2]  230/18 234/7
detail [1]  229/18
details [3]  204/23 205/4
 230/4
determination [15]  155/20
 159/22 173/22 173/25
 174/13 174/15 174/16
 174/20 174/23 175/1
 177/19 194/8 199/22 232/3
 232/16
determine [4]  138/20
 148/24 158/21 175/16
determined [7]  122/16
 171/24 172/1 174/24 176/1
 199/20 233/5
determining [5]  170/17
 186/5 189/14 200/9 216/6
develop [1]  139/5
Development [1]  125/12
device [1]  141/17
DGO [1]  118/16
did [205]
didn't [21]  134/13 146/24
 147/9 151/25 152/2 154/13
 159/2 161/3 161/18 168/9
 175/2 179/9 179/13 183/5
 188/13 191/20 200/2
 210/20 221/16 223/17
 234/2
different [7]  154/18
 154/19 175/7 216/3 217/3
 220/17 223/1
difficulties [2]  154/8
 155/22
direct [23]  119/2 124/24
 126/9 145/2 152/13 156/14
 157/3 157/11 162/15

D [65/24 167/8  168/21 170/2
 184/2 184/9 184/15 185/20
 188/15 188/20 191/6 195/3
 197/4 226/20
directed [4]  206/4 210/17
 230/14 231/11
directing [10]  128/18
 166/1 166/11 166/20
 167/11 168/18 174/19
 193/19 198/22 209/13
direction [2]  158/1
 182/25
directly [10]  143/1 162/4
 162/11 178/24 200/12
 202/11 203/10 216/15
 224/22 228/14
directors [3]  135/7 135/9
 218/23
disagree [2]  211/15
 221/12
disciplinary [10]  140/20
 165/17 165/21 170/18
 222/25 223/16 228/21
 232/9 232/10 232/11
discipline [8]  141/2
 141/6 141/7 141/11 141/12
 159/1 214/12 222/3
disciplined [3]  196/22
 196/23 222/2
disciplining [1]  140/18
disclose [1]  140/23
discontinue [1]  230/14
discovery [6]  164/21
 172/23 181/11 181/12
 181/16 182/18
discriminated [1]  137/18
discriminating [1]  161/5
discrimination [15]  137/3
 137/25 138/20 138/23
 139/10 139/17 141/23
 141/24 142/7 155/8 155/8
 155/10 164/2 194/5 204/13
discriminatory [1]  137/11
discuss [6]  143/10 148/11
 210/7 213/17 235/3 235/12
discussed [3]  183/12
 201/15 201/16
discussion [6]  164/7
 170/14 188/9 205/22
 211/23 213/24
discussions [1]  154/8
disobedience [1]  214/12
disobeyed [1]  178/7
disobeying [1]  214/11
disposition [1]  130/2
disputes [1]  161/10
disrespect [1]  151/12
disrespectful [6]  151/13
 208/14 217/16 217/17
 220/14 220/19
disruption [1]  153/3
distress [2]  153/19 154/7
DISTRICT [6]  118/1 118/1
 118/10 118/21 118/22
 237/5
division [9]  135/7 135/8
 146/7 158/3 172/19 190/9
 200/13 218/23 218/24
do [117]  126/4 126/10
 127/13 127/20 128/6 128/8
 129/5 129/7 130/11 131/3

133/12 134/17 134/21
 135/14 137/19 139/1
 139/25 140/11 140/13
 142/23 145/8 147/24
 150/18 150/19 150/23
 151/22 152/15 152/17
 152/19 153/24 154/13
 154/22 155/8 156/20
 156/22 161/15 161/16
 161/20 166/12 168/3 168/4
 168/23 169/1 169/3 169/5
 169/6 169/8 169/11 169/14
 169/17 169/20 170/12
 171/13 177/13 184/9
 184/16 184/21 185/2 185/2
 185/14 186/24 188/21
 191/8 194/24 196/2 196/10
 197/1 197/9 200/2 200/6
 201/3 201/23 205/11
 205/13 206/10 206/10
 206/16 207/3 207/15
 207/16 207/18 209/21
 210/13 212/5 213/8 213/9
 213/10 214/3 214/4 214/10
 214/10 214/15 214/23
 214/23 215/2 215/15
 215/18 215/20 218/5
 218/25 220/6 221/12
 224/10 225/2 225/23
 225/24 226/5 227/7 228/1
 229/15 229/20 230/18
 231/14 232/15 235/3
 235/11 236/1
document [49]  121/13
 122/3 122/13 123/9 139/23
 140/23 150/18 151/2 151/4
 152/10 156/22 157/5
 157/12 157/18 157/19
 162/17 164/1 166/7 167/12
 168/4 170/3 170/4 170/5
 170/12 176/8 184/25
 184/25 185/25 186/4 186/7
 186/9 186/12 186/16 188/8
 189/20 189/23 190/7 190/8
 190/12 191/2 193/20
 195/10 212/9 219/11 225/2
 226/22 228/2 228/10 233/1
document's [1]  225/6
documentation [12]  131/5
 131/11 156/9 158/13
 158/25 164/3 172/12
 172/25 174/7 174/8 194/11
 226/11
documented [2]  222/3
 222/7
documenting [1]  184/18
documents [49]  122/17
 130/17 131/4 131/16
 131/18 131/19 132/4 132/6
 132/9 132/15 132/16
 132/18 132/20 132/21
 134/12 134/20 136/3 136/9
 136/12 136/14 144/17
 145/5 145/5 145/12 146/19
 152/9 153/25 157/14
 159/13 159/16 160/2 160/3
 161/23 162/9 166/7 172/10
 178/6 178/22 181/13
 187/19 190/15 198/5
 198/12 209/10 209/11
 209/14 212/1 212/7 228/4

does [12]   125/22 138/5
 138/10 140/9 140/22
 162/22 184/21 189/18
 192/23 226/7 226/11
 226/13
doesn't [2]   175/12 207/19
doing [10]   147/25 149/14
 168/10 171/8 171/12 176/6
 189/8 201/1 201/19 230/14
don't [75]   122/11 123/23
 128/12 132/13 135/1
 136/16 139/19 139/19
 140/5 140/10 142/20
 142/24 144/6 144/6 144/7
 145/9 147/17 148/5 148/11
 150/9 151/15 151/23 156/2
 157/7 159/20 162/6 163/9
 163/20 164/5 164/20 167/5
 168/13 169/13 172/23
 173/10 173/22 174/3 174/6
 174/15 178/16 179/3 179/7
 179/12 179/14 183/8
 185/16 188/3 188/4 188/5
 188/6 188/9 188/12 190/6
 192/25 195/19 198/9
 198/13 200/13 200/14
 213/6 214/24 215/1 216/1
 216/10 222/6 222/8 223/2
 223/4 223/6 227/5 227/11
 231/25 235/8 235/22 236/3
DONALD [3]   118/13 118/13
 206/17
done [15]   131/6 139/17
 158/1 158/2 169/9 169/11
 169/14 169/17 169/21
 185/6 185/8 204/14 211/20
 212/20 213/23
DONOVAN [3]   118/6 120/4
 129/4
door [5]   143/7 143/9
 143/12 143/15 145/11
Douglas [22]   160/7 165/5
 170/15 170/20 171/14
 171/23 172/12 172/15
 173/1 173/13 180/12 184/4
 186/6 189/16 189/16
 190/20 191/5 198/8 227/9
 232/18 232/18 233/11
down [8]   127/4 180/9
 182/21 210/21 215/17
 231/17 231/21 233/8
downstairs [1]   235/24
dozen [2]   123/15 123/16
dozens [1]   136/25
draft [1]   185/5
draining [1]   154/16
draw [1]   152/9
during [12]   150/2 152/9
 156/10 157/6 164/22
 165/13 166/8 166/24
 181/16 182/16 196/21
 200/9
duties [13]   129/12 129/15
 129/17 133/16 133/24
 158/10 170/25 175/25
 176/6 195/7 215/23 216/2
 217/25
duty [1]   137/25

e-mail [22]   150/22 190/8
 206/3 206/3 206/7 208/5
 208/17 208/23 208/25
 209/6 209/6 209/12 209/16
 209/17 212/7 215/16 220/6
 220/8 220/14 220/18
 220/25 223/3
e-mail-mail [3]   185/17
 186/11 186/13
e-mails [6]   206/5 208/10
 215/9 221/3 221/7 229/25
e-mails-mails [2]   194/23
 200/14
E-X-H-I-B-I-T-S [1]
 119/12
each [5]   171/24 173/4
 184/5 232/18 233/18
earlier [13]   204/20 207/6
 207/24 209/7 210/2 214/14
 214/15 226/2 226/4 226/7
 227/22 228/7 235/3
early [1]   236/11
easily [1]   220/2
EEO [32]   121/16 137/6
 137/14 137/15 137/16
 137/18 137/20 138/1 138/5
 138/7 138/13 138/14
 138/17 139/14 141/17
 146/17 147/8 147/22
 149/21 149/25 155/6
 155/19 169/14 198/18
 199/25 200/5 204/7 204/12
 204/16 204/18 212/12
 212/19
EEOC [2]   154/24 199/4
effect [5]   147/8 195/4
 222/19 222/20 226/24
effected [1]   156/5
effective [1]   148/20
either [10]   141/8 141/8
 162/11 181/14 188/10
 188/16 190/5 208/16
 209/25 215/22
elementary [1]   185/13
elements [1]   170/16
elicit [1]   222/10
elicited [1]   223/25
Elie [17]   123/10 128/6
 135/12 142/14 143/24
 144/14 144/16 145/16
 147/3 151/25 176/15
 176/20 177/19 196/17
 196/23 203/12 207/23
eligible [1]   216/7
else [4]   209/22 215/20
 219/1 231/3
else's [1]   187/24
email [53]   122/19 136/10
 146/2 150/10 152/14
 152/19 153/1 154/6 154/10
 155/24 155/24 162/6
 163/21 186/14 189/8 189/9
 206/14 206/14 206/16
 206/19 206/20 206/22
 206/24 207/3 209/1 209/2
 209/2 209/3 209/23 210/7
 210/11 210/15 210/25
 211/2 211/7 219/9 219/11
 219/12 219/25 220/1 220/4

229/25 230/1 230/14
 230/17 231/7
emails [21]   123/16 124/3
 134/7 145/7 145/18 150/6
 151/23 154/25 156/7 162/4
 162/6 162/10 163/7 163/10
 167/5 167/6 167/19 210/2
 210/24 231/24 234/23
emotional [5]   121/15
 154/21 155/3 155/9 168/23
emotionally [1]   154/16
emphasize [1]   220/23
employed [3]   125/8 207/7
 237/8
employee [54]   129/8
 137/10 137/15 137/17
 140/19 140/19 140/22
 140/24 140/24 141/8 146/6
 146/21 149/3 151/11
 153/18 155/5 155/10
 155/14 155/14 155/16
 155/21 155/21 156/1 158/2
 158/11 163/17 163/19
 165/6 166/22 166/25
 172/18 175/20 177/9
 179/19 182/2 184/20 189/9
 190/9 190/10 197/20
 199/21 200/12 204/12
 215/14 215/25 216/4 216/6
 216/8 222/24 224/14
 224/16 229/12 230/20
 234/5
employee's [10]   137/20
 170/25 173/15 180/1 191/6
 191/13 195/4 195/6 195/24
 216/9
employees [14]   138/12
 138/12 138/15 149/5 149/7
 155/17 163/1 163/4 210/22
 214/15 214/21 214/23
 215/1 227/1
employer [1]   222/24
employment [2]   138/7
 173/16
employs [1]   141/2
end [7]   149/8 149/10
 149/11 151/17 209/16
 221/10 222/23
ended [1]   193/7
energy [1]   154/4
engaged [1]   120/23
enough [3]   138/16 191/2
 215/1
ensure [1]   130/2
entered [3]   130/13 142/6
 142/8
entire [4]   161/8 161/16
 170/20 192/1
entitled [2]   121/2 209/3
entrances [1]   236/9
environment [2]   147/16
 199/23
EO [1]   140/17
Equal [1]   138/7
erase [1]   201/3
escort [1]   179/6
escorted [1]   179/19
especially [1]   208/10
Esq [4]   118/13 118/15

E    Case 1:12-cv-01537-CRC    Document 217    Filed 07/31/17    182/10 182/22 235/6 235/7

Esq... [2]  118/18 118/18
essence [1]   231/25
essential [1]   222/15
estimate [1]   180/18
et [2]   209/23
evaluate [3]   146/8 177/7
 177/9
evaluated [1]   169/3
evaluating [2]   149/5
 203/24
evaluation [8]   160/4
 177/14 177/16 192/19
 192/24 193/3 193/5 222/3
evaluations [3]   149/8
 149/10 192/25
even [11]   147/7 162/25
 163/5 163/14 174/16
 208/13 208/14 217/17
 219/23 220/17 221/11
evening [1]   235/5
event [2]   158/6 215/21
events [2]   223/25 224/5
ever [19]   127/2 140/10
 157/14 167/12 172/21
 172/22 172/22 172/22
 172/22 172/22 173/22
 204/7 204/23 214/18 215/4
 215/10 218/5 221/19
 224/18
every [7]   137/15 142/3
 161/11 171/24 216/3
 220/23 221/5
everybody [1]   209/22
everyone [1]   231/3
everything [1]   160/1
evidence [22]   120/17
 120/17 131/2 150/11 152/7
 159/4 159/5 159/7 159/8
 159/8 159/12 167/8 170/7
 170/10 183/2 193/23 194/1
 203/22 223/22 225/10
 226/18 233/6
exact [3]   142/24 144/18
 197/11
exactly [7]   142/20 161/16
 169/23 171/22 173/3
 178/22 208/24
examination [5]   124/24
 184/2 198/11 200/24
 226/20
examinations [1]   152/10
examine [1]   123/20
examined [1]   192/2
examining [1]   191/22
example [19]   123/19
 130/17 132/23 134/7
 134/19 141/14 144/10
 145/24 149/3 153/2 153/25
 158/16 158/24 159/19
 175/8 175/11 184/11
 185/17 198/1
exception [1]   222/20
exchange [3]   181/12
 181/13 230/17
excludable [1]   120/20
excuse [7]   139/21 144/14
 145/4 157/4 162/16 187/16
 193/3
excused [7]   148/9 148/13

execute [1]   190/5
executive [3]   136/18
 136/19 208/13
executives [1]   221/1
exhibit [50]   119/15
 119/16 122/10 145/3
 150/11 152/6 152/13
 156/15 156/19 157/3
 157/11 162/15 162/16
 166/1 166/1 166/4 166/11
 167/11 168/18 168/18
 170/3 170/6 170/10 174/9
 174/10 183/7 183/8 183/11
 185/21 186/11 191/8
 191/12 193/19 194/1
 200/21 205/24 208/19
 208/21 208/21 218/19
 223/15 223/22 224/25
 225/10 228/1 229/6 232/24
 233/10 235/17 235/18
exhibits [8]   122/8 144/23
 144/24 150/16 166/16
 183/8 201/15 226/17
existing [3]   159/5 159/7
 159/8
expand [1]   171/11
expanded [1]   141/13
expected [1]   196/9
experience [3]   133/1
 155/5 155/7
experienced [1]   194/5
experiencing [2]   151/11
 164/14
explain [8]   129/19 130/5
 172/25 175/3 181/21
 199/18 225/16 225/17
explained [3]   146/12
 175/5 215/14
explanation [2]   162/25
 235/20
explanations [1]   225/18
explore [2]   161/21 183/22
expressed [2]   173/9
 173/10
expressing [1]   155/1
extent [19]   131/25 132/1
 133/12 133/15 136/5
 139/24 151/19 151/24
 152/5 175/23 177/12
 187/19 188/15 196/17
 198/10 198/14 199/15
 199/18 217/2
external [4]   206/9 230/13
 230/16 231/12
extremely [1]   235/25

F
face [2]   168/14 168/14
fact [23]   122/9 145/13
 146/24 149/20 156/7
 164/12 164/25 165/21
 178/24 179/4 179/24
 182/23 194/4 206/12
 206/25 210/10 210/16
 210/20 220/8 222/13
 223/23 226/9 226/25
factor [28]   171/19 171/20
 171/25 171/25 172/2 172/5
 173/4 173/8 174/20 175/1

175/6 175/9 175/14 175/18
 175/19 175/24 175/25
 176/1 176/2 176/7 184/11
 194/3 197/11 197/19
 233/21 233/22 234/10
 235/19
factors [33]   158/19
 158/20 158/22 158/23
 160/8 165/5 170/15 170/20
 171/14 171/16 171/23
 172/12 172/15 173/1 173/5
 173/14 184/4 184/6 186/6
 188/17 189/16 189/17
 190/20 191/5 198/8 227/9
 232/18 232/18 232/19
 233/11 233/12 233/15
 234/15
facts [3]   121/16 137/10
 184/12
factual [3]   147/14 147/17
 174/12
failed [1]   230/23
failure [2]   229/8 230/9
fair [4]   160/12 160/24
 171/16 171/18
Fairbanks [9]   221/23
 222/12 224/4 224/14
 224/15 224/16 224/18
 226/9 226/23
fairly [1]   173/8
faith [2]   124/2 197/8
familiar [12]   128/22
 133/6 136/8 136/19 136/22
 137/2 141/20 141/22
 148/19 149/4 164/15
 169/25
far [2]   123/6 225/22
fast [1]   203/16
fault [3]   161/14 161/14
 195/15
FCRR [2]   118/21 237/12
federal [6]   122/1 170/21
 191/25 229/11 230/20
 233/10
feel [6]   122/24 124/20
 137/19 155/10 200/18
 229/2
felt [2]   145/11 208/9
few [2]   178/13 182/17
fiduciary [2]   173/16
 175/12
field [8]   118/18 119/6
 131/20 135/9 161/9 176/18
 176/20 177/11
fifteen [4]   180/22 181/8
 182/9 227/11
file [14]   151/20 155/18
 159/12 159/16 159/19
 160/4 161/23 162/8 172/8
 172/9 183/3 185/19 189/9
 204/15
filed [10]   139/14 149/23
 150/1 160/21 160/23 199/4
 205/1 205/3 212/12 212/19
files [3]   210/5 211/8
 211/22
filled [2]   203/7 203/14
final [7]   121/22 130/2
 170/18 184/19 184/20
 185/6 185/6
finalize [1]   190/10

F  Case 1:12-cv-01537-CRC  Document 11180/11ed 07/31/17

Case 1:12-cv-01537-CRC  Document 11180/11ed 07/31/17

**F**

finalized [3]   187/7 187/8
 187/9
finally [1]   197/4
financially [1]   237/9
find [9]   152/11 161/3
 204/25 205/7 210/14 211/2
 211/16 220/6 233/11
finding [7]   130/23 131/16
 132/22 134/12 163/25
 164/8 210/24
findings [13]   129/25
 129/25 130/3 130/7 130/13
 132/10 134/6 134/9 135/11
 136/2 136/4 209/8 213/18
fine [4]   124/7 124/16
 124/22 148/3
finish [1]   140/4
finished [2]   150/12
 152/18
first [38]   120/16 121/22
 124/12 135/17 141/10
 141/14 147/1 151/15
 152/25 160/18 160/25
 162/22 168/1 168/1 173/1
 173/20 181/10 186/23
 186/25 187/1 187/3 208/22
 209/12 210/13 210/20
 211/6 211/22 216/6 220/11
 220/16 220/20 221/16
 230/9 233/19 234/3 234/22
 235/16 235/19
firsthand [1]   167/3
fiscal [8]   149/11 149/15
 192/10 192/14 192/16
 192/16 192/17 193/6
five [8]   143/2 148/2
 148/4 148/10 159/21
 194/23 219/7 232/12
floor [1]   183/25
focus [1]   201/4
folder [4]   164/4 164/8
 172/11 172/13
folders [1]   174/11
follow [6]   121/13 132/16
 160/8 226/8 229/8 230/9
follow-up [1]   226/8
following [1]   233/12
Force [1]   161/8
foregoing [1]   237/2
Forgive [1]   202/6
form [2]   153/18 197/16
formal [3]   149/23 177/14
 222/2
former [1]   161/8
forth [2]   189/9 200/14
forward [3]   145/5 146/5
 203/16
forwarded [2]   146/3 220/2
forwards [1]   219/19
found [4]   120/18 121/9
 164/4 197/23
foundation [6]   123/12
 123/15 123/22 124/1
 177/11 201/15
four [4]   143/2 177/3
 229/12 236/10
fourth [2]   118/19 231/16
frame [6]   128/12 133/5
 142/24 168/22 177/5 201/5

fraud [1]   180/11
free [2]   124/20 200/18
frequent [3]   134/5 134/7
 137/17
frequently [8]   134/18
 155/16 161/10 171/3
 176/10 208/9 215/9 216/21
front [6]   122/9 122/11
 173/12 176/9 178/6 186/11
full [3]   125/5 187/3
 219/18
fully [2]   193/13 193/18
function [2]   129/22
 156/11
further [6]   121/21 183/22
 198/11 200/16 237/7 237/9
future [1]   206/10

**G**

gain [1]   171/3
GAO [1]   129/23
gave [8]   147/7 149/7
 183/12 191/12 195/8
 195/24 198/5 208/22
gender [1]   137/11
general [12]   129/22 130/9
 132/22 134/11 136/22
 136/25 143/19 176/11
 190/12 211/25 213/17
 221/1
General's [1]   176/15
generally [16]   126/1
 129/16 136/1 138/11
 138/16 158/13 159/6 176/9
 189/3 197/20 208/4 212/2
 213/16 218/1 221/3 230/12
gentleman [1]   127/13
gentlemen [8]   124/10
 148/7 152/5 166/16 181/7
 200/18 226/17 234/24
Gerald [2]   221/23 224/14
get [20]   124/21 129/21
 131/8 136/12 153/12
 160/11 183/5 183/10
 203/21 205/22 209/13
 210/1 223/6 227/16 235/1
 235/8 235/23 236/2 236/6
 236/10
gets [1]   137/15
getting [3]   154/25 199/5
 220/3
give [8]   140/24 160/21
 172/16 181/15 181/21
 184/25 191/8 223/19
given [10]   140/14 149/11
 154/24 159/9 169/1 169/5
 171/12 173/9 177/22
 181/20
giving [3]   136/11 140/11
 214/11
go [26]   123/4 149/20
 150/9 150/16 152/7 155/19
 173/18 174/6 175/23
 180/14 180/23 186/24
 195/10 195/18 195/23
 210/10 223/6 227/8 227/11
 227/13 231/7 233/8 233/13
 233/18 233/18 235/2
goes [3]   121/10 209/20
 220/1
going [32]   123/17 140/3

144/11 145/15 148/17
 150/10 151/25 152/2
 168/14 180/15 180/20
 181/7 187/16 188/19
 192/15 197/24 198/15
 201/12 208/24 209/5 210/2
 212/1 218/3 222/11 223/22
 224/1 225/24 227/4 227/15
 231/9 234/24 236/10
gone [3]   131/16 180/13
 214/1
good [12]   120/5 120/6
 124/2 124/13 124/15 125/1
 125/2 143/4 153/2 201/1
 210/22 210/25
got [3]   155/24 180/13
 219/23
gotten [1]   182/19
government [11]   120/12
 129/23 161/13 161/14
 165/6 165/9 170/21 179/20
 190/14 191/17 191/25
grade [1]   136/17
grant [1]   149/2
great [1]   235/4
grew [1]   225/18
grounds [1]   120/21
Group [1]   118/16
guarantee [1]   222/23
guess [3]   172/9 173/6
 223/21
guessing [1]   173/7
guide [2]   148/23 148/24

**H**

had [109]   122/8 122/17
 124/11 126/15 129/2 131/2
 131/15 131/16 131/19
 132/8 132/16 134/4 135/17
 142/21 143/2 143/7 143/11
 143/12 143/20 143/24
 145/6 149/16 151/17
 153/21 154/6 154/8 154/8
 154/20 156/7 156/24
 158/18 159/1 159/1 160/4
 160/4 161/2 162/3 162/4
 163/11 164/19 165/12
 172/10 173/12 174/25
 174/25 176/2 176/8 176/14
 177/3 177/22 178/6 178/7
 179/1 179/5 185/18 191/16
 191/24 191/25 192/2 193/6
 194/8 194/20 194/20
 194/22 194/25 196/1 196/6
 196/9 197/20 198/9 199/3
 199/4 199/4 199/22 200/3
 204/12 204/25 205/7 205/9
 206/4 207/2 209/9 209/11
 210/6 210/16 211/22
 211/23 213/24 215/16
 215/18 215/19 217/18
 218/13 218/13 219/11
 219/22 220/16 223/18
 223/23 224/2 224/18 226/3
 226/25 230/4 230/13
 230/16 230/24 231/12
 231/23
half [1]   121/14
hand [1]   124/18
handed [1]   212/18
handwriting [1]   202/6

H  Case 1:12-cv-01537-CRC

hanging [1]  151/12
happen [5]  167/24 179/9
 179/11 179/13 179/23
happened [3]  139/24 179/8
 179/15
happening [1]  145/20
happens [2]  155/16 181/11
happy [2]  201/21 223/19
harassment [8]  155/7
 197/7 199/2 199/3 199/4
 199/16 199/21 199/23
hard [1]  183/5
harm [2]  154/17 155/9
Harris [3]  202/11 202/14
 203/4
has [27]  121/9 127/3
 136/25 137/25 140/17
 140/19 154/23 161/8 169/8
 169/9 169/11 169/14
 169/17 169/21 186/11
 189/15 195/5 201/14 216/5
 221/6 222/22 222/25
 223/15 223/24 226/23
 229/25 234/5
have [156]
having [11]  123/1 136/1
 139/20 144/14 144/16
 145/19 155/3 155/22 179/4
 188/9 190/1
he [28]  122/9 123/8
 127/15 127/16 127/17
 127/17 127/19 127/20
 168/21 177/2 178/4 179/25
 182/20 182/23 182/23
 203/19 203/20 207/13
 218/24 219/3 222/13
 223/23 224/21 224/21
 225/14 226/12 231/1
 231/23
he's [5]  183/6 183/21
 201/11 222/2 222/4
head [3]  201/8 202/4
 202/8
headquarters [5]  126/5
 126/22 127/22 131/20
 135/9
hear [3]  150/17 163/25
 181/17
heard [8]  120/12 163/23
 181/10 181/23 182/19
 182/20 201/2 226/3
hearing [1]  237/9
hears [1]  159/5
hearsay [6]  120/20 120/24
 222/4 222/6 222/8 222/20
held [1]  126/10
help [3]  156/8 162/1
 190/9
helping [2]  130/16 130/17
her [161]
here [28]  122/24 153/2
 161/18 181/4 183/2 185/25
 186/4 187/3 188/16 188/16
 188/19 189/1 191/13 195/8
 198/15 202/20 203/2
 203/19 210/21 210/23
 219/18 219/19 220/22
 225/13 229/14 231/9 232/7
 236/11

herself [8]  120/19 145/15
 150/7 154/17 194/19 196/3
 196/7 196/11
hierarchy [1]  169/8
highest [2]  164/18 208/12
highlight [1]  206/2
highlighting [1]  152/11
him [7]  140/5 183/21
 191/8 200/21 211/25
 219/13 231/1
hire [3]  135/19 135/20
 139/1
hired [3]  128/9 135/15
 203/16
his [8]  178/10 178/18
 178/19 182/25 183/8 224/4
 224/23 231/25
history [5]  165/6 165/8
 191/7 191/22 198/18
hmm [1]  166/17
hold [5]  120/8 176/19
 199/8 201/10 209/25
Honor [39]  120/2 120/5
 120/7 120/14 122/6 122/22
 122/24 123/4 124/13
 139/22 144/21 148/1 158/4
 167/14 176/18 177/11
 180/6 182/14 182/16 183/6
 186/1 195/21 199/11
 199/13 200/17 200/20
 201/9 201/14 201/25
 212/15 217/12 219/14
 221/24 222/1 223/12 225/9
 227/3 227/20 235/16
HONORABLE [1]  118/10
hope [1]  124/10
hoped [1]  235/7
hopefully [3]  152/9
 221/10 221/11
hostile [7]  145/16 146/10
 146/21 147/16 151/5
 199/23 225/19
hot [1]  219/22
hour [1]  227/9
house [3]  131/8 135/4
 216/20
housekeeping [1]  122/5
Housing [3]  125/11 125/17
 164/12
Houston [11]  121/7 121/25
 163/23 164/2 164/8 164/14
 165/1 169/23 181/1 182/2
 182/4
Houston's [6]  164/1
 164/17 170/1 181/4 182/7
 226/21
how [41]  124/6 124/7
 124/15 125/19 126/15
 128/8 129/7 131/14 135/14
 142/25 143/1 144/7 148/24
 148/24 149/3 160/18
 160/23 171/20 171/22
 171/24 172/25 173/3 173/4
 173/6 180/5 184/6 184/11
 194/15 196/21 208/2 208/7
 208/15 209/21 211/14
 215/7 216/21 217/10
 224/13 227/7 232/19 234/9
HPS [1]  209/25
HR [2]  162/8 171/12
HUD [32]  122/2 126/2

126/5 126/21 128/13
 128/20 129/1 136/19
 136/25 138/5 139/14
 140/17 141/2 141/17
 141/25 142/15 149/7
 149/14 149/21 150/8
 153/18 163/15 163/17
 165/10 177/3 182/2 203/5
 207/7 207/23 217/14
 217/21 218/5
HUD's [9]  128/22 137/3
 137/13 137/23 138/1
 148/19 149/4 177/8 184/17
human [2]  159/9 198/5
hundreds [1]  136/25

I

I'd [12]  126/9 135/16
 152/13 156/18 159/25
 162/7 167/5 170/2 178/21
 184/15 195/10 205/23
I'll [9]  122/3 125/22
 144/25 195/17 201/22
 219/20 224/1 224/2 232/5
I'm [90]  122/19 124/22
 125/11 125/18 128/1 129/3
 130/9 131/25 132/3 133/4
 133/5 133/14 133/20
 134/13 136/8 136/24
 137/23 139/4 139/19 140/3
 142/3 144/14 144/15
 146/14 147/1 147/2 149/25
 150/10 153/24 154/4 157/6
 157/25 162/18 163/5
 163/11 163/20 164/10
 164/15 165/23 169/25
 171/13 172/21 175/2
 175/22 175/22 176/17
 179/10 179/17 183/4 183/8
 185/13 186/12 186/14
 186/16 187/16 187/16
 188/19 189/19 190/2
 191/10 192/13 192/18
 194/10 194/17 196/12
 196/13 196/24 200/11
 201/19 201/19 201/21
 205/19 206/20 208/21
 209/20 214/10 218/21
 219/8 219/14 223/4 223/19
 223/21 224/1 225/21 227/4
 232/4 232/5 234/17 234/18
 236/6
I've [5]  125/20 139/19
 140/10 173/10 183/2
idea [3]  168/23 210/22
 210/25
identified [3]  178/21
 218/17 227/23
identify [2]  176/13
 207/10
IEG [1]  130/6
IG [6]  131/2 131/5 131/9
 131/12 135/22 211/9
ill [1]  153/10
immediate [3]  127/4
 128/15 204/1
impairment [1]  197/7
impartial [4]  160/14
 160/24 161/7 173/11
impartially [1]  173/8
implication [1]  211/7

imply [1]  210/15
important [3]  144/9 191/2
 231/13
impose [1]  141/11
imposed [1]  175/15
imposes [1]  141/25
impression [5]  210/4
 210/5 220/25 221/6 221/7
impressions [1]  221/4
improve [4]  130/11 194/9
 194/13 194/16
in-depth [1]  170/14
inadvertent [1]  171/2
inappropriate [2]  206/8
 234/23
inartful [1]  234/18
incident [4]  137/13
 141/15 167/4 194/5
incidents [4]  158/16
 178/25 212/5 229/14
include [3]  158/15 158/25
 206/4
included [4]  150/22
 189/15 230/16 232/7
includes [1]  158/14
including [5]  162/24
 171/1 173/16 186/12
 186/14
inconsistent [1]  181/19
indeed [1]  143/19
independent [4]  138/17
 177/19 200/2 232/6
independently [1]  178/2
indicated [2]  213/5
 215/16
indications [1]  215/1
individual [5]  161/5
 177/15 178/14 216/4 216/4
individually [2]  149/20
 232/19
individuals [6]  207/15
 209/3 222/17 230/13
 230/16 231/12
indulge [2]  180/7 183/18
Indulgence [2]  158/4
 167/14
influenced [1]  198/24
information [35]  134/19
 134/20 134/20 148/25
 156/12 158/15 159/24
 162/1 165/14 168/6 169/5
 171/8 171/15 172/8 173/5
 173/12 181/13 184/19
 189/14 198/7 206/9 218/25
 219/2 219/9 219/23 220/2
 220/3 222/18 229/3 230/24
 230/24 231/1 231/11 232/7
 232/17
informed [2]  162/1 214/21
infractions [5]  165/16
 234/16 234/20 234/20
 234/22
initial [1]  133/1
initially [1]  220/16
inquire [2]  166/25 198/10
inquired [1]  177/22
insight [1]  156/12
Inspector [8]  129/22
 130/9 132/22 134/11

instance [3]  181/19 226/2
 230/21
instances [5]  136/13
 179/22 179/23 196/24
 212/6
instead [2]  220/3 225/18
instruct [2]  210/13 224/3
instructed [1]  231/24
instructing [1]  136/11
instruction [5]  168/3
 181/1 181/3 230/18 235/22
instructions [4]  178/7
 210/1 229/8 230/10
insubordinate [2]  208/14
 217/17
insubordination [1]  214/6
insulting [1]  210/14
intends [1]  234/6
intense [1]  180/16
intent [3]  145/18 189/3
 221/5
intention [1]  196/6
intentional [3]  171/2
 174/5 234/1
intentionally [2]  183/14
 234/6
intentions [3]  153/10
 234/14 234/19
interact [3]  134/4 134/8
 216/19
interacted [2]  207/24
 216/21
interacting [3]  135/10
 176/10 205/5
interaction [8]  135/18
 155/13 176/14 201/17
 208/11 216/25 222/14
 230/4
interactions [14]  175/13
 205/23 207/7 207/22 208/2
 208/4 208/8 208/9 217/3
 217/4 217/7 217/10 217/16
 229/15
interest [2]  161/13
 188/19
interested [1]  237/10
intervention [1]  164/18
interviewed [1]  135/16
investigate [7]  138/14
 147/14 151/8 179/18 180/1
 204/7 204/9
investigation [9]  138/24
 139/2 139/6 139/16 140/12
 147/19 147/23 164/23
 200/2
investigations [1]  138/18
investigator [3]  138/17
 147/8 200/5
involve [1]  175/12
involved [8]  127/24 128/2
 153/10 153/12 160/1 197/8
 210/6 216/2
involvement [2]  225/23
 230/17
irrelevant [1]  201/16
is [291]
isn't [18]  142/1 145/16
 146/25 147/4 147/9 147/16
 153/23 164/9 165/22

169/24 179/1 179/4 179/16
 183/19 187/20 190/16
 191/18 191/22
issue [16]  123/17 123/23
 131/10 166/8 181/4 181/16
 182/7 183/2 183/4 198/3
 219/22 222/6 222/9 222/13
 236/4 236/5
issues [10]  123/15 131/12
 134/10 143/13 150/3 156/4
 156/6 162/12 163/12
 218/17
it [241]
it's [49]  120/15 120/16
 120/20 120/20 120/22
 121/5 122/24 123/5 125/23
 134/17 137/17 137/19
 138/12 141/8 141/10
 145/10 148/24 149/3
 152/14 170/7 170/9 175/11
 175/16 175/16 175/17
 183/7 183/9 183/11 183/15
 183/16 185/16 187/24
 197/20 201/24 216/3 216/7
 219/22 221/10 222/4 222/7
 222/19 222/20 222/20
 223/1 223/9 226/24 231/13
 231/16 236/10
item [1]  174/1
its [3]  120/18 149/5
 170/25
itself [3]  120/17 170/4
 195/14

**J**

Jackie [1]  202/11
Jemine [15]  126/14 126/21
 128/9 135/16 135/20 152/2
 157/22 158/1 166/23 188/2
 200/9 201/6 201/17 202/3
 209/25
Jimmy [3]  218/22 218/23
 219/18
job [17]  169/6 171/4
 173/15 176/16 176/25
 177/3 180/1 197/6 198/16
 198/20 204/7 204/9 212/3
 213/8 213/10 216/9 226/5
joint [29]  122/8 122/10
 122/19 122/25 144/23
 145/3 150/11 150/16
 152/13 152/15 157/3
 157/11 162/16 166/4
 167/11 168/18 183/11
 185/22 185/23 205/24
 208/19 208/21 218/19
 228/1 229/6 232/24 233/13
 235/17 235/18
JUDGE [3]  118/10 121/8
 154/4
judgment [1]  200/3
July [12]  118/5 126/9
 128/19 129/1 133/2 142/25
 144/13 144/15 148/20
 178/1 229/23 237/12
jumping [1]  210/21
June [4]  128/11 128/19
 168/22 216/14
jurors [1]  235/22
jury [55]  118/9 122/11
 124/9 125/6 125/21 127/15

**J**

jury... [49]   128/25
129/19 130/5 134/2 134/23
137/10 138/9 138/19 141/5
142/18 145/21 148/9
148/17 148/22 152/25
154/11 156/4 157/18
157/22 158/9 159/15
160/18 170/13 170/23
171/20 172/4 173/13
173/18 173/19 175/3 176/4
178/17 182/10 182/13
184/5 186/19 189/12 190/1
193/2 193/11 195/20 196/8
196/21 197/18 198/4
199/18 207/10 224/3 235/6
just [58]   122/10 122/13
123/5 124/16 140/3 140/4
140/7 143/12 145/10
148/10 151/17 152/17
154/1 154/4 157/7 157/22
158/9 159/17 163/9 171/4
172/3 175/17 180/8 181/1
181/9 181/21 182/25
184/10 185/13 186/19
187/3 195/15 195/18 198/4
203/21 205/23 207/1
207/10 208/11 208/24
209/5 215/25 216/9 219/20
220/19 220/20 221/9 223/7
223/11 224/9 225/13 228/8
229/19 231/6 233/8 235/20
235/21 236/10

**K**

keep [2]   172/8 206/13
keeping [1]   153/3
Keith [5]   119/4 124/14
124/19 125/7 183/24
kept [1]   172/13
Kessler [1]   121/9
Kevin [1]   229/24
kind [4]   130/6 161/15
172/9 215/2
kinds [1]   155/22
knew [14]   142/15 153/18
154/6 156/5 156/6 190/24
191/16 191/24 194/22
196/9 196/22 199/2 199/24
204/20
know [71]   126/21 127/13
127/20 128/6 128/8 129/5
129/7 129/12 132/13
133/12 135/1 135/12
135/14 140/19 142/4 142/9
142/20 142/24 144/6 145/8
145/9 145/14 147/17
147/22 150/9 151/16
151/23 156/24 162/6
163/16 164/5 164/20 169/1
169/3 169/5 169/9 169/11
169/14 169/17 169/20
171/22 173/22 174/3 174/6
176/4 176/5 177/12 179/7
179/12 179/14 183/19
185/16 188/5 190/6 191/20
191/23 197/23 198/9
200/19 201/11 204/23
205/4 205/4 205/11 207/15
207/18 212/20 219/2 223/2

knowledge [7]   133/17
133/19 133/22 134/2
155/13 176/13 191/25
knowledgeable [2]   131/14
133/12
knows [1]   207/13

**L**

labor [7]   146/7 158/2
172/18 189/9 190/9 190/10
200/12
lack [1]   234/15
ladies [8]   124/10 148/7
152/5 166/16 181/7 200/18
226/17 234/24
laid [1]   201/14
language [2]   130/6 189/11
large [1]   225/13
last [16]   121/14 121/14
121/19 152/25 153/5 153/5
156/18 165/15 165/23
192/2 208/23 209/2 209/15
220/11 229/25 231/22
lastly [1]   189/1
later [6]   123/4 144/12
205/2 225/25 227/16 233/8
Lauren [1]   236/2
law [2]   118/16 222/15
lawyer [1]   120/17
lawyers [4]   172/15 172/16
172/16 172/20
lay [4]   123/11 123/22
124/1 130/6
lead [2]   141/16 214/12
leading [1]   215/17
learn [5]   142/6 142/10
142/12 142/13 165/8
learned [2]   145/19 213/12
learns [1]   137/24
least [4]   121/21 153/12
177/15 194/23
leave [4]   181/2 214/25
215/24 221/4
leaves [2]   220/24 221/6
led [2]   167/4 179/7
left [2]   183/14 203/5
less [1]   227/9
lessen [1]   175/14
lesser [3]   158/23 175/11
232/2
let [22]   137/2 137/22
149/16 157/3 162/15 172/3
175/23 176/24 181/8
185/20 186/24 187/6
188/15 191/5 195/3 195/23
197/4 212/20 219/2 223/3
224/2 233/13
Let's [4]   201/23 211/15
222/6 228/1
letter [7]   120/13 120/18
141/14 159/19 159/20
190/10 232/12
level [10]   141/10 141/12
142/1 164/18 173/15 194/9
194/13 194/16 195/5
208/12
levels [1]   155/1
Lewis [9]   126/21 146/3
146/5 146/6 188/7 188/9
200/6 200/8 202/24

knowledge [7]   133/17
light [1]   183/4
like [35]   120/12 122/1
123/19 124/14 126/9
130/19 131/3 143/9 152/13
154/21 155/23 156/18
168/7 168/17 170/2 171/19
175/7 175/18 175/19
179/23 181/1 184/9 184/15
194/14 203/23 205/24
208/24 209/1 210/3 211/18
211/19 215/17 215/21
218/12 231/3
likelihood [1]   183/1
likely [1]   190/3
limited [2]   171/11 198/11
limiting [2]   181/3 235/22
line [3]   121/23 231/17
236/5
lines [1]   236/1
list [5]   183/13 186/5
213/8 219/18 235/25
listing [1]   168/8
literally [1]   153/22
little [5]   122/24 127/9
137/2 175/22 226/19
Local [1]   157/16
located [1]   136/15
location [2]   214/24
215/24
locations [1]   135/8
lodged [1]   182/4
lodging [1]   224/10
long [13]   125/19 126/15
172/1 191/5 200/19 205/11
205/19 205/20 227/7
231/12 231/13 231/16
235/25
longer [2]   180/5 225/24
look [38]   140/3 140/4
144/17 150/12 152/17
152/17 153/24 156/18
158/19 158/20 159/25
160/1 165/5 165/8 167/5
171/8 174/6 175/6 175/8
175/11 178/22 195/10
197/16 205/24 206/13
208/18 208/21 212/19
212/20 218/19 218/22
220/10 224/24 228/1 229/6
230/19 231/2 231/6
looked [9]   159/6 190/7
192/23 193/8 203/23
205/24 206/1 206/11 227/4
looking [9]   165/4 187/14
192/25 206/13 209/16
230/9 230/25 232/18
233/21
looks [2]   206/16 209/1
lost [1]   234/17
lot [4]   155/19 173/5
182/18 190/15
lunch [1]   124/11
lying [1]   153/2

**M**

made [19]   130/1 135/20
138/15 161/6 164/16
173/22 176/6 177/19 182/2
182/16 187/18 187/19
194/8 194/11 204/10

230/17 231/6   155/13 155/21 155/25
matters [1]   204/7   183/6 197/24 198/23
made... [4]   204/21 205/7   may [34]   126/9 139/21   227/16
 218/9 235/8    140/1 140/2 141/12 143/14   mind [1]   194/25
mail [28]   150/22 185/17    144/18 144/21 144/22   minimally [1]   193/14
 185/17 186/11 186/11    145/2 147/24 149/3 159/2   minor [2]   122/5 235/16
 186/13 186/13 190/8 206/3    163/21 166/5 166/14   minus [1]   175/19
 206/3 206/7 208/5 208/17    166/15 167/6 175/5 175/13   minute [3]   130/19 180/22
 208/23 208/25 209/6 209/6    181/17 182/14 186/1 186/2    181/8
 209/12 209/16 209/17    195/12 200/20 200/22   minutes [7]   148/2 148/4
 212/7 215/16 220/6 220/8    201/11 205/3 214/22    148/10 178/13 182/9
 220/14 220/18 220/25    215/19 219/11 221/24    227/10 227/12
 223/3    227/10   mirrored [1]   176/15
mailbox [1]   206/17   maybe [2]   195/14 233/19   mischaracterizes [2]
mails [10]   194/23 194/23   me [68]   121/13 122/9    176/20 199/9
 200/14 200/14 206/5    123/16 131/18 135/5 137/2   misconduct [4]   141/9
 208/10 215/9 221/3 221/7    137/22 139/21 143/13    155/17 159/23 232/13
 229/25    144/14 145/4 145/9 145/12   missed [1]   147/1
main [1]   129/16    149/16 153/3 154/1 154/1   missing [2]   183/2 221/17
make [31]   122/14 123/16    154/8 157/3 157/4 159/7   mitigating [11]   158/22
 123/25 124/1 136/2 136/6    162/1 162/15 162/16 172/3    171/25 175/14 175/17
 137/22 150/8 161/12 162/1    172/10 173/12 175/3    175/18 188/21 197/5
 166/16 172/3 173/11    175/23 176/9 176/24 178/6    197/25 198/3 232/22
 173/24 174/3 174/12    180/7 181/8 184/10 184/10    234/11
 174/16 174/19 174/23    185/20 186/24 187/6   modification [5]   130/22
 177/21 178/1 181/9 181/13    187/16 188/15 190/11    130/25 131/1 131/8 209/24
 198/11 200/3 203/21    191/5 192/18 192/21 193/3   modifications [1]   132/23
 208/24 225/19 228/8    195/3 195/23 197/4 197/23   moments [1]   225/25
 228/16 235/22    207/19 208/3 212/20 213/4   Monday [1]   118/5
maker [1]   227/23    214/22 215/9 215/17   months [2]   154/24 177/4
makes [1]   235/10    216/19 219/2 219/22 220/2   more [18]   130/10 137/2
making [5]   161/15 170/17    223/3 228/14 230/1 230/10    144/3 144/5 148/2 151/18
 170/17 174/15 184/19    231/17 233/13 237/4    176/8 180/13 180/25 198/7
malice [1]   197/8   mean [6]   130/5 130/21    212/2 212/8 216/18 225/19
malicious [2]   173/21    135/1 184/21 189/18    225/25 229/18 231/21
 234/1    192/23   232/5
maliciously [1]   171/3   means [6]   121/3 130/7   morning [9]   182/1 219/24
man [2]   179/25 182/18    138/7 163/13 175/3 181/22    226/8 226/20 233/19 235/2
manage [1]   168/20   meant [1]   143/9    235/5 235/11 236/14
managed [1]   155/17   mechanical [1]   118/24   most [8]   121/8 166/18
management [5]   130/18   medical [1]   198/1    190/3 192/3 192/6 193/13
 150/8 158/17 196/21   meet [4]   121/2 130/11    221/23 233/12
 218/10    218/6 218/9   motion [1]   183/3
manager [11]   128/20   meeting [8]   183/12 208/5   motive [1]   150/9
 128/22 137/24 137/25    208/6 208/16 213/21 214/1   move [6]   170/7 193/23
 140/22 144/8 155/9 170/16    218/2 225/14    210/20 219/6 219/7 225/6
 179/18 209/13 216/5   meetings [9]   208/17   moved [2]   150/11 193/25
managers [9]   136/11    213/13 213/15 213/16   moving [2]   209/15 225/14
 138/15 149/1 154/9 169/20    214/5 217/22 217/24   Mr [9]   119/5 119/6 123/7
 209/9 214/21 220/23 221/1    217/25 218/4    176/18 176/20 177/11
managing [1]   222/25   member [1]   218/10    183/16 183/25 235/7
mandatory [1]   138/12   memo [1]   166/4   Mr. [61]   120/10 121/13
manner [7]   130/7 131/24   memorialize [2]   151/22    122/9 124/12 124/14
 132/9 136/4 194/20 206/9    185/2    124/20 124/23 125/1 125/8
 225/20   memorializing [1]   151/24    127/24 128/4 148/18 154/3
many [14]   142/25 143/1   memory [1]   144/18    162/3 165/23 168/19 171/4
 143/2 144/7 149/3 153/9   mental [1]   197/7    177/19 177/22 177/25
 153/13 153/13 163/11   mention [1]   159/3    178/6 178/17 178/24 180/8
 188/23 208/4 217/7 217/15   mentioned [5]   134/23    181/24 185/22 187/12
 220/22    159/17 184/5 227/22 232/9    189/20 190/14 194/22
March [5]   149/24 150/20   mentioning [1]   231/7    195/19 196/20 201/4 202/3
 152/15 154/23 160/23   merits [1]   199/6    206/15 207/9 207/16
mark [1]   191/13   message [1]   163/6    207/16 212/18 222/12
marked [5]   119/13 170/6   met [1]   125/3    223/14 223/23 224/2 224/4
 208/19 218/19 224/24   mic [2]   145/1 154/3    224/9 224/15 224/18
material [2]   134/18   microscope [1]   130/19    224/18 225/7 226/9 226/20
 232/14   middle [3]   193/12 219/21    226/23 226/25 226/25
materials [3]   228/8    225/15    230/3 230/5 230/24 231/23
 228/15 233/4   midyear [1]   149/8    232/3 233/24 235/20
matter [7]   122/5 138/16   might [15]   122/13 123/20   Mr. Blocker [13]   165/23
 197/9 212/19 225/17    139/25 141/15 154/17

Mr. Blocker... [12]
 168/19 177/19 177/22
 177/25 178/6 178/17
 187/12 206/15 230/3 230/5
 230/24 231/23
Mr. Blocker's [1]   232/3
Mr. Christie [1]   207/16
Mr. Fairbanks [6]   224/4
 224/15 224/16 224/18
 226/9 226/23
Mr. Keith [1]   124/14
Mr. Serpber [1]   181/24
Mr. Surber [21]   120/10
 124/20 125/1 125/8 162/3
 171/4 178/24 180/8 189/20
 190/14 194/22 196/20
 201/4 202/3 212/18 222/12
 223/23 224/2 224/9 226/25
 226/25
Mr. Surber's [1]   235/20
Mr. Temple [11]   121/13
 122/9 124/12 124/23
 148/18 154/3 185/22
 195/19 207/9 223/14
 233/24
Mr. Temple's [2]   225/7
 226/20
Mr. Varnado [1]   207/16
Mr. Williamson [2]   127/24
 128/4
Mrs. [4]   132/14 134/25
 157/15 200/10
Mrs. Burton [4]   132/14
 134/25 157/15 200/10
Ms [16]   121/23 136/10
 164/4 173/1 176/25 178/18
 178/19 178/25 198/18
 206/15 209/12 211/7 217/4
 222/15 229/15 231/10
Ms. [255]
Ms. Austin [1]   207/18
Ms. Brown [1]   122/20
Ms. Bryon [28]   126/15
 132/17 146/20 146/20
 152/14 153/25 157/15
 166/5 201/8 202/12 202/22
 203/10 206/3 206/4 206/7
 206/23 207/1 208/6 209/2
 210/10 210/11 210/16
 211/6 211/11 214/4 218/2
 231/11 231/19
Ms. Bryon's [1]   230/18
Ms. Burton [126]
Ms. Burton's [26]   156/9
 157/23 165/8 166/24
 168/23 172/16 173/20
 175/25 177/2 182/8 184/6
 194/3 195/15 196/22
 199/16 200/3 201/17 204/1
 205/23 207/1 207/4 208/7
 216/25 221/13 228/19
 233/25
Ms. Harris [2]   202/14
 203/4
Ms. Houston [7]   121/7
 121/25 164/8 165/1 181/1
 182/2 182/4
Ms. Houston's [4]   164/17
 181/4 182/7 226/21

Ms. Stowe [54]   122/20
 123/11 128/9 128/13
 135/19 135/23 143/9
 144/13 144/20 145/6
 145/21 149/17 150/3
 150/25 151/5 154/15
 154/16 163/18 163/25
 164/14 165/1 165/18
 165/22 165/25 167/9
 168/20 174/14 174/17
 178/25 179/4 182/4 188/11
 188/12 195/12 198/24
 199/1 201/17 206/15
 216/14 217/1 217/11
 217/13 217/20 217/22
 219/3 219/6 219/18 225/15
 225/16 225/17 225/22
 226/3 230/7 230/25
Ms. Stowe's [4]   146/8
 177/25 199/20 203/19
much [7]   134/17 134/20
 180/5 194/17 195/13
 216/18 234/25
multiple [4]   178/21
 179/22 222/1 229/9
must [2]   177/14 201/24
mutual [1]   234/10
my [30]   126/16 131/7
 132/11 134/5 135/1 135/6
 137/19 143/3 143/14
 144/11 144/18 151/23
 152/4 153/4 155/13 161/8
 161/16 162/6 172/12
 179/24 183/8 184/18 185/6
 193/17 202/6 216/19
 217/16 218/23 231/17
 237/3
myself [2]   135/4 205/2

N
name [12]   125/5 126/14
 127/13 129/5 135/12
 163/23 189/2 189/5 189/13
 205/18 205/19 207/19
named [2]   161/4 224/14
names [3]   134/24 206/16
 236/2
narrative [8]   184/11
 184/16 184/16 187/6
 188/16 189/11 223/24
 234/3
nasty [1]   210/24
national [1]   137/12
nature [3]   135/25 170/24
 233/23
nearly [1]   156/24
necessarily [5]   136/9
 145/9 164/6 185/16 185/18
necessary [2]   131/8 162/1
need [6]   132/21 148/2
 198/4 205/2 216/1 232/1
needed [7]   136/14 143/16
 144/12 145/25 190/11
 208/3 211/9
needs [2]   163/1 163/12
negative [2]   221/4 221/8
negotiation [1]   127/25
neither [3]   175/16 232/23
 237/7
nervous [2]   123/16 154/4

neutral [1]   124/16
never [6]   173/10 182/19
 204/4 204/5 204/9 210/9
new [1]   227/4
next [4]   210/11 220/20
 231/8 231/15
nice [1]   124/11
nine [2]   186/9 186/16
no [76]   119/15 119/16
 120/17 124/4 127/1 138/1
 140/7 144/10 146/15
 146/23 151/21 156/23
 157/13 162/14 164/15
 165/2 165/12 167/2 167/10
 168/25 169/2 169/4 169/7
 169/10 169/16 169/19
 169/22 170/8 170/10
 175/21 177/24 179/20
 180/2 181/5 186/11 188/5
 191/4 191/19 191/21
 191/25 192/13 193/21
 193/24 194/1 194/7 195/2
 195/16 196/5 196/6 196/19
 197/3 199/22 200/16 204/8
 204/24 205/8 205/10
 205/16 210/19 211/4
 211/10 211/13 211/17
 213/20 216/12 219/14
 219/16 220/7 221/15 222/4
 223/25 225/10 225/23
 228/13 229/5 230/17
non [2]   121/21 222/20
none [4]   132/15 132/15
 132/18 132/20
Norma [4]   135/6 209/17
 209/22 209/23
normally [1]   157/2
not [190]
not directly [1]   224/22
note [2]   165/12 165/16
notes [6]   144/6 144/8
 168/17 183/8 183/17 237/4
nothing [2]   215/18 215/19
notice [3]   157/21 158/14
 159/17
notification [1]   184/20
notion [1]   164/8
notwithstanding [1]
 121/23 136/13 154/5
now [19]   126/21 128/18
 132/25 138/5 142/25
 150/14 154/24 154/25
 159/8 159/15 160/11
 170/20 171/11 183/18
 183/20 184/21 186/9
 186/19 212/2
number [46]   120/21 131/16
 144/1 144/3 145/3 145/7
 145/23 156/16 158/19
 162/23 170/23 170/24
 171/5 171/19 173/8 173/13
 173/15 174/1 174/2 174/3
 174/12 174/19 176/1
 178/12 183/10 184/11
 191/7 191/9 195/1 195/3
 195/17 195/17 195/17
 195/17 195/18 195/18
 195/23 197/4 197/5 197/12
 197/14 198/15 198/15
 216/5 223/5 223/6
numbers [1]   123/1

**N**

NW [4]  118/14 118/16
 118/19 118/22

**O**

oath [2]  161/19 181/14
object [1]  123/7
objection [21]  123/8
 124/1 150/17 170/7 170/8
 176/18 176/19 177/11
 181/5 193/23 193/24 199/7
 199/9 201/9 214/7 217/5
 217/12 221/24 223/21
 224/1 225/7
objections [2]  120/16
 222/1
objective [5]  160/16
 160/24 161/7 161/12
 173/11
objectively [1]  173/8
obligation [2]  137/13
 137/19
observation [1]  194/11
observations [1]  182/17
observe [4]  208/15 214/16
 215/7 216/25
observed [6]  214/18 215/4
 217/4 217/10 217/15
 217/21
obtain [1]  136/9
obviously [3]  142/21
 153/10 219/22
occasion [2]  145/23 213/5
occasionally [1]  129/23
occasions [3]  125/3
 145/23 208/17
occurred [12]  144/18
 151/16 158/17 165/17
 165/17 165/19 165/22
 175/9 178/10 192/2 196/24
 210/9
occurrence [1]  137/17
OCPO [8]  125/22 125/24
 126/1 129/15 130/16
 169/17 201/8 206/17
October [3]  126/5 126/16
 127/23
off [10]  146/14 183/14
 183/14 206/24 207/2 213/8
 215/3 225/24 231/17 235/8
offended [1]  211/7
offense [7]  141/10 141/14
 170/25 171/1 195/4 197/6
 233/23
offenses [2]  141/12 234/6
offered [6]  120/22 121/17
 222/20 226/22 226/24
 228/19
office [46]  118/19 125/18
 125/20 125/21 125/22
 127/16 128/10 129/8
 129/13 129/21 129/23
 130/4 130/9 132/21 134/11
 135/1 135/2 135/6 136/6
 137/14 138/1 138/9 138/24
 146/17 149/21 162/8 163/1
 163/19 169/14 169/17
 169/17 169/21 176/11
 176/15 178/15 183/12
 190/12 204/16 204/18

oath [2]  211/25 213/16
 213/23 219/2 224/16
 225/15
officer [17]  125/18
 126/12 126/20 127/7
 127/17 127/18 128/10
 129/17 135/15 146/3 161/9
 201/5 202/7 202/8 202/18
 204/4 208/13
offices [1]  138/5
official [18]  157/23
 157/25 158/7 158/12
 158/20 159/4 160/9 160/11
 160/20 161/1 161/21
 164/23 171/5 175/15
 190/18 198/6 233/2 233/3
official's [2]  158/10
 159/22
officials [2]  186/6 218/6
often [2]  181/16 194/11
oh [2]  153/9 187/9
OIG [4]  136/4 178/15
 209/3 209/8
okay [36]  120/22 122/4
 140/8 148/6 152/11 157/8
 170/6 172/3 172/8 175/23
 176/24 180/23 182/8
 183/22 185/2 186/15 198/3
 203/2 204/3 205/17 207/6
 208/18 209/15 211/11
 223/20 224/5 224/24 225/7
 227/1 227/17 229/10
 231/19 233/21 234/24
 236/8 236/13
oldest [1]  193/12
once [1]  161/20
one [65]  120/8 122/5
 122/17 122/17 122/22
 123/17 127/19 129/2 135/5
 145/23 146/2 147/24
 151/17 151/17 153/9
 153/25 159/21 165/23
 168/2 168/3 170/23 170/24
 171/5 171/19 171/24 172/5
 172/11 173/8 174/2 174/3
 174/11 176/13 177/9 179/9
 179/11 180/25 181/17
 182/19 184/12 185/6
 186/19 186/23 187/4
 192/13 193/12 196/21
 198/7 209/7 209/18 210/2
 213/5 218/23 221/23 222/1
 226/18 228/4 229/8 230/22
 230/23 231/21 232/23
 233/13 233/19 233/21
 234/23
ones [1]  159/17
only [6]  161/2 165/21
 177/3 177/23 199/3 209/24
oOo [1]  236/16
OPCO [1]  130/12
open [12]  122/11 143/7
 143/9 143/12 143/15
 145/11 181/6 183/23 202/1
 221/13 224/7 227/18
opened [1]  163/21
opening [2]  163/7 163/10
operation [5]  131/7
 131/17 134/5 135/4 216/20
operations [4]  130/12
 209/9 209/13 224/21

opinion [4]  214/24 215/1
 215/3 215/5
opportunity [7]  122/14
 138/7 140/24 161/25
 197/21 215/10 218/16
opposite [2]  175/21
 182/24
options [1]  211/22
order [10]  122/15 131/8
 132/22 134/6 146/1 197/23
 198/7 227/24 228/16
 232/15
organization [3]  168/5
 202/4 208/12
organizational [1]  203/23
origin [1]  137/12
original [1]  183/13
other [20]  122/5 131/12
 147/24 158/15 159/2 163/3
 163/13 169/20 175/15
 176/11 179/24 181/18
 206/5 207/9 218/5 219/7
 221/20 222/16 227/1
 232/23
others [5]  143/10 150/3
 197/8 206/23 210/6
otherwise [2]  150/17
 237/10
our [17]  120/15 123/22
 129/22 130/4 146/3 146/6
 146/6 157/6 157/8 168/5
 180/10 180/20 180/22
 181/8 190/12 208/12 226/8
out [36]  131/16 131/17
 131/24 132/9 132/22
 132/24 134/6 134/8 135/9
 136/4 136/10 138/17
 138/19 139/1 153/13 161/3
 166/16 172/13 179/6
 179/19 197/22 198/2
 201/24 204/25 205/7 209/8
 209/10 209/24 210/24
 221/5 221/23 227/16 230/1
 233/20 235/9 236/6
outcome [1]  237/10
outs [2]  131/22 132/4
outside [5]  135/21 168/5
 180/17 198/11 207/10
over [11]  123/4 126/7
 127/9 133/4 133/9 136/8
 154/24 191/16 191/24
 202/20 203/2
overruled [3]  177/12
 214/8 217/6
owe [1]  220/13
own [4]  155/2 155/13
 177/6 232/6
OWUSU [1]  118/15

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
 120/1
P.C [1]  118/13
p.m [7]  118/6 148/14
 148/15 182/11 182/12
 235/6 236/15
package [4]  190/13 228/5
 228/9 228/14
page [34]  121/15 121/20
 150/23 156/18 156/20
 166/11 166/20 183/16
 186/19 186/20 186/22

**P** Case 1:12-cv-01537-CRC

**page...** [23]  186/23
 186/25 187/1 187/22
 188/15 189/1 209/2 209/15
 209/17 210/2 210/20
 212/20 220/10 221/16
 229/19 229/21 229/25
 231/8 231/8 231/15 231/15
 234/14 234/19
**pages** [5]  140/7 186/9
 186/16 188/19 237/3
**paper** [1]  134/10
**papers** [1]  134/14
**paragraph** [12]  121/20
 121/23 187/4 188/20 189/4
 220/11 220/20 221/10
 225/13 231/13 231/16
 233/1
**paragraphs** [1]  233/8
**part** [19]  121/8 134/4
 137/9 147/1 165/5 166/18
 168/2 172/23 185/25 187/7
 189/8 196/5 197/8 198/23
 205/3 213/22 228/4 228/9
 228/15
**participate** [1]  135/19
**participated** [1]  200/8
**particular** [25]  126/10
 128/18 130/12 132/12
 139/13 152/19 154/10
 156/3 162/3 171/5 172/6
 172/14 176/5 177/18
 181/20 184/12 188/17
 189/20 190/21 196/16
 199/2 199/24 213/21
 222/23 223/2
**parties** [7]  181/12 206/5
 206/9 206/12 207/10
 234/23 237/8
**party** [2]  222/4 223/2
**pass** [1]  159/24
**past** [7]  158/18 165/5
 165/8 191/13 191/22
 191/25 228/24
**patience** [1]  234/25
**pattern** [3]  234/7 234/13
 234/15
**Pause** [7]  120/9 122/23
 124/8 150/15 158/5 167/15
 223/10
**PDF** [1]  185/19
**peculiar** [1]  165/3
**penalty** [7]  158/23 175/10
 175/14 186/5 186/5 189/15
 232/22
**pending** [1]  199/25
**people** [19]  131/17 134/23
 134/24 135/21 139/2
 142/25 143/2 143/4 143/9
 144/11 162/23 176/11
 196/24 206/23 207/2 207/3
 209/18 221/4 221/11
**per** [1]  170/4
**percent** [2]  156/25 156/25
**perfectly** [1]  148/3
**perform** [8]  129/16 129/22
 131/1 195/5 195/7 196/14
 215/23 232/6
**performance** [38]  133/1
 133/6 133/10 133/22

 133/24 141/9 148/4 151/17
 156/4 156/10 156/11
 158/17 158/18 159/24
 160/4 165/12 170/19 175/7
 176/6 177/14 178/1 178/5
 191/17 192/1 192/7 192/19
 192/24 193/5 193/6 193/8
 194/3 194/3 194/9 194/13
 194/16 222/3 228/24
 228/25
**performed** [2]  130/3 130/8
**performing** [3]  132/7
 133/13 133/15
**perhaps** [1]  120/19
**period** [5]  165/13 178/10
 193/6 217/12 217/20
**periods** [2]  129/21 192/22
**permanent** [2]  127/10
 127/10
**Permission** [1]  225/11
**permitted** [2]  215/25
 216/11
**person** [4]  132/1 154/21
 216/23 220/24
**person's** [1]  130/6
**personal** [1]  176/13
**personality** [3]  197/7
 198/22 198/23
**personnel** [1]  223/1
**perspective** [1]  134/11
**pertinent** [8]  159/8
 162/12 164/1 174/12
 175/25 178/12 178/17
 185/25
**phone** [1]  236/4
**phones** [1]  236/3
**physical** [2]  152/8 179/20
**physically** [4]  167/9
 174/13 179/1 179/5
**pick** [1]  233/19
**pieces** [1]  160/25
**PILGRIM** [2]  118/21 237/12
**place** [7]  142/22 151/19
 160/24 172/11 209/14
 218/11 218/14
**places** [1]  121/10
**plaintiff** [11]  118/4
 118/13 119/3 119/14
 120/19 120/23 124/14
 124/19 170/6 170/7 170/10
**plaintiff's** [17]  144/24
 156/15 162/15 162/16
 166/1 170/2 191/12 193/19
 194/1 205/5 206/1 206/11
 206/23 206/24 228/7
 229/13 229/14
**plaintiffs** [3]  121/12
 121/21 193/23
**plans** [1]  235/8
**pleas** [2]  153/21 153/22
**please** [67]  124/12 124/14
 124/23 125/5 125/21
 125/25 126/13 127/15
 128/25 129/1 129/19 134/3
 134/16 134/24 136/17
 138/9 140/4 141/5 145/2
 148/18 148/22 150/12
 152/14 152/18 152/25
 153/1 153/5 153/8 154/11
 156/15 156/19 157/3 157/4
 157/11 158/9 159/15

 162/15 166/21 167/11
 170/2 170/13 170/23
 173/13 173/19 175/4 176/4
 178/17 180/8 185/20
 189/11 190/1 191/6 192/5
 193/11 195/3 196/8 196/21
 197/4 197/5 206/10 208/19
 209/23 212/23 218/20
 224/25 235/3 235/11
**PLLC** [1]  118/16
**plus** [1]  175/18
**point** [30]  123/22 126/10
 127/17 127/19 128/18
 142/13 142/19 149/13
 154/23 156/3 162/3 163/3
 163/6 163/8 163/9 167/18
 168/19 168/24 175/20
 176/5 195/12 196/10
 196/16 196/20 199/2
 199/24 217/17 221/17
 225/24 229/2
**pointing** [1]  221/5
**police** [1]  179/5
**policies** [13]  128/22
 136/20 136/22 136/25
 137/3 137/6 137/9 137/16
 137/23 140/17 177/6 177/8
 184/18
**policy** [15]  128/10 129/8
 135/16 140/18 143/7 143/9
 143/13 143/18 145/11
 148/20 148/23 163/1
 165/20 202/8 224/16
**poor** [1]  155/17
**portion** [4]  206/13 208/23
 225/16 233/9
**portions** [1]  152/10
**position** [16]  126/10
 126/19 126/24 136/6
 146/13 154/18 170/25
 173/17 174/24 176/3
 176/10 203/7 203/9 203/14
 225/17 233/10
**possession** [2]  171/15
 198/12
**possibility** [1]  146/10
**possible** [2]  155/9 201/23
**post** [1]  134/22
**posted** [1]  137/16
**potential** [2]  139/10
 195/23
**potentially** [5]  130/23
 135/10 137/11 155/11
 217/17
**pour** [1]  124/20
**practice** [6]  121/24
 140/18 144/8 185/9 215/11
 215/11
**practices** [1]  137/24
**pre** [1]  134/21
**precisely** [1]  192/17
**predate** [1]  132/11
**preference** [1]  137/12
**premarked** [1]  150/10
**prepare** [1]  139/2
**prepared** [3]  174/7 187/6
 197/12
**preparing** [2]  188/8
 188/10
**present** [3]  124/9 148/17
 182/13

presently [2]   125/8
 125/16
presumably [1]   185/11
previous [8]   158/16
 158/25 159/1 159/18
 159/21 159/22 204/20
 228/25
previously [5]   154/7
 170/15 173/9 204/25 237/6
pricing [1]   134/20
primarily [2]   143/23
 155/15
primary [1]   154/6
principle [4]   171/5
 173/20 195/1 195/3
principles [4]   160/7
 173/1 180/12 184/22
print [5]   189/2 189/5
 189/13 190/5 209/24
printed [2]   172/13 190/15
prior [23]   121/18 125/3
 131/21 131/21 133/6
 135/16 153/21 157/8 164/2
 165/15 181/10 181/11
 181/15 181/18 188/2 189/8
 209/8 211/8 220/22 228/21
 232/9 232/11 234/7
Priscilla [9]   146/3 146/5
 146/6 188/7 188/9 200/6
 200/8 200/11 202/24
private [1]   175/13
privy [1]   156/9
probably [2]   143/2 234/18
probed [1]   183/5
problem [5]   124/4 195/13
 195/14 195/14 198/23
problems [9]   144/14
 144/16 145/20 149/16
 165/12 191/18 197/7 198/1
 198/22
procedures [10]   128/23
 136/20 137/3 137/7 137/9
 137/16 177/6 177/8 184/17
 184/18
proceed [4]   124/23 148/18
 227/2 227/19
proceedings [4]   118/24
 148/15 182/12 237/5
process [15]   135/21
 140/18 141/17 141/20
 141/22 148/25 149/4 149/7
 164/21 181/11 181/12
 188/7 190/6 190/21 200/9
processes [1]   137/15
procurement [18]   125/18
 125/22 126/2 126/12
 126/20 127/7 127/17
 127/18 128/10 134/18
 134/21 135/15 201/5 202/7
 202/8 202/17 204/4 208/13
produced [1]   118/25
professional [1]   129/10
professionally [1]   210/14
proffer [1]   124/1
proffered [1]   120/15
program [2]   155/22 156/1
progressive [3]   141/2
 141/5 141/7
prominence [1]   173/17

properly [2]   169/3 198/7
proposal [17]   157/21
 158/14 159/18 178/18
 178/19 203/24 227/8
 227/13 227/24 228/5
 228/16 229/4 230/2 232/2
 232/14 232/20 232/21
propose [1]   176/21
proposed [19]   157/20
 157/23 158/10 167/18
 173/2 176/24 177/2 187/7
 187/8 187/9 187/10 187/15
 187/17 189/15 194/20
 229/7 233/5 233/7 233/16
proposing [3]   170/17
 179/15 179/25
proprietary [1]   134/19
propriety [1]   168/6
protect [2]   145/15 150/7
Protection [1]   235/21
prove [1]   226/22
provide [10]   131/1 131/18
 161/25 172/14 172/20
 199/12 200/20 201/20
 209/9 229/24
provided [23]   131/9
 131/19 132/8 132/16
 132/19 132/21 136/3 159/7
 161/3 161/24 162/10 168/5
 172/10 172/18 172/23
 173/3 190/8 192/21 194/18
 196/4 199/5 209/11 237/4
provides [2]   148/25
 219/18
providing [3]   130/17
 132/4 132/6
provocation [1]   197/8
public [2]   173/17 221/1
publish [4]   150/17 166/14
 186/1 225/11
published [1]   150/13
purpose [7]   121/6 121/17
 222/13 222/17 226/18
 226/19 226/24
purposes [1]   131/11
pursuant [2]   139/17 142/7
pursue [1]   204/15
purview [1]   143/5
put [7]   130/19 142/21
 172/10 183/13 194/14
 195/19 235/25

Q

qualified [1]   177/7
question [17]   132/11
 132/13 133/14 143/19
 147/1 160/18 163/3 178/13
 179/24 193/17 206/2
 209/21 210/4 222/22
 224/11 232/5 233/25
questioned [1]   181/14
questions [2]   200/16
 219/3
quick [1]   148/8
quickly [1]   195/23
quite [1]   120/15
quote [2]   196/10 222/5
quote/unquote [1]   196/10

R

race [1]   137/12

raise [2]   124/17 183/1
raised [1]   183/2
rate [1]   232/15
rather [2]   121/20 221/16
rating [3]   193/12 193/13
 193/13
ratings [8]   156/25 159/24
 192/7 192/21 193/8 193/11
 228/24 228/25
reached [1]   153/13
read [25]   140/5 152/23
 152/25 153/15 153/17
 163/5 163/22 166/21
 170/23 173/13 189/11
 190/1 190/2 206/7 210/25
 218/25 219/20 220/20
 220/20 221/9 225/16 231/6
 233/1 233/9 234/3
reading [3]   121/20 140/4
 163/21
ready [4]   120/10 124/4
 223/11 235/2
real [1]   183/1
realize [1]   180/19
really [6]   130/7 132/11
 183/4 183/5 201/4 211/24
reask [1]   232/5
reason [5]   132/8 143/15
 154/20 190/4 210/24
reasons [1]   129/10
recall [49]   123/18 125/3
 126/10 129/2 136/16
 139/19 140/10 140/11
 140/14 142/23 146/2 151/2
 152/19 156/2 157/7 157/10
 159/15 163/5 163/9 163/21
 167/5 167/10 167/13
 168/13 168/16 172/23
 174/15 174/18 174/20
 178/16 179/3 186/6 188/9
 188/12 192/25 198/13
 200/13 212/5 213/1 214/3
 214/4 214/10 214/10 218/5
 224/9 224/10 228/5
 229/16 234/2
recalled [1]   172/1
recalling [1]   139/23
receipt [1]   166/23
receive [3]   222/14 223/24
 228/17
received [23]   119/13
 151/2 151/4 151/19 153/21
 154/10 160/4 162/8 170/9
 170/10 194/1 194/22
 221/19 222/12 222/18
 225/4 225/10 226/25 228/4
 228/8 228/9 232/2 232/6
receiver [2]   222/19
 222/23
receivers [2]   220/25
 221/6
receives [1]   222/16
receiving [2]   151/2
 152/19
recent [1]   192/6
recess [6]   148/4 148/8
 148/14 180/22 182/11
 236/13
recipient [1]   154/6
reciting [1]   224/4
recognize [7]   150/18

recognize... [6]  156/22
 157/12 162/17 170/3 225/2
 228/2
recollection [5]  140/9
 152/4 212/10 212/13
 212/21
recommendation [1]  178/9
recommendations [3]  130/1
 130/2 213/17
record [18]  120/3 120/7
 125/5 145/14 150/4 150/8
 153/13 162/25 166/21
 171/11 171/23 172/4
 176/20 186/9 191/14 196/1
 196/9 233/6
recorded [1]  118/24
records [2]  146/4 192/1
RECROSS [1]  119/2
redact [3]  121/12 121/14
 121/19
redacted [2]  121/25 122/2
REDIRECT [1]  119/2
refer [5]  125/22 151/23
 155/21 212/7 215/2
reference [2]  122/1 199/1
referenced [4]  144/19
 234/13 234/19 234/20
referencing [4]  223/18
 225/14 226/2 231/16
referred [6]  125/23
 129/17 170/14 170/15
 181/20 235/20
referring [7]  132/3 163/4
 183/22 186/7 196/12
 234/16 234/21
refers [1]  235/20
reflect [2]  198/19 226/11
refresh [5]  139/21 140/9
 144/17 212/9 212/13
refreshes [1]  212/21
refuse [1]  213/19
refused [3]  166/25 212/25
 217/22
refuses [1]  166/22
refusing [3]  213/1 213/13
 214/5
regard [1]  121/25
regarding [9]  137/24
 149/17 159/24 164/13
 165/14 167/4 181/10 182/1
 232/14
regardless [1]  121/3
regular [1]  134/8
regulations [3]  121/16
 136/23 137/1
rehabilitate [2]  196/3
 196/11
rehabilitation [2]  195/24
 196/12
reissue [1]  141/18
related [13]  141/9 144/10
 164/20 164/25 170/18
 174/1 174/2 174/3 178/24
 193/17 217/25 229/15
 237/7
relation [2]  170/25
 190/10
relations [6]  146/7 158/3
 172/18 189/10 190/9

relationship [7]  143/24
 144/2 145/21 165/24 176/2
 198/17 223/1
relative [1]  198/24
relax [1]  148/10
relevant [9]  120/20 121/9
 121/17 152/11 158/12
 158/15 189/16 192/3
 233/12
religion [1]  137/12
religious [1]  155/8
remain [1]  124/17
remedying [1]  136/7
remember [6]  128/12
 159/21 171/22 178/22
 200/6 213/6
remembering [1]  159/25
reminded [3]  122/13
 145/24 163/11
remorse [1]  234/15
remote [2]  214/24 215/3
removal [5]  141/16 158/23
 228/9 229/7 233/7
remove [11]  157/21 158/14
 159/18 203/24 227/9
 228/16 232/2 232/20
 232/21 233/9 233/10
removed [1]  194/21
repeat [1]  121/8
repeated [1]  171/3
repeatedly [1]  121/15
rephrase [3]  176/22
 187/16 199/12
replies [1]  209/4
reply [2]  209/21 210/21
report [12]  137/13 137/19
 138/1 139/2 139/5 139/6
 139/6 139/9 139/16 140/10
 146/17 203/9
reported [4]  137/10
 202/11 202/22 226/23
Reporter [1]  118/21
reporting [1]  165/24
represent [1]  170/12
representation [2]  161/25
 194/19
representative [3]  157/20
 218/14 218/15
reprimand [2]  159/20
 232/12
request [7]  131/15 131/15
 181/3 198/6 211/10 230/23
 235/21
requested [4]  131/17
 209/9 218/25 229/24
requesting [1]  231/1
required [14]  130/24
 132/16 140/23 149/7
 149/10 160/8 160/12 177/8
 184/17 185/14 185/16
 214/24 215/22 216/19
requirement [1]  211/10
requires [1]  216/9
requiring [1]  216/2
research [1]  235/4
resent [1]  193/13
reserved [1]  122/9
resolve [4]  130/16 130/18
 136/1 182/6
resources [2]  159/9 198/5

respect [3]  127/13 127/5 121/7
 226/20
respectfully [1]  221/12
respond [9]  140/24 197/21
 209/21 211/14 220/8
 221/16 223/12 230/23
 231/4
responded [5]  209/22
 211/24 231/2 231/10
 231/25
responds [2]  219/6 219/20
response [15]  157/19
 157/20 161/24 196/4
 197/22 198/22 207/1 207/4
 221/13 228/12 228/13
 228/17 228/19 231/23
 233/4
responses [1]  194/18
responsibilities [2]
 171/1 215/15
responsibility [10]
 129/16 132/12 133/2
 137/21 143/3 146/16
 175/12 197/1 213/22
 213/25
responsible [4]  126/1
 134/12 155/15 220/18
responsive [2]  136/3
 136/12
result [1]  155/10
resulted [1]  175/1
resumed [3]  148/15 182/12
 183/24
resumes [1]  148/16
retaliate [1]  155/18
retaliating [1]  121/21
retaliation [4]  164/13
 164/25 182/4 204/13
retaliatory [1]  122/4
returned [1]  225/25
review [3]  131/4 138/20
 232/10
reviewed [11]  157/14
 157/19 161/23 166/8 166/8
 190/13 228/15 228/21
 232/9 232/14 233/15
reviews [1]  158/12
rewind [1]  176/24
right [27]  122/12 124/18
 128/5 141/1 150/14 176/25
 177/5 185/11 185/15
 186/17 187/1 187/20
 187/22 187/25 188/24
 193/4 195/9 202/4 203/4
 203/8 203/19 207/25
 210/21 224/4 226/1 231/15
 232/4
rights [1]  140/19
ring [1]  207/19
ROI [2]  139/6 139/20
role [9]  130/3 133/4
 134/4 173/16 175/8 175/11
 175/12 200/5 201/20
roll [1]  214/22
Room [1]  118/23
roughly [1]  149/3
routinely [1]  168/5
RPR [2]  118/21 237/12
rudeness [1]  151/12
rules [1]  215/22
ruling [2]  121/11 121/18

R  Case 1:12-cv-01537-CRC

**R**

run [3]   123/18 161/10
 172/1
**Russell [1]   206/17**

**S**

said [26]   128/3 130/20
 131/21 133/23 147/2
 154/21 163/20 166/3 172/3
 179/1 183/3 183/15 185/8
 188/4 189/18 198/14
 209/23 213/10 220/16
 223/14 223/17 224/14
 226/3 226/4 228/21 234/1
sake [1]   219/20
same [9]   121/24 154/18
 161/19 169/23 174/4
 187/22 218/2 218/4 222/25
**SANDRA [7]   118/3 120/3**
 129/5 155/2 206/8 206/14
 209/20
Sandy [4]   139/13 142/6
 142/13 194/23
satisfaction [1]   130/11
satisfactory [1]   195/5
saved [1]   151/23
saw [4]   151/11 157/6
 164/21 198/19
say [23]   132/18 132/19
 133/14 144/10 155/25
 162/22 171/17 175/21
 176/9 180/19 184/10
 190/11 194/10 196/12
 198/2 201/24 205/18
 216/21 216/22 220/1
 222/16 223/17 234/14
saying [2]   144/13 144/15
says [23]   123/15 153/2
 166/22 186/4 188/21 189/2
 189/13 199/2 206/17 210/4
 210/13 210/21 218/25
 219/18 219/19 219/21
 225/14 226/7 229/23
 229/23 229/25 230/9
 231/16
scale [1]   155/12
scanned [1]   185/18
school [1]   175/2
scope [2]   121/11 121/17
score [1]   195/8
Scott [3]   218/22 218/23
 219/18
screen [1]   195/20
scrub [1]   122/14
se [1]   170/4
search [1]   131/4
searched [1]   136/14
second [12]   120/8 121/20
 122/22 141/15 150/22
 168/3 181/23 220/10
 229/21 230/19 233/1
 235/24
secondly [1]   210/14
secretary [9]   128/25
 162/24 163/15 163/17
 164/12 164/17 169/9
 169/11 169/13
sector [1]   175/13
security [3]   179/20 236/5
 236/7

seeing [1]   212/12
seem [3]   162/24 189/3
 210/23
seen [9]   123/21 139/20
 140/10 157/5 164/19
 167/12 190/15 193/20
 223/18
segment [1]   187/3
selected [1]   227/23
selection [1]   135/17
seminating [1]   231/11
send [3]   146/19 155/25
 221/3
sending [4]   230/1 231/24
 234/22 234/23
senior [3]   136/18 136/19
 208/13
sense [1]   155/18
sensitive [8]   134/10
 134/14 134/16 134/17
 134/18 134/19 134/21
 168/6
sensitivity [1]   168/4
sent [8]   136/10 145/6
 146/19 150/20 150/25
 162/11 185/17 185/19
sentence [11]   121/14
 121/19 121/22 153/1 153/5
 153/7 162/22 220/11
 220/21 221/9 234/3
sentences [1]   153/6
separate [2]   161/12
 228/14
September [6]   149/11
 158/7 178/1 192/10 192/12
 192/13
series [2]   154/25 162/10
serious [3]   153/9 155/1
 183/3
seriousness [2]   170/24
 233/23
Serpber [1]   181/24
serve [3]   138/14 141/12
 175/14
service [2]   203/1 233/11
SESSION [1]   118/9
set [4]   137/10 160/7
 194/25 219/15
settled [2]   205/1 205/9
settlement [11]   127/25
 128/2 141/22 142/5 142/7
 142/8 142/10 142/16 164/1
 194/6 204/21
settlements [2]   141/25
 142/1
seven [1]   198/5
several [5]   129/2 160/25
 163/1 178/20 178/21
severe [1]   175/10
sex [1]   155/7
sexual [1]   137/12
sham [1]   180/11
share [2]   150/10 206/8

sharepoint [1]   231/2
SHAUN [3]   118/6 120/3
 129/4
she [174]
she's [4]   154/25 160/21
 161/17 169/5
shop [2]   134/5 165/20
short [3]   127/23 148/1
 205/14
shorter [1]   180/20
shortly [1]   142/14
should [22]   121/25 149/1
 164/24 165/4 168/5 171/21
 174/9 177/20 178/2 178/19
 180/1 196/10 196/17
 204/13 211/20 213/8
 213/10 213/22 213/24
 214/1 221/12 226/23
show [12]   120/22 122/4
 140/3 181/18 182/3 183/9
 186/19 222/13 223/22
 223/22 223/23 226/24
showing [1]   222/18
shown [1]   152/7
shows [1]   148/24
side [11]   129/15 131/7
 134/5 134/5 135/1 135/4
 151/17 181/15 181/17
 216/20 224/21
sides [1]   161/11
sign [6]   166/22 167/1
 185/14 189/20 190/11
 191/3
signature [10]   185/4
 185/7 185/8 185/10 185/10
 185/11 185/13 185/18
 190/5 197/12
signatures [2]   190/16
 210/6
signed [2]   122/16 166/23
significant [1]   121/15
similar [7]   163/18 164/25
 178/14 182/3 217/3 217/8
 226/21
similarly [1]   196/17
simple [1]   162/24
simply [2]   121/8 182/3
simultaneously [2]   150/3
 194/5
since [2]   125/13 125/20
single [1]   196/21
sir [17]   120/11 124/5
 124/7 124/15 124/16 126/8
 137/7 140/9 148/10 150/18
 155/12 166/4 176/13
 182/21 184/4 186/14 192/5
situation [16]   146/10
 146/22 151/5 154/12
 154/17 154/20 171/6 172/6
 177/18 184/12 194/24
 196/22 216/3 216/7 223/1
 226/21
situations [1]   130/21
six [1]   154/24
sixties [1]   179/19
skip [2]   188/19 195/17
slot [1]   203/19
slow [2]   175/22 214/22
so [149]
solidified [2]   182/20
 182/23

**some [43]**   124/21 127/17
133/17 133/19 133/22
134/24 142/3 142/13
144/14 144/16 150/6
153/18 154/17 154/20
154/22 155/3 156/12 159/1
159/2 159/25 160/1 164/5
166/11 167/6 167/19
167/20 181/10 181/21
181/23 184/24 198/1
198/11 201/2 203/21 205/2
206/23 214/21 217/2
218/14 219/12 221/7
223/15 223/16
**somebody [5]**   139/1 184/25
194/24 204/10 221/6
**someone [1]**   176/14
**something [15]**   122/11
130/24 140/22 144/11
153/22 164/19 173/18
179/23 182/24 185/14
191/23 194/24 211/18
211/19 215/17
**Sometime [1]**   209/8
**sometimes [3]**   155/13
208/5 226/17
**somewhat [2]**   180/20
232/22
**sooner [1]**   227/16
**sorry [27]**   122/19 129/3
133/14 133/18 134/13
146/14 147/1 147/2 154/4
175/2 175/22 179/10 183/8
187/17 191/10 192/13
194/10 205/19 206/20
207/9 208/21 214/10 219/8
223/4 225/21 232/5 234/18
**sort [4]**   154/20 164/5
218/15 221/7
**sounds [3]**   141/1 177/5
194/14
**Southwest [1]**   126/7
**speak [4]**   143/16 143/20
174/8 226/9
**speaking [3]**   133/20
137/23 233/24
**specialist [1]**   224/22
**specific [6]**   136/11 137/2
173/3 176/8 178/18 212/8
**specifically [4]**   136/24
137/23 199/1 222/12
**specification [10]**   229/20
229/23 230/12 230/15
230/22 230/23 231/6 231/8
231/21 231/22
**specifications [7]**   178/21
197/21 229/9 229/12
230/11 230/21 233/6
**speculate [1]**   182/6
**spoke [1]**   122/18
**staff [7]**   131/7 131/17
131/20 132/8 135/3 216/19
220/23
**staffed [1]**   138/16
**stage [1]**   133/2
**stand [4]**   148/16 183/24
200/18 235/8
**standard [1]**   185/9
**standing [1]**   124/17

**stand [3]**   126/1 125/1
208/23
**started [5]**   124/21 201/17
217/20 220/1 235/1
**starting [4]**   153/5 153/7
225/15 234/4
**starts [2]**   123/16 220/11
**state [2]**   125/3 234/14
**stated [4]**   161/18 161/19
197/14 237/6
**statement [16]**   120/16
121/7 139/5 140/11 140/14
147/8 154/24 160/21 174/4
177/21 194/14 199/5
199/12 215/19 218/9 226/8
**statements [4]**   121/5
139/9 167/3 225/19
**states [10]**   118/1 118/10
118/21 126/3 162/23
162/24 191/17 195/4 206/8
237/4
**stating [3]**   189/19 234/7
234/19
**status [1]**   168/23
**stay [1]**   144/25
**stenographic [1]**   237/4
**stenography [1]**   118/24
**step [2]**   180/8 182/21
**steps [1]**   196/14
**sticks [1]**   221/23
**still [2]**   154/6 214/1
**stipulate [1]**   121/4
**stipulated [1]**   121/1
**stop [14]**   168/8 168/10
206/12 206/24 206/25
227/13 229/25 230/1 230/1
231/7 231/7 231/7 231/11
231/24
**stopped [2]**   163/6 163/10
**stormed [1]**   225/24
**story [1]**   161/11
**Stowe [77]**   122/20 123/10
123/11 128/6 128/9 128/13
135/12 135/19 135/23
142/14 142/15 143/9
143/25 144/13 144/16
144/20 145/6 145/16
145/21 147/4 147/9 149/17
150/3 150/25 151/5 151/25
154/15 154/16 163/18
163/25 164/4 164/14 165/1
165/18 165/22 165/25
167/9 168/20 174/14
174/17 176/15 176/20
177/19 178/25 178/25
179/4 182/4 188/11 188/12
195/12 196/17 196/23
198/18 198/24 199/1
201/17 203/12 206/15
207/23 216/14 217/1
217/11 217/13 217/20
217/22 219/3 219/6 219/18
222/15 225/15 225/16
225/17 225/22 226/3
229/15 230/7 230/25
**Stowe's [4]**   146/8 177/25
199/20 203/19
**Street [4]**   118/14 118/16
118/19 126/7
**stretch [1]**   200/19
**strike [5]**   145/4 165/3

**stuff [1]**   159/2
**Stutzman [1]**   229/24
**styled [1]**   230/19
**subject [9]**   123/14 138/23
147/15 160/22 161/2
193/22 199/25 220/17
225/7
**submitted [3]**   157/15
157/20 187/12
**submitting [1]**   211/8
**subordinate [1]**   208/11
**subsequent [6]**   133/7
133/9 141/11 165/17
165/18 165/19
**subsequently [2]**   161/4
164/20
**successful [3]**   193/13
193/14 193/18
**such [10]**   141/14 141/17
141/25 161/3 173/23
180/7 180/10 181/4 197/6
211/10
**suggest [1]**   221/13
**suggested [2]**   206/25
229/14
**suggesting [1]**   156/3
**suggestion [2]**   223/16
231/17
**suggests [1]**   209/20
**Suite [2]**   118/14 118/16
**summarize [2]**   230/20
231/22
**summary [2]**   209/25 222/14
**superior [4]**   126/13
126/15 126/16 151/13
**supervise [2]**   142/25
147/12
**supervised [5]**   143/1
177/23 204/5 209/18
224/22
**supervision [5]**   127/11
143/14 144/11 177/15
232/1
**supervisor [28]**   140/23
143/4 154/14 155/18 157/1
158/15 163/13 163/14
168/11 168/21 177/9
177/14 197/1 204/1 208/11
208/12 211/23 213/6 213/7
213/7 213/10 213/24 215/8
220/13 222/16 222/25
226/4 226/4
**supervisor's [2]**   163/13
195/6
**supervisors [1]**   168/2
**supervisory [8]**   145/10
145/25 146/1 146/13
163/12 173/16 196/25
224/23
**support [8]**   153/14 203/1
209/10 230/11 230/21
232/21 232/22 233/4
**supported [1]**   233/6
**supporting [1]**   157/14
**supportive [1]**   158/21
**supposed [2]**   189/1 215/15
**Surber [29]**   119/4 120/10
124/14 124/19 124/20
125/1 125/7 125/8 162/3
171/4 178/24 180/8 181/25

S   Case 1:12-cv-01537-CRC   Document 11   198/15   Filed 07/31/17   148/2 151/18 158/23

**Surber... [16]   182/1**
 183/24 189/20 190/14
 194/22 196/20 201/4 202/3
 212/18 222/12 223/23
 224/2 224/9 226/25 226/25
 235/7
**Surber's [2]   183/17**
 235/20
**sure [44]   120/14 120/15**
 122/14 130/9 132/3 133/4
 133/5 136/2 136/24 137/22
 139/4 139/19 142/3 149/25
 153/24 157/6 157/7 158/1
 162/18 163/5 163/20
 164/10 165/23 167/5
 168/13 171/13 172/3
 172/21 186/12 188/4 188/5
 190/2 194/17 200/11
 203/21 208/24 219/1 222/8
 223/21 228/8 232/4 234/17
 235/22 236/6
**surrounding [2]   128/1**
 197/6
**suspend [1]   232/15**
**suspension [7]   141/15**
 159/21 159/23 167/4
 232/12 232/13 233/16
**suspensions [1]   234/8**
**sustain [1]   233/7**
**switch [1]   227/14**
**sworn [4]   124/19 140/11**
 140/14 147/8
**system [9]   130/13 130/15**
 130/18 162/6 215/17 216/1
 216/3 216/10 216/10

**T**

**TAAFFE [1]   118/18**
**tab [2]   208/23 233/13**
**TABLE [1]   119/1**
**tabs [1]   232/24**
**tail [1]   209/16**
**take [30]   129/4 144/6**
 144/8 145/25 146/1 148/1
 148/4 148/5 148/7 152/17
 154/15 170/16 171/5
 171/19 176/16 176/24
 177/2 180/1 180/22 181/7
 192/18 197/23 208/18
 212/19 214/25 215/24
 218/19 224/24 228/1
 235/15
**taken [9]   140/25 168/16**
 174/25 174/25 175/17
 207/2 213/8 237/5 237/9
**takes [1]   206/23**
**taking [4]   133/2 133/9**
 173/24 196/14
**talk [11]   130/5 130/6**
 143/13 188/7 188/11
 188/13 199/18 207/22
 208/3 208/4 229/18
**talked [6]   145/13 180/20**
 201/20 209/7 214/14 228/7
**talking [14]   132/19**
 136/24 163/16 183/7
 186/16 193/15 196/13
 202/3 210/24 219/3 220/17
 222/24 229/13 235/17

**talks [1]   198/16**
**tamper [3]   210/17 211/20**
 211/21
**tampered [1]   210/5**
**tampering [2]   210/8 212/1**
**task [2]   213/6 213/22**
**tasks [2]   212/3 213/2**
**team [1]   134/23**
**tech [1]   132/1**
**technical [1]   171/2**
**telework [20]   148/19**
 148/23 148/25 149/2 149/3
 153/4 214/14 214/15
 214/16 214/18 214/23
 215/2 215/3 215/11 215/15
 215/22 215/25 216/3 216/6
 216/11
**teleworking [1]   215/5**
**tell [37]   125/21 127/15**
 128/25 134/2 134/23
 137/10 138/9 141/5 142/18
 145/21 148/22 154/10
 157/18 158/9 159/15
 160/18 170/13 171/19
 173/13 173/19 175/3 176/4
 178/17 184/9 184/10 190/1
 190/4 193/11 196/8 196/20
 197/18 198/4 209/5 213/4
 215/13 225/22 230/10
**telling [7]   146/25 147/4**
 161/21 172/4 214/11
 217/22 218/5
**tells [2]   122/9 206/24**
**TEMPLE [18]   118/13 118/13**
 119/5 120/13 121/13 122/9
 123/7 124/12 124/23
 148/18 154/3 183/25
 185/22 195/19 206/17
 207/9 223/14 233/24
**Temple's [2]   225/7 226/20**
**ten [2]   144/5 194/23**
**tended [1]   221/7**
**tension [1]   198/20**
**tensions [3]   155/6 197/6**
 198/16
**term [2]   130/20 211/20**
**terminate [1]   200/10**
**terminated [6]   164/24**
 165/5 171/21 177/20 178/2
 178/19
**termination [15]   157/24**
 158/10 162/13 166/9
 166/25 167/18 173/2
 179/16 184/6 187/7 187/8
 187/10 187/15 187/17
 187/18
**terms [10]   130/10 131/11**
 131/13 136/1 136/9 156/11
 159/25 161/7 172/21 175/8
**testified [6]   199/5**
 204/20 205/23 207/6
 216/14 228/12
**testifies [1]   123/19**
**testimony [21]   148/11**
 172/6 173/2 177/18 178/3
 178/12 181/10 181/15
 181/19 181/19 181/23
 182/3 182/25 187/4 191/1
 199/10 201/2 207/24
 214/15 227/22 235/12
**than [9]   144/3 144/5**

 179/24 207/9 227/9 227/16
**thank [24]   124/16 124/22**
 125/25 138/4 148/12 180/9
 180/24 184/1 195/21
 199/13 200/23 205/6
 206/10 207/6 207/20
 216/13 224/6 225/9 226/1
 226/14 227/3 227/20
 234/25 235/13
**thanks [2]   201/25 219/6**
**that [855]**
**that's [54]   124/4 125/15**
 126/6 126/7 130/3 138/22
 138/25 142/3 143/8 146/18
 147/13 148/3 150/10 152/6
 158/8 158/15 159/11
 161/15 162/21 170/22
 171/18 174/1 175/15
 177/13 182/24 185/9
 185/12 186/25 187/22
 188/1 188/14 188/18
 189/19 189/22 195/11
 197/16 198/3 200/5 200/5
 201/7 201/18 201/19 202/7
 203/15 204/6 206/14
 206/19 206/20 220/10
 221/4 230/22 231/6 231/15
 231/19
**their [14]   121/2 121/3**
 130/11 136/22 152/10
 161/13 164/18 181/13
 214/22 214/23 214/24
 215/2 215/15 236/3
**them [25]   121/16 121/22**
 122/14 131/24 136/11
 136/11 138/23 145/9 148/5
 149/14 149/21 150/4 162/7
 162/9 167/7 171/24 172/11
 175/8 190/4 197/19 207/5
 207/13 209/13 211/8 212/7
**themselves [1]   193/1**
**then [44]   126/17 127/9**
 127/11 130/16 130/25
 131/1 131/4 141/10 141/12
 141/15 146/20 153/17
 160/20 161/20 172/25
 175/13 176/24 184/19
 184/21 184/24 185/6
 192/19 193/13 198/3
 202/14 202/24 203/4
 203/12 203/16 209/4
 209/17 210/24 211/11
 211/12 219/19 219/20
 220/17 220/20 228/24
 229/11 229/25 230/15
 232/17 234/19
**theory [1]   180/11**
**there [137]**
**there's [24]   120/17 123/8**
 123/17 123/23 123/25
 134/18 141/10 155/19
 158/19 161/10 166/11
 171/22 180/15 183/2 185/5
 185/25 186/4 200/14 209/1
 209/2 209/17 222/4 222/11
 222/15
**Therefore [1]   233/7**
**THERESA [1]   118/15**
**these [24]   130/7 134/11**
 135/11 136/20 143/4

these... [19]  144/23
 145/25 147/3 166/16
 171/14 174/11 175/6 184/5
 184/22 187/19 188/17
 206/12 209/25 218/4
 219/24 223/25 229/18
 233/15 233/18
they [71]  121/8 122/15
 130/14 134/4 134/16 135/8
 135/8 135/10 136/3 136/14
 136/14 138/11 138/14
 138/16 138/19 138/20
 138/21 139/1 139/1 139/1
 139/2 139/5 143/11 143/14
 147/17 147/17 149/1 149/2
 149/15 152/10 155/18
 158/21 158/22 161/18
 162/9 162/10 171/24
 171/25 178/23 183/3 184/6
 190/9 190/12 199/21
 201/16 204/12 204/13
 204/15 204/15 208/5
 208/13 208/14 210/23
 214/22 214/22 214/24
 214/24 216/1 216/1 216/10
 216/10 217/16 220/25
 221/12 222/18 222/24
 223/14 232/20 232/21
 232/23 236/3
they'd [1]  172/11
they're [8]  121/2 137/18
 138/16 143/14 155/15
 155/22 180/15 224/3
thing [5]  140/6 180/25
 181/23 182/19 235/24
things [10]  123/20 153/2
 153/3 155/19 168/6 175/7
 210/23 213/9 216/5 235/16
think [20]  121/5 121/10
 121/16 127/18 139/19
 151/15 155/2 164/19
 171/18 175/5 183/6 183/7
 183/9 185/12 186/23
 201/16 222/8 227/7 233/24
 236/9
thinking [2]  180/6 180/25
thinks [1]  123/8
third [4]  206/12 209/17
 222/4 223/2
thirdly [1]  210/21
thirty [3]  191/16 191/24
 192/1
this [178]
those [50]  129/25 130/2
 130/3 130/4 130/13 131/18
 131/18 131/19 132/8
 132/23 132/24 134/20
 135/5 135/25 136/4 137/9
 138/18 142/1 145/12
 145/19 159/15 160/3
 161/15 167/20 168/9
 168/10 171/16 178/22
 178/24 180/11 188/16
 192/22 193/11 206/23
 207/2 207/3 207/15 208/7
 209/11 209/13 212/5
 213/15 213/16 213/19
 217/3 217/24 217/25 218/2
 232/11 232/19

though [5] 121/21 160/21
 164/9 173/7 175/23
thought [5]  122/8 137/11
 145/10 181/21 190/6
threatened [4]  174/13
 174/16 179/1 179/5
threatening [2]  167/9
 225/19
three [11]  165/15 177/3
 179/15 192/2 192/4 192/6
 192/8 192/12 228/25 231/8
 236/10
through [13]  121/3 128/19
 145/25 148/20 161/24
 163/12 163/13 180/13
 190/7 227/8 227/13 233/18
 233/19
throughout [3]  129/21
 161/16 176/12
thus [1]  189/23
time [89]  126/11 126/12
 126/19 127/23 128/12
 128/18 129/3 129/9 129/9
 129/20 129/21 130/14
 133/4 133/5 135/17 142/24
 143/19 143/19 147/12
 149/13 149/15 150/2
 152/21 156/3 160/3 162/3
 163/6 163/6 163/8 163/9
 164/19 164/22 166/8
 166/24 167/8 168/22
 168/24 172/21 176/5 177/5
 179/9 179/11 179/15
 180/17 185/3 186/19
 188/20 190/2 191/16
 194/22 195/12 196/10
 196/16 196/20 196/21
 196/22 199/3 199/24 201/5
 201/5 202/17 202/25 203/4
 203/22 203/23 205/4
 205/14 207/25 209/11
 209/23 212/2 212/25 213/1
 213/7 213/12 214/3 214/4
 215/4 217/12 217/13
 217/20 217/21 218/23
 221/19 224/17 224/23
 231/4 236/10 237/5
timeliness [1]  131/22
timely [5]  131/19 131/24
 132/9 136/3 136/4
times [6]  153/13 163/11
 179/13 179/15 181/16
 181/17
tip [1]  155/12
title [4]  129/12 202/9
 202/24 233/21
today [8]  123/2 157/5
 167/12 174/8 182/20
 193/20 219/25 235/8
together [1]  216/17
told [13]  142/15 145/13
 161/17 163/17 193/2
 211/19 214/4 218/2 219/22
 220/2 226/3 226/12 235/24
tomorrow [2]  227/15
 233/19
tone [5]  208/7 208/9
 211/2 220/6 220/19
Tonya [6]  163/23 164/1
 164/2 164/13 169/23
 169/25

took [7] 143/13 136/5
 136/8 143/18 173/4 189/19
 232/17
top [2]  206/19 209/15
topic [1]  227/4
topics [1]  219/22
totally [1]  182/24
touch [1]  229/19
touched [1]  226/19
toward [2]  163/1 196/18
towards [2]  163/18 173/10
track [4]  130/1 130/4
 162/25 186/5
tracked [2]  129/25 130/14
tracking [1]  130/7
trained [2]  137/15 138/13
training [4]  137/6 138/11
 138/12 155/6
transcript [3]  118/9
 118/24 237/3
transcription [1]  118/25
trauma [1]  155/3
traumatization [1]  121/24
traumatizing [1]  121/22
treat [1]  196/14
treatment [1]  145/16
trial [5]  118/9 181/12
 181/16 181/17 181/19
trials [1]  236/10
tried [2]  156/7 225/17
triggered [1]  178/18
trouble [1]  123/1
true [3]  151/9 179/4
 237/2
truth [4]  146/25 147/4
 161/22 204/9
try [1]  182/6
trying [9]  135/10 136/2
 136/9 201/20 209/7 219/14
 220/18 222/10 225/16
turmoil [1]  219/25
turn [3]  221/11 227/4
 232/24
twelve [4]  170/16 173/4
 175/6 180/15
twice [1]  235/20
two [29]  121/21 121/23
 127/9 144/3 150/22 153/5
 161/11 168/1 174/1 176/1
 178/12 178/20 179/13
 180/13 182/18 185/5
 205/15 210/2 229/9 229/11
 229/20 229/23 230/15
 231/6 232/24 233/8 235/10
 235/16 236/9
type [4]  151/11 164/25
 173/15 199/22
types [2]  145/19 218/4
Typically [1]  155/21

U

U.S [2]  118/19 125/11
uh [1]  166/17
Uh-hmm [1]  166/17
unbecoming [2]  229/11
 230/19
unbiased [1]  162/2
under [21]  126/25 127/2
 127/11 143/3 143/5 143/14
 144/11 161/19 165/23
 165/24 173/20 177/6

**U**

under... [9]  178/10
 181/14 187/4 195/1 202/7
 210/4 210/5 215/15 215/21
underlined [1]  219/21
underlying [6]  167/4
 206/14 209/6 210/7 219/10
 219/11
underpinned [1]  147/15
understand [8]  126/4
 131/3 132/15 134/13
 137/22 170/4 170/12 172/3
understands [1]  175/4
unfortunately [2]  137/17
 155/16
union [13]  157/20 161/24
 167/18 167/20 167/22
 168/8 194/18 196/5 207/17
 207/17 228/12 228/13
 228/17
UNITED [6]  118/1 118/10
 118/21 126/3 191/17 237/4
universe [1]  132/19
unless [5]  147/19 147/22
 150/17 185/18 218/10
unprofessional [1]  178/8
unquote [1]  196/10
unsatisfactory [2]  193/12
 193/18
until [5]  127/11 161/3
 209/25 219/25 230/1
unusual [3]  197/6 198/16
 198/20
up [24]  122/8 130/10
 132/16 140/4 145/25
 150/12 151/12 152/11
 152/17 163/7 163/21
 171/22 179/7 181/1 200/19
 209/15 210/10 210/20
 212/20 216/3 219/7 226/8
 233/19 235/15
updated [1]  219/23
updates [1]  219/24
upon [7]  123/16 155/5
 171/11 189/8 195/4 195/5
 197/18
Urban [1]  125/11
urging [1]  164/18
us [5]  130/16 183/4 209/5
 220/2 235/10
use [1]  201/3
used [7]  130/20 141/7
 148/24 184/19 224/21
 226/18 233/4
usually [2]  138/16 185/5

**V**

vacancies [1]  143/1
vacant [1]  203/9
validity [2]  182/7 200/4
various [5]  135/8 138/13
 153/24 155/1 156/7
Varnado [2]  206/17 207/16
verbal [1]  220/24
verbally [1]  174/17
verdict [1]  122/1
version [1]  190/8
versions [1]  185/5
versus [1]  120/3
very [13]  153/9 208/9

 220/14 221/7 227/5 230/10
 230/20 234/13 234/25
via [7]  134/7 185/17
 190/8 208/5 208/17 219/24
 229/24
victimization [1]  155/9
view [4]  146/16 147/7
 175/20 177/25
viewed [1]  167/17
violation [1]  168/2
vulnerable [1]  122/24

**W**

want [25]  122/10 123/5
 138/21 140/5 152/17
 155/25 160/18 173/3 173/6
 180/11 183/18 186/19
 188/20 191/8 191/23
 193/22 195/18 201/1 201/4
 207/22 228/8 229/18
 229/19 233/8 233/18
wanted [9]  145/14 182/17
 182/25 201/2 204/15 218/6
 218/11 218/14 219/2
warrant [1]  158/23
warranting [1]  175/10
was [304]
Washington [5]  118/5
 118/14 118/17 118/20
 118/23
wasn't [8]  143/12 146/16
 171/15 191/2 195/15
 215/16 218/15 219/1
waste [1]  231/4
water [1]  124/21
way [15]  120/18 123/23
 141/16 147/25 151/22
 175/21 196/6 196/13
 196/13 196/13 196/14
 196/18 214/20 215/9
 232/23
ways [1]  124/24
we [88]  122/8 122/10
 122/14 122/16 122/17
 122/18 123/4 123/17
 123/18 123/21 124/21
 125/3 129/17 129/21 130/1
 130/11 131/2 131/16 134/8
 134/17 134/21 136/12
 137/6 148/1 155/21 158/22
 161/9 161/11 168/4 169/13
 170/15 173/18 174/8
 180/19 180/19 180/22
 181/3 181/8 182/14 182/17
 182/18 182/19 182/19
 182/19 183/5 183/5 183/11
 183/22 198/9 201/1 201/3
 201/11 201/15 201/15
 201/20 205/22 206/13
 206/25 209/7 210/3 210/10
 210/11 210/20 212/9
 214/21 215/2 219/6 220/10
 220/18 221/24 223/2
 225/13 226/19 227/11
 227/14 229/6 229/13 231/6
 231/6 231/7 233/18 235/16
 235/20 235/24 236/1 236/2
 236/9 236/12
we'll [8]  123/22 150/16
 180/23 182/9 203/21 235/1

 148/7 180/17 181/7 191/12
 202/3 203/21 208/24
 209/15 209/16 227/15
 234/24 236/13
we've [2]  120/25 129/2
weak [1]  161/12
Welcome [1]  124/10
Weldon [1]  125/7
well [31]  125/20 129/23
 134/17 135/9 136/23
 142/13 142/21 146/4
 147/19 148/2 159/17 161/5
 161/23 170/17 170/19
 172/13 176/11 184/17
 190/13 191/22 192/15
 193/2 208/3 212/9 213/5
 217/18 227/5 227/16
 232/13 233/4 234/22
went [3]  190/6 225/22
 231/12
were [134]
weren't [1]  215/7
what [119]  125/21 125/23
 126/10 126/19 129/12
 129/15 129/17 129/19
 130/5 130/7 130/9 132/1
 132/14 132/18 132/19
 133/5 133/23 134/2 134/21
 135/25 136/17 136/24
 137/6 138/9 140/19 141/5
 142/18 145/8 145/14
 145/15 145/20 145/21
 148/22 149/1 154/11
 155/12 156/16 157/18
 158/9 158/17 158/17
 158/22 159/6 159/15 161/8
 161/15 161/16 161/18
 161/20 162/22 163/3 164/8
 167/24 168/23 170/12
 172/3 172/9 173/9 174/23
 175/3 176/4 176/4 176/5
 178/18 178/22 179/7
 181/11 181/21 182/19
 183/21 185/12 189/18
 191/25 192/1 192/2 192/4
 192/12 193/11 194/14
 196/4 196/8 196/9 196/12
 201/19 202/24 203/22
 204/13 206/15 211/20
 211/23 212/5 212/18
 213/15 213/22 214/20
 215/13 215/14 215/15
 216/17 217/24 218/8
 218/12 219/6 220/17
 222/10 222/20 222/23
 223/21 224/20 226/11
 226/22 228/8 229/6 230/10
 230/20 232/10 232/15
 234/15 234/20
what's [15]  141/2 151/25
 152/2 170/14 176/19 182/7
 202/9 208/18 208/24 209/5
 218/19 219/8 224/24 231/9
 233/21
whatever [3]  132/8 137/12
 161/25
when [84]  123/15 123/19
 126/16 126/21 126/22
 127/6 127/7 127/8 127/20

Case 1:12-cv-01537-CRC   Document 1-140  Filed 07/31/17   Page 145 of 146

**W**

when... [75]   128/13 130/6
132/18 132/19 132/25
136/8 138/19 139/1 140/4
142/20 145/13 145/19
146/19 147/2 147/7 149/13
150/12 151/2 151/4 152/17
153/17 154/10 155/5
155/16 155/24 158/10
160/21 160/25 161/1 161/1
162/8 163/8 163/16 165/4
168/8 168/12 170/16
170/17 170/17 170/17
171/20 172/10 172/11
177/2 184/10 184/16
184/24 185/2 189/5 189/18
190/12 191/1 194/25
196/12 196/12 197/11
203/9 205/5 205/14 212/2
212/20 212/25 214/3 214/4
215/4 216/21 217/21 220/1
221/11 221/19 229/13
232/2 232/5 233/14 233/24
whenever [1]   223/11
where [34]   121/10 125/16
134/8 136/13 141/7 144/19
145/24 146/2 150/6 154/25
156/7 163/6 164/21 167/19
174/8 174/10 181/12
181/17 189/2 196/24
201/11 206/17 208/6
208/17 209/7 213/5 219/23
220/3 223/3 226/2 229/20
231/10 231/10 231/23
wherein [2]   178/25 210/7
whereupon [1]   172/5
whether [44]   121/3 123/5
128/3 137/25 138/21
143/14 146/9 146/21 149/1
149/2 151/5 151/8 158/16
158/21 158/21 158/22
161/13 161/14 161/21
162/7 164/24 164/24 165/4
171/1 171/21 171/24
171/25 173/19 174/20
179/25 194/25 200/3 200/9
216/6 220/24 220/25 221/4
222/7 224/4 229/3 232/20
232/21 232/23 233/15
which [34]   120/17 120/23
129/2 130/8 132/6 132/16
133/15 139/24 149/11
151/16 157/8 158/23
159/21 160/8 175/14
178/10 178/12 191/7
196/17 198/10 199/15
199/19 201/15 201/15
208/20 213/7 219/25
222/15 229/3 229/7 232/13
232/20 232/22 237/8
while [2]   207/7 215/5
whistleblower [2]   235/21
235/23
who [22]   123/9 126/13
127/15 128/1 128/25
134/24 137/24 139/4 143/5
153/18 161/5 179/25 202/4
204/1 205/11 207/10
207/15 207/18 218/22
221/22 224/15 230/2

whole [1]   140/5
whom [1]   125/10
whose [1]   139/4
why [24]   120/15 134/16
145/9 146/5 148/5 151/13
163/10 166/25 167/24
179/18 179/23 184/16
189/7 190/4 195/19 197/19
211/5 213/25 220/15 221/2
223/6 227/5 227/11 231/13
wilkerson [1]   206/18
will [21]   123/7 123/11
123/14 123/23 123/25
124/1 129/22 129/24 130/5
152/7 152/8 152/9 153/12
180/22 196/20 197/18
199/13 208/22 222/8
233/20 234/7
WILLIAM [1]   118/18
williamson [4]   127/13
127/16 127/24 128/4
withdraw [1]   201/22
withholding [1]   220/4
within [2]   130/12 213/25
without [4]   170/6 173/7
191/17 231/25
witness [17]   120/18
124/12 124/19 148/13
148/16 152/7 161/3 182/5
182/22 183/24 200/16
207/13 212/18 212/24
225/1 232/25 235/14
witness's [1]   181/18
witnesses [7]   123/18
123/21 139/10 181/13
181/15 181/20 223/25
woman [2]   129/5 135/12
won't [3]   123/21 183/19
191/5
wondered [1]   236/1
wondering [1]   152/6
word [4]   175/2 175/3
190/8 232/4
words [1]   155/2
work [35]   126/25 127/2
127/11 128/13 128/13
130/8 131/7 132/6 133/1
133/13 134/17 135/21
135/22 144/10 168/4 191/6
191/13 191/22 195/6
199/23 201/3 201/24
205/13 214/16 214/22
214/22 214/23 215/2
215/11 216/1 216/18
224/21 225/23 233/20
235/9
worked [11]   125/20 127/16
128/14 131/17 134/24
165/9 191/16 191/24
202/14 216/15 224/18
workers [1]   221/20
working [10]   132/25
150/14 177/3 190/7 190/14
201/17 215/17 216/17
217/14 217/20
workplace [16]   143/11
143/12 143/21 143/25
144/9 146/10 146/21
147/16 150/3 151/6 153/4
153/18 153/22 155/3 155/6
156/4

works [1]   130/6
worries [1]   219/16
would [151]
wouldn't [7]   120/25
147/19 147/22 173/6
185/13 185/17 192/13
write [3]   143/20 220/15
221/2
writing [5]   166/12 166/20
187/24 188/2 210/23
written [3]   199/3 220/24
233/4
wrong [4]   130/24 140/22
192/18 224/4
wrote [2]   123/9 230/2

**Y**

year [15]   149/8 149/10
149/11 149/15 156/10
160/5 165/13 177/9 179/19
192/10 192/14 192/16
192/16 192/17 193/6
years [15]   127/9 131/21
155/5 165/9 165/15 190/15
191/17 191/24 192/1 192/2
192/4 192/6 192/8 192/12
220/22
yes [189]
yesterday [2]   219/23
226/8
yet [1]   193/7
you [684]
you'll [3]   181/17 229/19
233/13
you're [19]   128/3 136/24
139/16 140/4 150/12 152/6
152/14 152/18 154/3
154/25 171/13 172/4 179/9
186/7 186/12 188/4 212/20
223/11 233/14
you've [6]   154/24 180/13
180/13 181/10 181/23
193/2
your [165]
yours [3]   143/15 183/25
187/24
yourself [2]   124/20
157/15

**Z**

zoom [4]   207/1 210/3
210/11 225/13
zoomed [1]   206/13